*COUNTY OF PLAINTIFFS RESIDENCE, ESSEX CO. NJ*
*CITIZEN OF ANOTHER STATE*
*COUNTY OF DEFENDANT(S) RESIDENCE, NEW CASTLE CO, DE*
*CITIZENS OF THIS STATE*
*BASIS OF JURISDICTION, DIVERSITY (28 U.S.C 1332)*

(Rev. 5/05)

**FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT**
**UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983**

☐ **ORIGINAL**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

(1) *Jimmie Lewis, 506622*
　　(Name of Plaintiff)　　　(Inmate Number)

*D.C.C, 1181 Paddock Rd, Smyrna DE*
　　(Complete Address with zip code)　*19977*

(2)_____
　　(Name of Plaintiff)　　　(Inmate Number)

_____
　　(Complete Address with zip code)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

vs.

(1) *Helen Hanlon, et al.*

(2) *See Attached*

(3) *Sheet.*
　　(Names of Defendants)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

: 
: 
: 
: 
: 
: 
: 
:　　06 - 238
: 
:　　_____
:　　　　　(Case Number)
:　( to be assigned by U.S. District Court)
: 
: 
: 
: 
: 
:　　**CIVIL COMPLAINT**
: 
: 
: 
:　• Jury Trial Requested
: 
:　**FILED**
:
:　APR 10 2006
:
:　U.S. DISTRICT COURT
:　DISTRICT OF DELAWARE

**I.    PREVIOUS LAWSUITS**

A.　If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number
　　including year, as well as the name of the judicial officer to whom it was assigned:

| | | |
|---|---|---|
| 04 - 1350 (GMS) | ACTIVE. |
| 04 - 1410 (GMS) | DISMISSED W/O PREJUDICE. |
| ACTIVE → 05 - 013 (GMS) | LEAD CONSOLIDATED |
| 05 - 051 (GMS) | CONSOLIDATED |
| 05 - 052 (GMS) | CONSOLIDATED |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JIMMIE LEWIS,
        PLAINTIFF,

V

                                        CA.NO_____

HELEN HANLON,
DIANE STACHOWSKI,
SYLVIA FOSTER,
MARGRET WILSON,
FLORENCE SCOTT COBBS,
KATHRYN SHENEMAN,
BRIAN J. ROBERTSON,
        DEFENDANTS.

II.    **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A.    Is there a prisoner grievance procedure available at your present institution?    ✓ Yes    • • No

B.    Have you fully exhausted your available administrative remedies regarding each of your present claims?    • • Yes    ✓ No

C.    If your answer to "B" is <u>Yes</u>:

1.    What steps did you take?    D/A

2.    What was the result?    D/A

D.    If your answer to "B" is <u>No</u>, explain why not: THE PRISON GRIEVANCE PROCEDURE DOESN'T APPLY TO THE DEFENDANTS.

III.    **DEFENDANTS** (in order listed on the caption)

(1)    Name of first defendant:    SEE ATTACHED SHEET.

Employed as _____ at _____

Mailing address with zip code: _____

(2)    Name of second defendant:    SEE ATTACHED SHEET.

Employed as _____ at _____

Mailing address with zip code: _____

(3)    Name of third defendant:    SEE ATTACHED SHEET.

Employed as _____ at _____

Mailing address with zip code: _____

(List any additional defendants, their employment, and addresses with zip codes, on extra sheets if necessary)

2

## IV. STATEMENT OF CLAIM

(State as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets of paper if necessary.)

1.  _____

    _____

    SEE ATTACHED STATEMENT OF FACTS.

    _____

    _____

2.  _____

    SEE ATTACHED STATEMENT OF FACTS.

    _____

    _____

3.  _____

    SEE ATTACHED STATEMENT OF FACTS.

    _____

    _____

## V.    RELIEF

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

1.  NOMINAL, COMPENSATORY, PUNITIVE
    AND EXEMPLATORY DAMAGES DUE TO
    PAIN + SUFFERING CAUSED BY VIOLATIONS
    STATED WITHIN THE STATEMENT OF FACTS
    TO THE SUM OF $ 25,000,000 DOLLARS.

3

2. A LIEN PLACED ON THE DEFENDANTS ASSETS.

3. TO HAVE D.A BRIAN J. ROBERTSON'S JUDICIAL BAR LICENCE REVOKED. TO HAVE DR. SYLVIA FOSTERS + HELEN HANLON'S MEDICAL LICENCE REVOKED, AND OR VERBAL APPOLOJY

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 6TH day of April, 2006.

_____
(Signature of Plaintiff 1)

_____
(Signature of Plaintiff 2)

_____
(Signature of Plaintiff 3)

4

I/M _JIMMIE LEWIS_

SBI# _506622_ UNIT _INF 195_

DELAWARE CORRECTIONAL CENTER

1181 PADDOCK ROAD

SMYRNA, DELAWARE 19977

CLERK OF

UNITED STA

844. N. K

WILMINGT



06 – 2 3 8

# STATEMENT
## OF
## FACTS

( # 1 )

On or about Nov 14, 2003 my prior Criminal defense counselor John S. Edinger Jr filed a motion for me to undergo a forensic-psychiatric evaluation for competency at the Delaware Psychiatric Hospital; On Dec 1, 2003 it was granted by Judge Charles H. Toliver IV. The Dilemma is that from Dec 1, 03 to May 20, 2004, Diane Stachowski, the Delaware Psychiatric Hospitals unit director of the Mitchel building, ignored, failed to respond and or act regarding more than a dozen requests she received from my prior criminal defense counselor, myself as well as my family members. Diane Stachowski failed and or refused to give a valid reason why she was forcing me to wait to be evaluated per court orders?

Because of Diane Stachowski's actions, I was not allowed to seek relief from my felony conviction by way of direct appeal and or postconviction appeal, due to being forced to unjustifeable wait.

This paragraph defines violations of my 1ST 6TH & 14TH U.S.C.A rights, as well as violations of my rights established under 11 DEL C § 6531, 6523, 6581

(# 2)

On or about 5/24/2004, at the Delaware Psychiatric Hospital I signed an emergency contact application, in which gave the mental health care social worker, Florence Scott Cobbs the authority to contact my mother in the case of any emergency. But repeatedly on 6/6/2004, 6/13/2004, 6/14/2004, 6/21/2004, 6/22/2004 and 6/24/2004, Florence Scott Cobbs failed to inform my emergency contact each time I was strapped down with (4) point restraints and injected with a cocktail of psychotropic medications against my will. Ms Cobbs also failed to contact the patient advocate as well as the proper supervisory and or judicial authorities.

This paragraph defines violations of my 8TH and 14TH U.S.C.A rights, as well as violations of my rights established under 11 Del C § 6531, 6525, 6536, 6523, 468

(#3)

At the Delaware Psychiatric Hospital, on or about 6/3/2004 I was assulted by a patient named "Tim", who used his fist to strick me in the back of my head for no apparent reason. Tim is a highly violent patient who is escorted by two nurse assistants at all times due to what I witnessed, because of his tendency to suddenly assult his fellow patients and staff members. The assult caused me to suffer a lump on the back of my head. Even though this incident caused me physical pain and psychological dilemma's, I was not referred to be physically treated for my injuries, nor did I receive any psychological counseling. In relation to this incident, At the Delaware Psychiatric Hospital on or about 6/4/2004 Dr Kathryn Steneman, documented in the progress notes that she spoke with me in regards to my being assulted by the patient named "Tim", but there after failed to inform my emergency contact, failed to inform the patient advocate and or the proper Supervisory and or Judicial authorities.

(CONT # 3, P.2)

Also in direct relation to this incident, at the Delaware Psychiatric Hospital, on or about 6/4/04, Dr. Sylvia Foster documented in the progress notes that there was no evidence of my being assulted. This was done without a hearing being conducted that would have allowed me to present evidence, and or to call witnesses in my behalf. The fact that Dr Foster and Dr Steneman both conversed with each other, and thereafter came to the planned conclusion to conseal the incident by denying me both medical and psychological treatment defines conspiracy.

This paragraph defines violations of my 8TH and 14TH U.S.C.A rights, as well as my rights established under 11 DEC c§ 468, 513, 6531, 6525, 6523, 6536

(#4)

At the Delaware Psychiatric Hospital, on or about 6/6/2004, a patient named James Floydd became angry with me for his not being ordered a Chef Salad like the Chef Salad that was ordered for me. James Floydd lunged at me swinging punches and hitting me as I proceeded to walk past him in route to my assigned room, room #11. The staff members seperated us, and the doctor was notified. I was thereafter taken to the isolation room, where I was strapped down with (4) point restraints, and against my will Helen Hanlon injected a cocktail of psychotropic medications into me, i.e, Geodon, Haldol, Ativan & Benadryl, with a needle.

This was done without Helen Hanlon first conducting a competency and or a disciplinary hearing before and or after she injected me with said psychotropic medications. Helen Hanlon failed to give me a written notice of the alleged psychiatric and or disciplinary. Helen Hanlon failed to allow me to call witnesses in my behalf, and or to present evidence in my own behalf.

(CONT # 4, P.2)

Helen Hanlon injected me with said cocktail of psychotropic medications, for the specific purpose of punishment. This is due to Helen Hanlon having full knowledge that the Chief psychiatrist had diagnosed me as malingering.

Helen Hanlon actions caused me injuries such as : Bleeding resulting from the needle bruising + breaking the skin and flesh of my buttocks, persisting and reoccuring migrane headaches, bouts of amnesia, insomnia, a swollen tongue that doesn't move when im trying to speak, body treamors, ear ringing, audio and visual hallucinations, nerve and brain damage resulting from my brain cells being killed, lost cognative and volitional functions regarding matters of hygiene, social conduct involving legal matters of competency, etiquettes, history + culture.

This paragraph defines violations of my 8TH + 14 TH U.S.C.A rights, as well as my rights established under 11 DEC C § 468, 6531, 6523, 6535, assult and Battery.

(#5)

~~appellate (sic)~~ ) At the Delaware Psychiatric Hospital ~~Delaware Psychiatric Hospital~~, on 6/10/2004, Dr. Sylvia Foster authored an alleged forensic psychiatric competency evaluation, and submitted said report to the Superior Court of Delaware, in and for New Castle County.

The report was not or shall I say is not at all forensic, because said report was drafted from F.C.M medical notes as well as from sources other than Dr. Sylvia Fosters scientific analisis.

First of all Dr. Sylvia Foster reported that I revealed no evidence of a mood disorder, and no evidence of psychosis, for which leaves no justifable reason for why I was not allowed to practice my religious rite of shaving my head.

Dr. Sylvia Fosters 6/10/2004 report contains numerous deliberate errors, that detrimentally contridict the doctors very own doctors notes submitted herein as exhibits, see attached.

Specifically, Dr. Sylvia Foster reported that I was being evaluated for competency to stand trial after being incarcerated on Nov 17, 2003, when in fact I was actually incarcerated on May 26, 2003 and had already stood trial Oct 21-23, 2003, and Dr. S. Foster knew this, due to Dr. Foster having my Superior Court criminal file in her possession. The Nov 17, 2003 date is only judicially relevant to the fact that the States District Attorney was seeking felony conviction information from Miami-Dade County Florida, in order to sentence me as an Habitual offender, but in order to do this, the D.A needed an unfavorable forensic competency evaluation

~~appellate~~ )      (CONT #5, P.2)

Dr. Sylvia Foster reported that I was informed upon admission at the D.P.C, that I was being evaluated via court order, and that the results would not remain confidential. But actually this couldn't be true, due to Dr. Sylvia Foster placing me on disciplinary sanction upon my admission at the D.P.C, due to my being to ill to participate in said interview.

Dr. Sylvia Foster report to the Superior Court that I assaulted a correctional officer, in which is not at all true. Said allegation can't be supported by any H.R.Y.C.I documents.

Dr. Sylvia Foster reported that I requested sonograph, Xanax, and valium, in which was derived by First Correctional Medicals (F.C.M), medical records. this slanderous information should not have been utilized, due to it not being factually validated by the Chief forensic psychiatric psychiatrist ordered by the Superior Court to conduct my forensic competency evaluation

Dr. Sylvia Foster reported that I was prescribed no psychiatric medications, as there were no evidence of mood disorder or psychosis, even though Dr. Sylvia Foster prescribed me Effexor, Ativan, Haldol, Geodon, and Seroquel, for which Seroquel 25 mg's was prescribed to me by the H.R.Y.C.I once I was transfered back to the Department of Corrections.

Dr. Sylvia Foster reported that I was psychiatricly stable enough to be returned to the (D.O.C.), even though my (G.A.F) scale in which was (15) upon my arrival at the (D.P.C) was (50) on a scale of (100) when the report was authored on June 10, 2004?

( CONT #5, P.3)

Dr Sylvia Foster reported that I was stable enough to be returned to the D.O.C, even though Dr. Foster ordered me to be (4) point restrained on at least (6) different occassions, and to have me injected with a cocktail of psychotropic medications.

Dr. Sylvia Fosters report failed to document my state of mind at the time of my arrest, and or at the time of my Oct 21-23, 2003 trial; nor did Dr. Sylvia Foster's report document the mental health exhibite that (F.C.M) first correctional medical, as well as my self gave her, i.e, a newspaper article of me in the missing person section requesting the public's assistance locating me due to my mental health dilemma's; The Wilmington DE Police dept property and assesment receipt, and the Northern State Prison mental health treatment plan.

On or about July 15, 2004 after I was abrugtly sent back to the (D.O.C), Brian J. Robertson D.A for the state of Delaware in and for New Castle County filed a motion to declare me an habitual offender. D.A Brian J. Robertson was able to file a motion to declare me an habitual offender because of the grossly errorcous report filed by Dr. Sylvia Foster.

(CONT# 5, P.4)

this gives reason to why I was repeatedly unjustifiable injected with powerful and dangerous mind altering psychotropic medications, in an attempt to zombify me and therefore render my Cognative and volitional functions useless; and or should I say defenseless. Dr Sylvia Fosters report is responsible for the Judges abuse of discretion at my sentencing hearing, as well as for denying my motion for a new trial.

This paragraph defines violations of my 6TH & 14TH U.S.C.A rights, as well as violation of my rights established under 11 DEL C§ 513, 6531, 6523

(# 6)

At the Delaware Psychiatric Center, On or about 6/14/2004 during the 8:00 p.m Snack break in the dinning Hall, I was eating a bag of m&m chocolate candy I gave a fellow inmate patient named James Smith $1.00 to purchase for me, due to Dr. Sylvia Foster placing me personally on vending machine restriction. As I Sat eating the bag of m&m's Helen Hanlon instructed me to throw my bag of m&m's in the garbage. I responded by calmly stating no, I just payed for these m&m's. Helen Hanlon became angry and utilized her walky-talky to call for emergency back up assistence. Mr Robert Gray, Mr Dave Moffott, Mr. Lance Sayers and the Mr Johnson a.k.a John doe all rushed into the dinning hall to see what the emergency was. At that time I was still Seated, as were the other inmate patients. Helen Hanlon Stated Mr Lewis is on vending machine restrictions, as if I had a gun. At that point, I put 3 or 4 more m&m's in my mouth and started to chew, that's when Helen Hanlon shouted take the m&m's from him Mr Robert Gray who was standing to my left, moved behind me and abruptly grabbed me around my throat with his arm. Dave Moffott grabbed my left arm, Mr Johnson grabbed my right arm, and lance Sayers grabbed my legs in order to tackle me to the floor, this was done while Robert Gray pulled back in jerks, in which caused me to choke on the m&m candy. I already had in my mouth chewing.

(CONT # 6, P.2)

I repeated in a muffled tone, stop I can't breath, I can't breath, stop I can't breath !!! At that point I was tackled to the floor, were Dave Moffitt, Lance Sapero, Mr Johnson punched and kicked me upon my face, body, arms and legs as Mr. Robert Gray held me in a head lock, with his body under mine, but I was facing upward. At that point, I opened my hand and the m&m's dropped on the floor like marbels. Once I let go of the m&m's they stopped punching and kicking me, I remember thinking that they robbed me for my m&m's. At that time I was picked up off the floor and taken to the isolation room against my will, where I was strapped down with (4) point restraints. The doctor was notified and thereafter Helen Hanlon injected me with a cock tail of psychotropic medications i;e, Haldol, Ativan, Geodon, dispite my repeatedly stating no, no nurse Helen I don't need a shot, I didn't do any thing to deserve being given a shot; but to no avail, I was injected anyway

This was done without Nurse Helen Hanlon first conducting a competency hearing and or a disciplinary before and or after I was injected with the cock tail of said psychotropic medications.

(CONT # 6; P.3)

Helen Hanlon failed to give me a written notice of the alleged psychiatric and or disciplinary infraction. Helen Hanlon failed to allow me to present evidence in my own behalf, and or to call witnesses in my own behalf.

Helen Hanlon specificly injected me with said cocktail of psychotropic medications for the specific purpose of punishment. This is due to Helen Hanlon having full knowledge that the Chief psychiatrist had diagnosed me as malingering.

Helen Hanlon actions caused me injuries such as: Bleeding resulting from the needle bruising and breaking the skin and flesh of my buttocks, persisting and reoccuring migrane headaches, bouts of amnesia, insomnia, a swollen tongue that doesnt move when im trying to speak, body treamors, ear ringing, audio and visual hallucinations, nurve and brain damage resulting from my brain cells being killed, lost cognative and volitional functions regarding matters of hygiene, social conduct involving legal matters of competency, etiquettes, history + culture

This paragraph defines violations of my 8TH + 14TH U.S.C.A rights, as well as my rights established under 11 DEL C§ 468, 6531, 6535, 6523, assult and Battery.

(# 7)

At the Delaware Psychiatric Hospital, on or about 6/21/2004 I was taken to the isolation room against my will. The doctor was notified, and there after I was strapped down with (4) point restraints, and Helen Hanlon against my will injected me with a cocktail of psychotropic medications, i.e, Haldol, Ativan, Geodon. This was done without Helen Hanlon first conducting a competency and or disciplinary hearing before and or after I was injected with with the cocktail of said psychotropic medications.

Helen Hanlon failed to give me a written notice of the alleged psychiatric and or disciplinary infraction. Helen Hanlon failed to allow me to present evidence in my own behalf and or to call witnesses in my own behalf.

Helen Hanlon specificly injected me with said cocktail of psychotropic medications for the specific purpose of punishment. This is due to Helen Hanlon having full knowledge that the chief psychiatrist diagnosed me as malingering.

Helen Hanlon's actions caused me injuries such as: Bleeding resulting from the needle bruising and breaking the skin and flesh of my buttocks —

(cont #7, P.2)

persisting and reoccuring migrane headaches, bouts of amnesia, insomnia, a swollen tongue that doesn't move when im trying to speak, body treamors, ear ringing, audio and visual hallucinations, nurve and brain damage resulting from my brain cells being killed, lost cognative and volitional functions regarding matters of hygiene, social conduct involving legal matters of competency, etiquettes, history & culture.

This paragraph defines violation of my 8TH & 14TH U.S.C.A rights, as well as my rights established under 11 DEC c § 468, 6531, 6535, 6523 assult and Battery.

(# 8.)

At the Delaware Psychiatric Hospital, on or about 6/22/2004 I was taken to the isolation room against my will. The doctor was notified and thereafter I was strapped down with (4) point restraints, and Helen Hanlon against my will injected me with a cocktail of psychotropic medications, i.e, Haldol, Ativan & Geodon. This was done without Helen first conducting a competency and or disciplinary hearing before and or after I was injected with the cocktail of said psychotropic medications.

Helen Hanlon failed to give me a written notice of the alleged psychiatric and or disciplinary infraction. Helen Hanlon failed to allow me to present evidence in my own behalf and or to call witnesses in my own behalf.

Helen Hanlon specifically injected me with said cocktail of psychotropic medications for the specific purpose of punishment. This is due to Helen Hanlon having full knowledge that the chief psychiatrist diagnosed me as malingering.

Helen Hanlon's actions caused me injuries such as: Bleeding resulting from the needle bruising and breaking the skin and flesh of my buttocks —

(Cont # 8, P.2)

persisting and reoccuring migrane headaches, bouts of amnesia, insomnia, a swollen tongue that doesn't move when im trying to speak, body treamors, ear ringing, audio and visual hallucinations, nerve and brain damage resulting from my brain cells being killed, lost cognative and volitional functions regarding matters of hygiene, social conduct involving legal matters of competency, etiquettes, history + culture.

This paragraph defines violations of my 8TH + 14TH U.S.C.A rights, as well as my rights established under 11 DEC CS 468, 6531, 6535, 6523 assult and Battery.

(# 9)

At the Delaware Psychiatric Hospital, on or about 6/22/2004 I was taken to the isolation room against my will. The doctor was notified and thereafter I was strapped down with (4) point restraints, and Margret Wilson against my will injected me with a cocktail of psychotropic medications, i.e, Haldol, Geodon, Ativan. This was done without Margret Wilson first conducting a competency and or disciplinary hearing before and or after I was injected with a cocktail of said psychotropic medications.

Margret Wilson failed to give me a written notice of the alleged psychiatric and or disciplinary infraction. Margret Wilson failed to allow me to present evidence in my own behalf, and or to call witnesses in my own behalf.

Margret Wilson specificly injected me with said cocktail of psychotropic medications for the specific purpose of punishment. This is due to Margret Wilson having full knowledge that the chief psychiatrist diagnosed me as malingering.

Margret Wilson's actions caused me injuries such as: Bleeding resulting from the needle bruising and breaking the skin and flesh of my buttocks :—

(Cont # 9, P.2)

Persisting and reoccuring migrane headaches, bouts of amnesia, insomnia, a swollen tongue that doesn't move when im trying to speak, body-tremors, ear ringing, audio and visual hallucinations, nurve and brain damage resulting from my brain cells being killed, lost cognative and volitional functions regarding matters of hygiene, social conduct involving legal matters of competency, etiquettes, history & culture.

This paragraph defines violations of my 8TH & 14TH U.S.C.A rights, as well as my rights established under 11 DEL c§ 468, 6531, 6535, 6523, assult and Battery.

DATE: 4/6/06

Jimmie Lewis
SBI # 506622
DEL. CORR. CENTER
1181 PADDOCK RD
SMYRNA, DE 19977



More need psychiatric help than ever, but few are getting it

# Mental health patients find little help in Del.

# WILMINGTON DEPARTMENT OF POLICE *EXIBIT # E, P. 1*
## Detainee Assessment / Property Receipt

Detainee's Name: _Lewis, Jimmie_    Case #: _30-03-_
<u>Last, First Middle</u>

Charges: _Carjacking, Theft_    Arresting Officer: _E. Godwin_

Additional Officer: _J. Santana_

Detainee's Physical Condition:    OK ☑    Other ☐

Explain:   (Body deformities/Bruises/Sutures) : _____

_____

_____

Medication: Yes ☑    No ☐    Type: _PSCHOTTOPIC_
_THORAZINE, DEPAKOTE, VISTOIL, RISPERDAL_

Unusual Behavior:
Explain: _Detainee stated Thoughts of suicide,_
_Transfered to M.P.C.J.F Infirmary_

_____

### Detainee's Property                     Seized as Evidence

Currency/Coin U.S. Currency: _7.00_         U.S. Currency: _____
             U.S. Coin: _2.26_              U.S. Coin: _____
             Total: _9.26_                  Total: _____
             (Have detainee initial next to totals)

Clothing: _BELT, WALLET WITH S.S Card, LICENCES (NJ)._

_____

Jewelry: _NECKLESS WITH EGYPTION CROSS, DEVIL HORNS and_
_CAT eye CONTACT LENSES_

Miscellaneous: _3 SETS OF keys (ONE SET VICTIMS),_
_PSYCH TREATMENT PLAN, Amtrack TRAIN Ticket_

_[signature]_                _06/26/03_        _0621_  hours
Officer Receiving Property     Date            Time

_[signature]_  _____    _____  hours
Transporting Officer    Date   Time

I, _____, have received the above property from the Wilmington Department of Police, which
was taken from me on the above date. _____   _____ hours.
                                        Date            Time

Form To Be Completed in Duplicate

*EXHIBIT F, P. 1*

## DELAWARE PSYCHIATRIC CENTER
Patient/Family Grievance, Concern or Suggestion Form

NAME: Jimmie Lewis                                    DATE: 6/9/04

UNIT: NORTH        ATTENDING PSYCHIATRIST: Dr. Foster

**DIRECTIONS:** *In the space below, please state as clearly and specifically as possible your grievance, concern or suggestion. (Use additional pages if necessary.) If you need help in completing this form unit staff, pastoral services (255-2984) or a member of the Patient Rights Committee (255-2978) are available for assistance. Upon completion, return the signed and dated form to unit staff or directly to your psychiatrist.*

I DON'T EAT PORK AND VEAL OR PRODUCTS PRODUCED FROM YEAST SUCH AS BREAD, CAKES, PANCAKES, WAFFLES AND FRENCH TOAST IN WHICH ARE A MAJORITY OF THE FOOD SOURCE HERE. THESE ITEMS CAUSE ME IRRITABLE BOWELS. I EXPLAINED TO THE DIETICIAN THAT I ALSO HAVE HIGH BLOOD PRESSURE AS WELL AS LACTOSE INTOLERANT, BUT I CAN EAT CHEESE. SINCE I HAVE BEEN RECEIVING THE CHEF SALAD I HAVE BEEN ABLE TO AVOID SNACK FOODS THAT CAUSE MY BLOOD PRESSURE TO SPIKE OR RIS IN WHICH IN SOME WAY OR ANOTHER EFFECTS MY BEHAVIOR. ALSO DUE TO MY LIMITED SELECTION, I ONLY RECEIVE A SMALL TRAY OF EGG AND A DRY BOX OF CEREAL FOR BREAKFAST, TO WHICH THE SALAD HAD BALACED OUT

Patient/Family Signature: Jimmie Lewis          Date: 6/9/04

Received By: Anne Lawrence, Rn               Date: 6/9/04

DIRECTIONS FOR STAFF:
*Please make a copy of this sign/dated form and provide it to the patient/family member. Forward the original form immediately to the Treatment Team and fax a copy to the Clinical Risk Manager in the Department of Planning and Performance Improvement. (255-4418)*

P. 2

---

### DELAWARE PSYCHIATRIC CENTER
Patient/Family Grievance, Concern or Suggestion Form

NAME: _JIMMIE LEWIS_     DATE: _6 / 9 / 04_

UNIT: _NORTH_     ATTENDING PSYCHIATRIST: _DR. FOSTER_

**DIRECTIONS:** *In the space below, please state as clearly and specifically as possible your grievance, concern or suggestion. (Use additional pages if necessary.) If you need help in completing this form unit staff, pastoral services (255-2984) or a member of the Patient Rights Committee (255-2978) are available for assistance. Upon completion, return the signed and dated form to unit staff or directly to your psychiatrist.*

FOR SEVEN YEARS I LET MY HAIR GROW NATURAL WITHOUT BRINGING A RAZOR/COMB TO MY HAIR, IN WHICH IS THE LAW OF THE NAZIRITE, RASTAFARIAN. SEE "THE HOLY BIBLE", THE BOOK OF NUMBERS CHAPTER 6.
BUT THERE CAME A TIME THAT I CAME IN CONTACT WITH A DEAD PERSONS BODY, IN WHICH CAUSED ME TO COMMITT THE WRITTEN RITUAL OF CUTTING OFF AND OFFERING MY HAIR AS A BURNT SACRIFICE. AT THIS TIME I AM IN A CONCERCRATED STATE SET APART FOR A HOLY PURPOSE, TO WHICH GIVES REASON TO WHY I NEED TO CONTINUE CUTTING MY HAIR SPECIFICLY UNTIL MY VOW HAS RUN ITS COURSE.

Patient/Family Signature: _Jimmie Lewis_     Date: _6/9/04_

Received By: _Anna Lawrence, Rn_     Date: _6/9/04_

DIRECTIONS FOR STAFF:
*Please make a copy of this sign/dated form and provide it to the patient/family member. Forward the original form immediately to the Treatment Team and fax a copy to the Clinical Risk Manager in the Department of Planning and Performance Improvement. (255-4418)*

P.3

## DELAWARE PSYCHIATRIC CENTER
Patient/Family Grievance, Concern or Suggestion Form

NAME: _Jimmie Lewis_   DATE: _6/20/04_

UNIT: _North_   ATTENDING PSYCHIATRIST: _____

**DIRECTIONS:** In the space below, please state as clearly and specifically as possible your grievance, concern or suggestion. (Use additional pages if necessary.) If you need help in completing this form unit staff, pastoral services (255-2984) or a member of the Patient Rights Committee (255-2978) are available for assistance. Upon completion, return the signed and dated form to unit staff or directly to your psychiatrist.

For the last past week or so I have been trying to deal with the incident that happened in the dinning room, in which I was assulted and chocked until I almost passed out by Mr Grey. My throat is still soar. I've tried to use the advise I've received from the classes, but I still have my mind on the incident constant.

I don't know how to deal with this

Patient/Family Signature: _Jimmie Lewis_   Date: _6/20/04_

Received By: _Karen Chamblin_   Date: _6-20-04_

DIRECTIONS FOR STAFF:
Please make a copy of this sign/dated form and provide it to the patient/family member. Forward the original form immediately to the Treatment

*EXIBIT G, P.1*                    *P.1)*

Department of Health and Human Services
Division of Alcoholism, Drug Abuse and
Mental Health

Delaware Psychiatric Center

Department of Psychology

TP-3 - PSYCHOLOGICAL ASSESSMENT

◆◆◆ **CONFIDENTIAL** ◆◆◆

STATE OF DELAWARE

V.

JIMMIE LEWIS

ID NO. 0305016966

**PATIENT NAME:** Jimmy Lewis
**EDUCATION:** High School Diploma
**OCCUPATION:** Currently Unemployed; Most Recent: "Sanitation Porter"
**MARITAL STATUS:** Single
**AGE:** 37
**GENDER:** Male
**DATE:** May 24, 2004
**INTERVIEWED BY:** Annabel Lee Fields, MA

Kathryn Sheneman, Psy.D.
Staff Psychologist

Annabel Lee Fields, M.A.
Psychology Intern

**REASON FOR HOSPITALIZATION:**

Mr. Lewis was transferred to the Delaware Psychiatric Center (DPC) on 05/21/04 for determination of his adjudicative competency and to receive treatment for his own well-being. His current diagnosis is Alcohol Abuse. He has been charged with Carjacking Second Degree, Theft $1000 or Greater, and Resisting Arrest.

**PSYCHOLOGICAL AND MENTAL STATUS:**

*Attention, Orientation, and Memory*

Mr. Lewis attended this interview without needing to be escorted by staff. He presents as a well-built dark-skinned male with African American features who appears younger than his stated age. His dress was neat and clean, and his hygiene appeared good – his head is clean-shaven. He was cooperative throughout the 70-minute interview. He was able to focus for the most part, although he strayed from the topic occasionally and gave more information than was asked of him. He was not sure of the name of the

facility in which the interview was conducted, but he knew it was a hospital. He knew the day of the week and the year, but not the month or date. His immediate and long-term memories appear to be intact. However, he stated that he felt that he had difficulty with his short-term memory and this was evident during the interview – he could only recall one out of three novel words after five minutes, and would repeat information he had already given (he seemed unaware that he was repeating himself).

## Affect, Thought Processes

Mr. Lewis's stated mood was "confused...a little agitated." He explained that his roommate had masturbated in front of him the previous night, and that he was still feeling somewhat upset about that incident. He displayed a full range of affect, which was appropriate to the content at all times. The speed and volume of his speech were all appropriate to the situation. He rambled at times and gave more information than was asked of him. His judgment and insight appear limited at this time. His intellectual functioning seems to be average.

For the most part, Mr. Lewis's speech and thought content appeared to be logical. He expressed some strange ideas and thoughts, however. He said that he sometimes wears horns on his head because "only the devil should have to go through this," and that it makes him feel better (although he was not able to explain what it made him feel better about). He has put horns on his head since his admission to DPC. He stated that he also did this on the street, and that he "even got cat's eye contacts" to wear. While talking about this, he made a reference to "flames of enlightenment" but did not explain what that meant. He also said that he was with two guards at one time whose names were "Godwin" and "Santana." He explained that these names reminded him of "God" and "Satan," and he said that he believed there was a struggle between good and evil because these guards were with him.

Mr. Lewis reported that he has experienced auditory hallucinations in the past. He said that he hears a single male voice that he does not recognize. He hears the voice say his name, and it "commands me to do stuff" such as to yell or to hit people. Although he stated that he is able to refrain from doing what the voice tells him to do, he also admitted that he has acted on the commands in the past. He also reported that he hears music and "like footsteps in the hall but no one's there." He said that he experiences visual hallucinations that "freak me out sometimes." He stated that he sees shadows "peeking in" on him, but they are always far enough away that he needs to get up to see if anything is really there.

Mr. Lewis expressed some paranoid ideation during the interview. He said that, when he sees people whispering, he often thinks they are talking about him. He also said that he used to hear sirens in his neighborhood, and that this would trigger thoughts that people were after him. At first, he thought the police were involved, and then he gradually thought other people, including his mother, could be involved. He reported that he had (and still has) no idea why people may have been after him. He also said that he was shot by a police officer in 1989, and that he thinks that this may have led to the belief that people were after him. He does not believe that there is anyone after him at this time.

( P. 3.)

### Relationships, Family Involvement

Mr. Lewis reported that his parents separated when he was two years old but never formally divorced. He lived with his mother after the separation, but visited with his father frequently until he was 12 or 13 years old. They lost contact at that time. He moved out of his mother's house in 10th grade and got an apartment with his girlfriend. When they broke up, he went to live with his father for approximately 9 months. His biological parents had another son who died of an asthma attack in 1987. Although his parents are not legally divorced, his father is in a relationship with another woman. He has one half brother from that relationship, as well as three stepbrothers and one stepsister.

Mr. Lewis seemed unsure of whether there is a history of psychiatric illness in his family. He stated that one of his maternal aunts has some bizarre behaviors, and that he has a paternal aunt who he thinks is "mentally ill." He stated that his father is a recovering alcoholic, and that several of his maternal aunts and uncles have problems with alcohol and drugs. He has phone contact with his mother fairly regularly. He says that his father does not use a telephone, but that they have written letters to each other on occasion.

### Work History

Mr. Lewis stated that his most recent job was as a "sanitation porter," and that the job he had the longest (3 months) was preparing cars for new owners at a car dealership. He stated that he has been fired more than ten times. He also stated that has been trained as a carpenter, brick mason, and long-distance trucker.

### Substance Abuse Issues

Mr. Lewis reported that he began using alcohol and marijuana when he was a teenager (he was unable to be more specific). He used marijuana two or three times per week, but only used it for two years. He drinks two or three times per week – usually on the weekends. He stated that he plans to continue drinking occasionally when he is released from custody.

### Medical Conditions

Mr. Lewis has been told that he has hypertension and was treated with medication. Later he was told that he does not have hypertension, but the medication was continued in any event. He also suffers from athlete's foot and irritable bowel syndrome.

### Attitude Towards Hospitalization, Future Plans, and Goals

When asked how he feels about being at DPC, Mr. Lewis stated, "really uncertain about that right now." When asked how he feels about his treatment thus far, he stated, "fair." He chose not to elaborate.

Mr. Lewis stated that his long-term goal is to "put the issues that keep me from obtaining stable employment so that I can get a stable start." His immediate goal is to "do research" for a book about the history and experiences of black people. He says that he has already titled it: "From the Pyramids, to the Plantations, to the Projects, to the Penitentiary, and Now to the Promised Land."

P.4

facility in which the interview was conducted, but he knew it was a hospital. He knew the day of the week and the year, but not the month or date. His immediate and long-term memories appear to be intact. However, he stated that he felt that he had difficulty with his short-term memory and this was evident during the interview – he could only recall one out of three novel words after five minutes, and would repeat information he had already given (he seemed unaware that he was repeating himself).

*Affect, Thought Processes*

Mr. Lewis's stated mood was "confused…a little agitated." He explained that his roommate had masturbated in front of him the previous night, and that he was still feeling somewhat upset about that incident. He displayed a full range of affect, which was appropriate to the content at all times. The speed and volume of his speech were all appropriate to the situation. He rambled at times and gave more information than was asked of him. His judgment and insight appear limited at this time. His intellectual functioning seems to be average.

For the most part, Mr. Lewis's speech and thought content appeared to be logical. He expressed some strange ideas and thoughts, however. He said that he sometimes wears horns on his head because "only the devil should have to go through this," and that it makes him feel better (although he was not able to explain what it made him feel better about). He has put horns on his head since his admission to DPC. He stated that he also did this on the street, and that he "even got cat's eye contacts" to wear. While talking about this, he made a reference to "flames of enlightenment" but did not explain what that meant. He also said that he was with two guards at one time whose names were "Godwin" and "Santana." He explained that these names reminded him of "God" and "Satan," and he said that he believed there was a struggle between good and evil because these guards were with him.

Mr. Lewis reported that he has experienced auditory hallucinations in the past. He said that he hears a single male voice that he does not recognize. He hears the voice say his name, and it "commands me to do stuff" such as to yell or to hit people. Although he stated that he is able to refrain from doing what the voice tells him to do, he also admitted that he has acted on the commands in the past. He also reported that he hears music and "like footsteps in the hall but no one's there." He said that he experiences visual hallucinations that "freak me out sometimes." He stated that he sees shadows "peeking in" on him, but they are always far enough away that he needs to get up to see if anything is really there.

Mr. Lewis expressed some paranoid ideation during the interview. He said that, when he sees people whispering, he often thinks they are talking about him. He also said that he used to hear sirens in his neighborhood, and that this would trigger thoughts that people were after him. At first, he thought the police were involved, and then he gradually thought other people, including his mother, could be involved. He reported that he had (and still has) no idea why people may have been after him. He also said that he was shot by a police officer in 1989, and that he thinks that this may have led to the belief that people were after him. He does not believe that there is anyone after him at this time.

*Relationships, Family Involvement*

Mr. Lewis reported that his parents separated when he was two years old but never formally divorced. He lived with his mother after the separation, but visited with his father frequently until he was 12 or 13 years old. They lost contact at that time. He moved out of his mother's house in 10th grade and got an apartment with his girlfriend. When they broke up, he went to live with his father for approximately 9 months. His biological parents had another son who died of an asthma attack in 1987. Although his parents are not legally divorced, his father is in a relationship with another woman. He has one half brother from that relationship, as well as three stepbrothers and one stepsister.

Mr. Lewis seemed unsure of whether there is a history of psychiatric illness in his family. He stated that one of his maternal aunts has some bizarre behaviors, and that he has a paternal aunt who he thinks is "mentally ill." He stated that his father is a recovering alcoholic, and that several of his maternal aunts and uncles have problems with alcohol and drugs. He has phone contact with his mother fairly regularly. He says that his father does not use a telephone, but that they have written letters to each other on occasion.

*Work History*

Mr. Lewis stated that his most recent job was as a "sanitation porter," and that the job he had the longest (3 months) was preparing cars for new owners at a car dealership. He stated that he has been fired more than ten times. He also stated that has been trained as a carpenter, brick mason, and long-distance trucker.

*Substance Abuse Issues*

Mr. Lewis reported that he began using alcohol and marijuana when he was a teenager (he was unable to be more specific). He used marijuana two or three times per week, but only used it for two years. He drinks two or three times per week – usually on the weekends. He stated that he plans to continue drinking occasionally when he is released from custody.

*Medical Conditions*

Mr. Lewis has been told that he has hypertension and was treated with medication. Later he was told that he does not have hypertension, but the medication was continued in any event. He also suffers from athlete's foot and irritable bowel syndrome.

*Attitude Towards Hospitalization, Future Plans, and Goals*

When asked how he feels about being at DPC, Mr. Lewis stated, "really uncertain about that right now." When asked how he feels about his treatment thus far, he stated, "fair." He chose not to elaborate.

Mr. Lewis stated that his long-term goal is to "put the issues that keep me from obtaining stable employment so that I can get a stable start." His immediate goal is to "do research" for a book about the history and experiences of black people. He says that he has already titled it: "From the Pyramids, to the Plantations, to the Projects, to the Penitentiary, and Now to the Promised Land."

P.6

**DURING THE PAST 12 MONTHS, HAS PATIENT DEMONSTRATED EITHER SUICIDAL OR ASSAULTIVE BEHAVIOR? DESCRIBE:**
        Mr. Lewis denies any present suicidal or homicidal ideation.  He reported that he slit his wrists in 2001 due to depression and "a lot of hopelessness."  This was his only suicide attempt.  He said that he has never been charged with assault.  However, he admits to being in three fights while in prison because he was "attacked" by others.

**STRENGTHS AND WEAKNESSES AS THEY RELATE TO TREATMENT:**
        STRENGTHS:
- Mr. Lewis is very articulate.
- Mr. Lewis is a high school graduate.
- Mr. Lewis has been trained as a carpenter, brick mason, and long-distance trucker.
- Mr. Lewis expresses an interest in receiving help for his symptoms.

        WEAKNESSES:
- Mr. Lewis has legal charges pending against him.
- Mr. Lewis has a poor work history – he has been fired at least ten times, and the longest job he had lasted only 3 months.
- Mr. Lewis seems to have poor impulse control when he feels that he is being "attacked."

**RECOMMENDATIONS:**
        Mr. Lewis should meet with a member of the psychology staff on at least a bi-weekly basis to discuss important issues.  He should attend any groups that may be offered that address the things he is working on.

AG Office RAP Sheet                              Page        1

*EXHIBIT H, P. 1*

This is the criminal record of:
    JIMMY        LEWIS                   DOB      ,1966 SBI # 00506622

| Arresting Agency | Name (Including Aliases) | Date of Arrest/ Offense | Complaint Number/ Charge | Disposition |
|---|---|---|---|---|
| Wilmington PD Wilmington | JIMMY LEWIS<br><br>AG CASE: NC03006555 | 05/26/03<br>05/26/03 | 3003049370<br>RESISTING<br>ARREST | DISP=BOPC |
| Wilmington PD Wilmington | JIMMY LEWIS<br><br>AG CASE: NC03006555 | 05/26/03<br>05/26/03 | 3003049370<br>Theft $1000<br>or Greater<br>(Deprive<br>Person) | DISP=BOPC |
| Wilmington PD Wilmington | JIMMY LEWIS<br><br>AG CASE: NC03006555 | 05/26/03<br>05/26/03 | 3003049370<br>CARJACKING<br>SECOND<br>DEGREE TAKE<br>VEHICLE FROM<br>ANOTHER<br>IMMEDIATE<br>PRESENCE | DISP=BOPC |

54



**DELAWARE HEALTH
AND SOCIAL SERVICES**

DIVISION OF SUBSTANCE
ABUSE AND MENTAL HEALTH

*EXHIBIT I, P. 1*

DELAWARE PSYCHIATRIC CENTER

June 15, 2004

The Honorable Charles H. Toliver IV
Superior Court of Delaware
500 King Street, Suite 10400
Wilmington, DE 19801

**RE:     Lewis, Jimmy**
**ID#:    0305016966**

Dear Judge Toliver:

Enclosed herewith, please find the written report (s) by Sylvia Foster, MD. concerning the above
named defendant.

Should you require any further information, please do not hesitate to contact me.

Respectfully,

Michael S. Talmo, M.Ed.
Director
Delaware Psychiatric Center

MST/jld

cc:     Phebe Young, Deputy Attorney General
        Dianne Stachowski, Unit Director
        Richard Sadowsky, Ph.D.
        Ranga Ram, MD
        John Edinger, Esquire
        Deputy Attorney General's Office

*P. 2*

# Delaware Psychiatric Center
## Forensic Unit
### (Jane E. Mitchell Building)

### Forensic Psychiatric Evaluation

**Examinee:**          **Jimmy Lewis**          **ID #: 0305016966**

Date of Birth:          25 December 1966 (Current Age: 38)
Examiner:               Sylvia Foster, M.D.
Period of Evaluation:   21 May 2004 - present
Date of Report:         10 June 2004

### REASON FOR EVALUATION:

Mr. Lewis was referred to The Delaware Psychiatric Center (DPC) for forensic psychiatric evaluation by *Motion and Order* of the Honorable Charles H. Toliver, In the Superior Court of the State of Delaware, In and For New Castle County, on 1 December 2003, to determine his competency to stand trial and to obtain treatment for his own well-being.

### NOTIFICATION:

Upon admission to the Forensic Unit, Mr. Lewis was informed that he was being evaluated by Court Order, and that the results of all evaluations performed during this admission would not remain confidential, but would be disseminated to the Court, the prosecution, and his attorney.

### EXAMINER:

Medical Doctor specializing in Psychiatry with Board Certification, sub-specializing in Forensic Psychiatry

### LIST OF CHARGES:

Carjacking 2nd Degree
Theft $1000 or greater
Resisting Arrest

### SOURCES OF INFORMATION:

Face-to-face interview with Mr. Lewis on 21 May 2004 and various times thereafter
        on the Forensic Unit at DPC
Superior Court Criminal Docket

Seven page statement by Mr. Lewis regarding his social and legal history and his account
    of the crime, undated
Medical Records, Delaware Psychiatric Center, 21 May 2004 – present
Medical Records, First Correctional Medical (FCM), 5 March 2003 – 31 March 2004
Case Charge List
Complaint and Warrant
Exhibit A & B
Charge History Record
Letter from Donald Napolin, LSCW, to The Honorable Charles H. Toliver, 5 May 2004

## CURRENT MEDICATIONS:

Seroquel 50 mg twice daily for anger management and impulse control
Atenolol 25 mg daily for hypertension

## BACKGROUND INFORMATION:

Mr. Lewis was a 38-year-old African American male who presented to the Mitchell
Building based on an evaluation by Dr. Joshi, a prison psychiatrist. Dr. Joshi described
Mr. Lewis on 27 May 2003 as "psychotic and delusional, a danger to self and others,
refusing to take medication." He had assaulted a Correctional Officer, and was
transferred to the infirmary. Mr. Lewis was described as saying, "I can't distinguish
between right and wrong. I am hearing voices telling me to hurt myself and I'm seeing
shadows."

Mr. Lewis had been incarcerated on 17 November 2003 and convicted of Carjacking,
Theft and Resisting Arrest. According to the police report, Mr. Lewis was picked up by a
male driver who was out looking for a male companion for the evening. Mr. Lewis
allegedly attempted to rob the driver, at which point the driver jumped out of the vehicle
in fear, and Mr. Lewis drove off with the car. He allegedly resisted arrest when caught,
and was identified by the driver as the person who stole his car.

According to FCM records, Mr. Lewis was "flirtatious" at times, and had to be redirected
for asking personal questions of the mental health examiner. She confronted his
"narcissism and attention-seeking behaviors," and questioned the diagnosis of
Schizophrenia that had been given him by the physician. Mr. Lewis refused all
medication, requesting only Xanax and Valium (highly addictive drugs of the
Benzodiazepine family). He asked for art materials, and pornography, stating that these
items would be very helpful. He presented with, "broad mood and good eye contact, with
no suicidal, homicidal ideation and no auditory or visual hallucinations." He was
frequently argumentative and loud. He was observed wearing "paper horns," saying, that
they made him feel more comfortable. "It helps me deal with whatever I'm going
through. The horns are like a mask. If I deal with these things within me, I'll be a better
person, being unjustly accused." He was also described as calm and controlled. He
spoke of hearing voices but stated, "I don't know whether it's voices or just my

P. 4

thoughts." Mr. Lewis stated later that he wore the paper horns and the cat's eye contact lenses for the "scare" factor.

Not much is known about Mr. Lewis' legal history as he is from out of state. However, he said that he had been in prison for six or seven years in New Jersey, from about 1993 to 2000. He added that he had been sentenced to six years for Robbery, "I pick-pocketed somebody," but his jail time had been prolonged for fighting.

Mr. Lewis had no psychiatric history. He saw a counselor as a child in New Jersey where he grew up. At first he said he didn't remember why, but shortly thereafter remembered that it was because his mother had become involved in a Lesbian relationship. "I didn't approve of it and I voiced my opinion to her, and I started misbehaving. I didn't like the lady and I didn't like the idea of the relationship." He went on to explain, "I might have accepted it if it had been presented to me differently, but I saw this lady actually twist my mother's arm to tell me about the [Lesbian nature of the] relationship. I had thought they were just close friends." Mr. Lewis' mother told the team social worker that he had been attention-seeking as a youth, and that he felt no one ever paid enough attention to him. She said she always felt that whatever someone was doing, they should stop, and attend to his needs. He blamed his mother for his current problems due to her homosexual affair. His parents had separated when Mr. Lewis was two years old, at which time Mr. Lewis' father had gone to live in North Carolina.

Mr. Lewis stated that he had been employed in construction and as a porter. "Whatever job was open, I was doing it." However, he added, "I've been fired more than ten times." The longest job he ever held was three months. "I would always argue, or go in late, and I'd get fired." He admitted to selling drugs off and on. "That's what I had to do to have money. Then I got to selling bootleg CD's and DVD's."

Mr. Lewis dropped out of the tenth grade, but later obtained a GED. He changed that idea later, and said that he had a high school diploma. His mother maintained that he actually had a GED. He said, "She thought wrong." He attended the American Business Institute, but did not stay long, ending up owing them money. He related that he had been attending commercial drivers' school to drive eighteen-wheelers just prior to his incarceration. "It was going to be my first job; Poland Springs was going to hire me."

Mr. Lewis stated that he been shot by a police officer ten years ago, with gunshot wounds to the left hip and left arm. He had history of hypertension for which he was being medicated, and history of kidney infection. He had no other significant medical or surgical history.

Mr. Lewis had never married, stating, "Every time I get into a relationship, we always argue." He was with one girlfriend off and on for eight years.

Mr. Lewis reported that he began drinking alcohol in his teens, with his last use just prior

use. He also admitted to smoking marijuana sixteen years ago, but denied all other illicit drug use. It was considered probable that he was minimizing his addiction issues

HOSPITAL COURSE:

Mr. Lewis became verbally unresponsive, selectively mute, and categorically refused to answer any questions on the day of admission. He also refused the initial physical examination. Later the same day, Mr. Lewis was observed interacting in a normal manner on the unit. Several days later, the initial examinations were completed without problem. He eventually explained that he had not felt like speaking on the first day.

Mr. Lewis' hospital course has been complicated by his aggressive, assaultive behavior. He was overheard making physical threats, observed taunting and laughing at his peers, taking pleasure in embarrassing them, and was
                                    . He complained of hearing voices sporadically but displayed no evidence of preoccupation with internal stimuli when he believed he was not being observed.

The team psychologist described Mr. Lewis in the following manner in the anger management group: arrogant, disruptive and instigating. While the other older patients tried to have a calming influence, Mr. Lewis displayed no sense of boundaries or respect for authority. She added that there was nothing odd or bizarre about his behavior that would suggest a psychotic disorder. Other therapists noted that he was disruptive in the group setting, talking out of turn, and making obscene comments while watching educational videos. When evaluated by the team, he made it clear that he would rather be at DPC rather than in jail in order to "get some help." When asked what help he needed, or what we could do for him, he answered he didn't know.

One staff member stated that she found Mr. Lewis to be engaging, intelligent and articulate, but noted his sense of entitlement, and his demand that things be done his way. Mr. Lewis stated that he needs to do "outlandish things" to get attention, such as wearing paper horns and wearing his cat's eye lenses. It was explained to him that he would not be allowed to wear his paper horns at any time while at DPC, after he placed them on his head at one point. He understood, and did not attempt to wear them again. He was noted to attempt to intimidate one female therapist by facing her in the hallway and stating, "I just want to get my point across that whatever you said about me in team meeting was wrong and derogatory."

On 6/7/04, a special meeting with Mr. Lewis was called to address his grossly inappropriate behavior on the unit the night before. He was angered by not receiving a certain salad at dinner to which he believed he was entitled, and assaulted a peer and a staff member, escalating to the point where he was difficult to redirect. In summary, he was noted to be disruptive in the group setting, to taunt his peers, to intimidate and flirt with therapists, and to make obscene comments. There were reports to the contrary by other staff members who reported that Mr. Lewis was cooperative and helpful in the milieu, tending to get loud and demanding at times when he felt his needs were not being met in a timely fashion.

Initially, Mr. Lewis was prescribed no psychotropic medication, as there was no evidence of a mood disorder, and no evidence of psychosis. However, Seroquel was begun after it became evident that Mr. Lewis had difficulty managing his anger, and controlling his impulses.

## CURRENT MENTAL STATUS EXAM:

Mr. Lewis presented with shaved head, and was appropriately dressed. He was cooperative, and able to sit quietly for the examination with no abnormal motor activity. His speech was normal in rate, tone and volume, and there was no evidence of loud, pressured speech. He stated that his mood was "sensitive, and easily irritated." His affect was full range. His thought processes, assessed by the verbalizations of his thoughts and feelings, were goal directed; there was no evidence of loosening of associations or tangentiality. His thought content displayed no delusions. He was not thinking about suicide, although he maintained that he had been thinking about it. "But I don't really want to do it." He was not thinking about hurting others, and stated, "I'm not on the defensive unless there's a reason." He denied obsessions, compulsions, racing thoughts, paranoia, delusions, special powers, hyper-religiosity, and grandiosity. His cognitive functions were intact grossly. His insight and judgment were considered intact.

## COMPETENCY ASSESSMENT:

Mr. Lewis was presented the questions to the McGarry Criteria as cited in State of Delaware v. Joseph A. Shields, 593 A.2nd, 986 (Del. Super. 1990), p. 1000. Based upon the present examination, Mr. Lewis demonstrated that he does have sufficient present capacity to consult with an attorney with a reasonable degree of rational understanding of court procedures. He is fully able to understand the nature of the proceedings against him, to give evidence in his own defense and to instruct counsel on his behalf.

It should be noted that Mr. Lewis handed out a highly articulate, well-written explanation of his actions on the day of the alleged crime. It reveals a high level of education and intelligence, and highlights his excellent ability to give evidence in his own defense and to instruct counsel on his behalf.

## DIAGNOSIS:[1]

| | |
|---|---|
| Axis I: | Malingering; Alcohol Abuse; History of Conduct Disorder |
| Axis II: | Antisocial Personality Disorder |
| Axis III: | Hypertension |
| Axis IV: | Psychosocial and Environmental Problems: Incarceration |
| Axis V: | Global Assessment of Functioning (GAF) Scale (1 – 100): 50 |
| | Serious impairment in social and occupational functioning |

---

[1] American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000.

OPINION:

The opinions expressed in this report are held with a reasonable degree of medical certainty, and are based upon the direct examination of Mr. Lewis, the observations reported by staff and therapists on the Forensic Unit, and the previous reports and records available for review. These opinions are subject to change if additional information or records become available.

Assessment:

The essential feature of Malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as getting out of prison into a psychiatric unit. Malingering should be strongly suspected in the presence of Antisocial Personality Disorder.

Mr. Lewis demonstrated no evidence of a mood disorder or psychosis during his admission to DPC, and it is not likely that he ever had Schizophrenia or any other chronic psychotic disorder.

SUMMARY OF OPINIONS AND RECOMMENDATIONS:

1.    Mr. Lewis is psychiatrically stable and can be returned to prison.

2.    It is my opinion that Mr. Lewis is competent to stand trial.

3.    It is my opinion that, as in the case of many people with Antisocial Personality Disorder, Mr. Lewis may need to remain on his medication to help with anger management and impulse control

4.    Any threats made by Mr. Lewis to harm himself or others should be taken seriously as he is highly manipulative and will stop at little to obtain his goals.


Sylvia Foster, M.D.
Forensic Psychiatrist



EXHIBIT J, P. 1                                    43

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR THE COUNTY OF NEW CASTLE

STATE OF DELAWARE            :
                             :
      v.                     :
                             :
JIMMY LEWIS                  :            I.D. No. 0305016966
                             :

### NOTICE OF MOTION

TO:    John S. Edinger, Esquire
       Office of the Public Defender
       820 North French Street
       Wilmington, DE 19801


**PLEASE TAKE NOTICE** that the within Motion to Declare Jimmy Lewis

an Habitual Offender is being filed with the Court, and will be heard at the time of sentencing.


Brian J. Robertson
Deputy Attorney General
Department of Justice
820 N. French Street, 7th Floor
Wilmington, DE  19801

DATE: July 15, 2004

2004 JUL 19 PM12: 29    FILED PROTHONOTARY



*P.3*

## PUBLIC DEFENDER OF THE STATE OF DELAWARE
### ELBERT N. CARVEL STATE OFFICE BUILDING
### 820 NORTH FRENCH STREET, THIRD FLOOR
### P.O. BOX 8911
### WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

JOHN S. EDINGER
ASSISTANT PUBLIC DEFENDER

TELEPHONE
(302) 577-5137

November 10, 2004

The Honorable Peggy L. Ableman
Superior Court of Delaware
New Castle County Courthouse
500 N. King Street
Wilmington, DE 19801

RE:   State v. Jimmy Lewis
      ID# 0305016966

Your Honor:

On July 15, 2004 the State filed notice that it was seeking to have Jimmy Lewis declared an habitual offender. The State submitted that Mr. Lewis has previous convictions in Essex County, New Jersey and Dade County, Florida.  Today, Mr. Lewis has told me he wishes to challenge the State's motion on the grounds that he was not convicted of the felonies alleged in the State's petition.

Respectfully submitted,

John S. Edinger, Jr.
Assistant Public Defender

JSE:mls

cc:  Brian J. Robertson, DAG
     Jimmy Lewis

3004452

1301 E. 12th Street
WILMINGTON DE, 19809
Phone No. 302-429-7700

EXHIBIT R, P.1

# DISCIPLINARY REPORT

| Disciplinary Type: Class1 | | Housing Unit: Infirmary | IR#: 3006591 | | |
|---|---|---|---|---|---|

| SBI# | Inmate Name | Inst. Name | Location Of Incident | Date | Time |
|---|---|---|---|---|---|
| 00506622 | Lewis, Jimmy | HRYCI | Pod 1D | 04/23/2004 | 09:50 |

Violations: 1.06/200.203 Disorderly or Threatening Behavior, 1.13 Fighting

Witnesses:1. Armstrong, Archie        2. N/A        3. N/A

## Description of Alleged Violation(s)

On Or About 4-23-04 At Approximately 0950, On 1-D-Pod, I/M Davis, William Sbi# 00162762, Cell#15 And I/M Lewis, Jimmy Sbi 00506622, Cell#5 Were Arguing On The Dayroom Floor, During Chow. It Became Disorderly And Threatening, Then Punches Wer Thrown By Inmates. I C/O Armstrong Gave Both Inmates A Direct Order To Lock-In. Both Inmates Proceeded To Lock-In With N Further Problems.

Reporting Officer: Armstrong, Archie  (Correctional Officer)

## Immediate Action Taken

Immediate action taken by: Armstrong, Archie  -Correctional Officer

Notified Lead Worker

## Offender Disposition Details

Disposition: Other                Date:04/23/2004   Time: 12:48        Cell secured? Yes

Reason: N/A

Disposition Of Evidence: N/A

## Approval Information

Approved:☐        Disapproved: ☐        Approved By:, ()

Comments: N/A

## Shift Supervisor Details

Date Received: 04/23/2004        Time: 12:48        Received From: __

Shift Supervisor Determination:

[ ]   Upon reviewing this Disciplinary Report, I conclude that the offense may be properly responded to by an immediate
       revocation of the following privileges(see reverse side) for _____ hours not to exceed 24 hours)

[X]   Upon reviewing this Disciplinary Report, I conclude that the offense would be properly responded to by Disciplinary Hearin

_____
                                      , ()

I have received a copy of this notice on DATE: 4/23/04        TIME: 1245        and have been informed of my rights to have
a hearing and to present evidence on my own behalf. I understand, if found guilty, I will be subject to imposition of sanctions
outlined in the Rules of conduct.

Preliminary Hearing
Officer:        Sergant Fad Way        Offender: _____
                        Way, Fred III                                Lewis, Jimmy

FORM #: 127 (F&B)
(2-part NCR)
Revised: 6/01

NOTICE OF DISCIPLINARY HEARING
FOR MINOR/MAJOR OFFENSE

P. 2

To be completed by
Hearing Office
DR + 3004452

TO:    Inmate: LEWIS, JIMMY    SBI#: #506622    HOUSING UNIT: INF

1. You will be scheduled to appear before the Hearing Office to answer charges pending against you. (Staff are to explain the charges as listed on the 122.)

2. At that time, a hearing will be held to determine whether you violated Institutional Rule(s) as alleged in the attached Disciplinary Report.
   How do you plead?    [  ] Guilty    [X] Not Guilty

3. A "Minor Offense" is a rule violation in which the extent of the sanction to be imposed shall be restricted to:
   a.  Written Reprimand
   b.  Loss of one or more privileges for a period of time <u>of more than 24 hours but less than 5 days.</u>

4. A "Major Offense" is a rule violation in which the extent of the sanction to be imposed shall be restricted to:
   a.  Loss of one or more privileges for a period <u>of more than 15 days but less than 90 days.</u>
   b.  Confinement to assigned quarters for a period of time not to exceed 30 days.
   c.  Isolation confinement for a period of time not to exceed 30 days.
   d.  Loss of good time for a period not to exceed 30 days.
       (Forfeiture of accumulated good time shall be subject to the approval of the Commissioner or his designee.)

5. You have the right in the disciplinary process as stated on the lower and back of this page. These have been fully explained to you at the time of this notification.

6. Counsel requested?    [  ] Yes    [X] No    Name of Counsel: _____

7. Witness requested?    [X] Yes    [  ] No    Name(s) of Witness: HARLEY  # 17 (ID)
                                                                    Brown, TILES  cu #17
                                                                                    ID

8. Confront accuser?    [X] Yes    [  ] No

I certify that on  4/23/04  at  12+5 , I served
              (date)        (time)
upon the above inmate this notice of Disciplinary
Hearing for Minor/Major Offense and (2) the
Disciplinary Report is attached hereto.

I have received copies of 122 & 593 and
understand my rights as Form #593 has been read
to me.

___SErgent  Fred Hy___
(Employee's Signature & Title)

_____
(Inmate's Signature)

**INMATE RIGHTS IN THE DISCIPLINARY PROCESS**

MINOR OFFENSE

Right to Remain Silent: If you are charged criminally based upon the same facts giving rise to the disciplinary process, you have the right to remain silent at the Disciplinary Hearing. In all other circumstances, silence at the Disciplinary Hearing may be considered against you.

Presence: You have the right to be present at all phases of the hearing, except that you may be excluded during the Hearing Officer's deliberations and at any time your behavior becomes disruptive to the proceedings. Reason for such exclusions shall be stated in writing.

WHITE – Shift Commander W/Form 122            YELLOW - Inmate

SUPERIOR COURT

*P. 2*

OF THE

STATE OF DELAWARE

PEGGY L. ABLEMAN

*JUDGE*

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801-3733
TELEPHONE (302) 255-0660

February 28, 2005

Brian J. Robertson, Esquire
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801

Mr. Jimmie Lewis
SBI# 506622
H.R.Y.C.I.
P.O. Box 9561
Wilmington, DE 19809

> **RE:** ***State v. Lewis***
> <u>**I.D. No. 0305016966**</u>

Dear Mr. Robertson and Mr. Lewis:

The Court has received and considered Defendant Jimmie Lewis' Motion for a New Trial pursuant to Superior Court Criminal Rule 33, filed on February 17, 2005. For the following reasons, the Motion is **DENIED**.

In this Motion, Lewis argues that he was incompetent to stand trial due to mental illness, and also that the State unlawfully withheld evidence during the trial. Lewis' competency was the subject of substantial debate during pre-trial motions, during the trial itself, and during sentencing. The Court accepts the voluminous evidence that Lewis was competent to stand trial, most notably, reports from the Delaware Psychiatric Center that his main problem is that he is narcissistic, violent, and abusive, and that his attempts to blame these traits on psychiatric illness represent malingering, i.e. faking. Lewis offers no grounds to revisit that determination, and I will not do so here.

Lewis also makes various evidentiary claims. Without exception, these claims are trivialities that were adequately explored, and had little relevance to and no effect on the outcome of the trial. Nothing in this Motion necessitates the grant of a new trial.

*P. 3*

Brian J. Robertson, Esquire
Mr. Jimmie Lewis
February 28, 2005
Page 2


For these reasons, Defendant's Motion for a New Trial is **DENIED**.

Yours very truly,

*Peggy L. Ableman*

Peggy L. Ableman


PLA:ad
cc:    Prothonotary

SUPERIOR COURT
OF THE
STATE OF DELAWARE

*EXHIBIT N, P.1*

WILLIAM C. CARPENTER, JR.
*JUDGE*

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801-3733
TELEPHONE (302) 255-0670

April 23, 2004

Jimmy Lewis
Howard R. Young Correctional Facility
Wilmington, DE

     RE:   Habeas Corpus Petition
           04M-04-054

Dear Mr. Lewis:

    Your request for habeas corpus relief has been forwarded to me for a decision. A review of the docket in this matter clearly indicates that you were convicted on October 21, 2003 on the charges of Carjacking Second Degree, Theft and Resisting Arrest and the trial was presided over by Judge Ableman. In November, 2003, your counsel, Mr. Edinger, filed a motion for a psychiatric examination which was approved by Judge Toliver on December 1, 2003. While I appreciate that you are upset regarding the delay that has occurred with regard to this evaluation, it does not provide you with a basis for habeas corpus relief.

    Since it is clear based upon the above that you are presently being held consistent with your conviction on the above charges and your failure

FILED
PROTHONOTARY
2004 AP 23 PM 2: 04

P. 2

to post appropriate bail, your request is hereby denied.  I will forward a copy of this letter to Judge Ableman and Judge Toliver so that they may be aware of the delay that is occurring.

Sincerely yours

Judge William C. Carpenter, Jr.

WCCjr:twp

cc:    Judge Ableman
        Judge Toliver
        John Edinger, Esquire
        Brian Robertson, Esquire
        Prothonotary

FILED
PROTHONOTARY
2004 APR 23 PM 2:04

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

JIMMIE LEWIS )
Petitioner, )
)
V. )
)
Raphael Williams, Warden, MPCJF )
Respondent. )

P. 3
04m-04-054

Civil Action No.:_____

FILED PROTHONOTARY
2004 APR 19 AM 10: 05

## Petition For A Writ of Habeas Corpus

Petitioner, JIMMIE LEWIS, herewith requests that this honorable
Court issue a Writ of Habeas Corpus to Raphael Williams, Warden, MPCJF to test the
validity of his continued incarceration. Herewith, Petitioner asserts the following
as facts and grounds supporting his cause:

### I. Jurisdiction

1. The Superior Court has jurisdiction to issue a Writ of Habeas Corpus pur-
suant to 10 Del. C. SS. 6902.

### II. Parties

2. The Petitioner, JIMMIE LEWIS, is currently incarcerated at the
Multi-Purpose Criminal Justice Facility, 1301 E. 12th Street, Wilmington, DE.

3. Respondent, Raphael Williams, is Warden IV of the Multi-Purpose Criminal
Justice Facility, and is the custodian of the Petitioner's detention.

### III. Statement of Facts

4. 11/14/2003 MOTION FOR PSYCHOLOGICAL/

PSYCHIATRIC EXAM FILED BY JOHN S. EDINGER JR ESQ

REFERRED TO JUDGE TOLIVER

5. 12/01/2003 JUDGE CHARLES H. TOLIVER. IV

ORDERED THAT JIMMIE LEWIS BE TRANSFERED TO

1

THE DELAWARE STATE HOSPITAL FOR PSYCHIATRIC EVALUATION

6. DEFENDANTS ATTORNEY SUBMITTED A NOTICE TO

THE DEFENDANTS TRIAL JUDGE THE HONORABLE

PEGGY L. ABLEMAN IN REFERENCE TO HIS NOT YET BEING EVAL.

IV. Statement of Claim          P. 4

6. A Writ of "Habeas Corpus" is extraordinary remedy issuable by trial court to inquire into legality of persons detained or under restraint of their liberty. In Interest of Stevens, 652 A2d 18, (1995). Purpose of writ of habeas corpus is to benefit prisoners, and writ is designed to accomplish speedy inquiry into allegedly unlawful detention through summary judicial proceeding. 10. Del C. ss6901.

7. Defendant asserts that his continued detention is illegal for the following

reasons: JIMMIE LEWIS HAS NOT BEEN ABLE TO RECEIVE

PROPER TREATMENT FOR HIS PSYCHOLOGICAL DISORDER

AS WAS ORDERED BY THE HONORABLE JUDGE TOLIVER,

NOR HAS HE BEEN ABLE TO SEEK RELIEF BY WAY OF APPEAL

V. Relief Sought

8. WHEREFORE, Defendant prays that a Writ of Habeas Corpus be issued forthwith directed to Warden Raphael Williams, MPCJF, requiring him to produce the body of the defendant-petitioner before a Judge of the Superior Court, in and for New Castle County, together with the alleged grounds and the cause of this detention, so that the constitutionality and legality of his confinement and detention may be inquired into with respect to the laws of the State of Delaware and such other rights as guaranteed by the Constitution of Delaware and the United States. Upon deficiency, defendant prays for his immediate release from custody.

Respectfully,

Dated: 4/14/04

Jimmie Lewis

Petitioner
MPCJF
Box 9561
2 Wilmington, DE 19809

*RECEIVED LEGAL MAIL*
*MS. SUTTON 12/29/04*

**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

*P.S*

CHARLES H. TOLIVER, IV
*JUDGE*

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801-3733
TELEPHONE (302) 255-0657

December 14, 2004

Mr. Jimmie Lewis, #506622
Howard R. Young Correctional Institution
P.O. Box 9561
Wilmington, DE 19809

### RE:   Lewis v. Williams
### C. A. No. 04M-11-098

Dear Mr. Lewis:

I have now had the opportunity to review your petition seeking the issuance of a writ of habeas corpus which was filed with the Prothonotary on November 29, 2004. It is based upon that review that I must decline to grant the relief you seek.

More specifically, your petition seems to complain that you were not returned from the Delaware Psychiatric Center to the custody of the Department of Correction as requested by Ms. Stachowski, Director of the Delaware Psychiatric Center, on June 16, 2004. On June 22, 2004, I granted the aforementioned request on Ms. Stachowski's correspondence. On June 29, that document was filed with the Prothonotary. Please refer to the copy of the enclosed docket, entry number 41.

It appears that your petition does not contain any other basis for relief. Accordingly, your petition must be **denied**, as it does not state a claim upon which such a writ may be issued.

Page Two
**RE:   Lewis v. Williams**
     **C. A. No. 04M-11-098**

*P. 6*

**IT IS SO ORDERED.**

                              Sincerely yours,

                              Charles H. Toliver, IV
                              Judge

CHT,IV/ld
Enclosures
oc:    Prothonotary
cc:    Investigative Services
         Dianne Stachowski, MSN, RN, CS
         Warden Raphael Williams, H.R.Y.C.I.
         H.R.Y.C.I. Records Division

255-4439

4/

**DELAWARE HEALTH
AND SOCIAL SERVICES**

DIVISION OF SUBSTANCE
ABUSE AND MENTAL HEALTH

P. 7

DELAWARE PSYCHIATRIC CENTER

June 15, 2004

RECEIVED
JUN 2 1 2004
JUDGE TOLIVER'S OFFICE

Re:  Jimmy Lewis
     ID#  0305016966

Dear Judge Toliver:

     The Forensic Evaluation Team have completed their evaluation and treatment on Jimmy Lewis' ID# 0305016966. We are requesting from the court a court order allowing us:  ***To transfer Jimmy Lewis back to DOC***.

     If there are any questions or concerns regarding this request, please contact me at (302) 255-9701.  For the court's convenience my fax number is (302) 255-4439.

Respectfully,

*So ordered.*
*6/21/04*

Dianne Stachowski, MSN, RN, CS
Forensic Unit Director
Mitchell Building

CC:  Renata Henry, Director, DSAMH
     Ranga N. Ram, MD, Medical Director

2004 JUN 29  PM 4: 14

*P. 12*

SUPERIOR COURT
OF THE
STATE OF DELAWARE

CHARLES H. TOLIVER, IV
JUDGE

NEW CASTLE COUNTY
COURT HOUSE
WILMINGTON, DE 19801-3733

February 23, 2005

Jimmy Lewis
SBI #506622
H.R.Y.C.I.
P.O. Box 9561
Wilmington, DE 19809

RE: *State v. Lewis*
C.A. No. 04M-11-098

Dear Mr. Lewis:

    I have now had the opportunity to review your latest petition seeking the issuance of a writ of habeas corpus which was filed with the Prothonotary on January 9, 2005. It is a mere image of that which you filed on November 29, 2004. For that reason, I must again decline to grant the relief you seek and for the same reasons stated in my letter to you of December 14, 2004. Because there is nothing else for me to decide, your petition again in this regard is **DENIED**. It will not be reconsidered.

    **IT IS SO ORDERED**.

Sincerely,

CHT, IV/krb
cc  Honorable Raphael Williams
    Diane Stachowski
    Record Department
    Investigative Service
    Prothonotary

*EXHIBIT B, P. 1*

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,            )
                              )
                              )
        v.                    )        IN03060175-77
                              )
                              )        I.D.# 0305016966
JIMMY LEWIS,                  )
                              )
        Defendant.            )

NOTICE OF MOTION

TO:  BRIAN ROBERTSON, ESQUIRE
     Deputy Attorney General
     Department of Justice
     State Office Building
     820 North French Street
     Wilmington, Delaware 19801

PLEASE TAKE NOTICE that the within Motion for Commitment for

Psychiatric Evaluation at the Delaware State Hospital will be

presented to this Honorable Court as soon as counsel may be heard.

                              _____
                              JOHN S. EDINGER, JR., ESQUIRE
                              Assistant Public Defender
                              Office of the Public Defender
                              State Office Building
                              820 North French Street
                              Wilmington, Delaware 19801

Dated:  NOVEMBER 13, 2003

$P.2$

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| STATE OF DELAWARE, | ) |
| | ) |
| v. | )    IN03060175-77 |
| | ) |
| | )    I.D.# 0305016966 |
| JIMMY LEWIS, | ) |
| | ) |
| Defendant. | ) |

MOTION FOR COMMITMENT FOR COMPETENCY EVALUATION
AT THE DELAWARE STATE HOSPITAL

COMES NOW, the defendant, Jimmy Lewis, by and through his attorney, John S. Edinger, Jr., Esquire, and respectfully moves this Honorable Court for an Order transferring the defendant to the Delaware State Hospital for a psychiatric evaluation. In support of this Motion, the following facts are asserted:

1. The defendant was convicted of the charges of Carjacking 2nd Degree, Theft $1,000 or Greater, and Resisting Arrest.

2. Since the defendant's conviction, the defendant, while at Gander Hill, has displayed inappropriate behavior.

WHEREFORE, the defendant moves for an Order of the Court transferring the defendant to the Delaware State Hospital for a psychiatric evaluation for the purpose of determining competency and to obtain treatment for his own well-being until such time that treatment is no longer warranted.

_____
JOHN S. EDINGER, JR., ESQUIRE
Assistant Public Defender



*P. 3*

PUBLIC DEFENDER OF THE STATE OF DELAWARE
ELBERT N. CARVEL STATE OFFICE BUILDING
820 NORTH FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

JOHN S. EDINGER
ASSISTANT PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

TELEPHONE
(302) 577-5137

November 10, 2004

The Honorable Peggy L. Ableman
Superior Court of Delaware
New Castle County Courthouse
500 N. King Street
Wilmington, DE 19801

RE:  State v. Jimmy Lewis
ID# 0305016966

Your Honor:

On July 15, 2004 the State filed notice that it was seeking to have Jimmy Lewis declared an habitual offender. The State submitted that Mr. Lewis has previous convictions in Essex County, New Jersey and Dade County, Florida.  Today, Mr. Lewis has told me he wishes to challenge the State's motion on the grounds that he was not convicted of the felonies alleged in the State's petition.

Respectfully submitted,

John S. Edinger, Jr.
Assistant Public Defender

JSE:mls

cc:  Brian J. Robertson, DAG
     Jimmy Lewis

Disciplinary#
3004452

HRYCI Howard R. Young Correctional Institution
1301 E. 12th Street
WILMINGTON DE, 19809
Phone No. 302-429-7700

Date: 04/23/2004

*EXHIBIT R, P.1*

## DISCIPLINARY REPORT

| Disciplinary Type: Class1 | Housing Unit: Infirmary | IR#: 3006591 |
|---|---|---|

| SBI# | Inmate Name | Inst. Name | Location Of Incident | Date | Time |
|---|---|---|---|---|---|
| 00506622 | Lewis, Jimmy | HRYCI | Pod 1D | 04/23/2004 | 09:50 |

Violations: 1.06/200.203 Disorderly or Threatening Behavior, 1.13 Fighting

Witnesses: 1. Armstrong, Archie    2. N/A    3. N/A

### Description of Alleged Violation(s)

On Or About 4-23-04 At Approximately 0950, On 1-D-Pod, I/M Davis, William Sbi# 00162762, Cell#15 And I/M Lewis, Jimmy Sbi 00506622, Cell#5 Were Arguing On The Dayroom Floor, During Chow. It Became Disorderly And Threatening, Then Punches Wer Thrown By Inmates. I C/O Armstrong Gave Both Inmates A Direct Order To Lock-In. Both Inmates Proceeded To Lock-In With N Further Problems.

Reporting Officer: Armstrong, Archie  (Correctional Officer)

### Immediate Action Taken

Immediate action taken by: Armstrong, Archie  -Correctional Officer

Notified Lead Worker

### Offender Disposition Details

Disposition: Other          Date: 04/23/2004    Time: 12:48    Cell secured? Yes

Reason: N/A

Disposition Of Evidence: N/A

### Approval Information

Approved: ☐    Disapproved: ☐    Approved By:  ()

Comments: N/A

### Shift Supervisor Details

Date Received: 04/23/2004    Time: 12:48    Received From: __

Shift Supervisor Determination:

[ ]    Upon reviewing this Disciplinary Report, I conclude that the offense may be properly responded to by an immediate revocation of the following privileges(see reverse side) for _____ hours not to exceed 24 hours)

[X]    Upon reviewing this Disciplinary Report, I conclude that the offense would be properly responded to by Disciplinary Hearin

_____    , ()

I have received a copy of this notice on DATE: 4/23/04    TIME: 1245    and have been informed of my rights to have a hearing and to present evidence on my own behalf. I understand, if found guilty, I will be subject to imposition of sanctions outlined in the Rules of conduct.

Preliminary Hearing
Officer: SERGANT Fred Way        Offender: _____
         Way, Fred III                        Lewis, Jimmy

*EXHIBIT R - P. 1*



## PUBLIC DEFENDER OF THE STATE OF DELAWARE
### ELBERT N. CARVEL STATE OFFICE BUILDING
820 NORTH FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

JOHN S. EDINGER
ASSISTANT PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

TELEPHONE
(302) 577-5137

January 10, 2005

Audrey F. Bacino
Assistant Clerk
55 The Green
Dover, DE 19903

      RE:  *Jimmie Lewis v. State*
          No. 531, 2004

Dear Ms. Bacino:

Please accept this letter as my response to the Court's inquiry as to the delay of Mr. Lewis' sentencing. Mr. Lewis is presently scheduled for sentencing on February 11, 2005.

Mr. Lewis' initial sentencing date of December 5, 2003 was rescheduled after the defense requested a second psychiatric examination by the State Hospital to determine competency. The report, which found Mr. Lewis competent, was received June 28, 2004.

The second sentencing date of August 13, 2004 was rescheduled to September 3, 2004 because defense counsel was on vacation. The third sentencing date was rescheduled again because the Pre Sentence Office had not received the updated psychiatric report and had not completed their investigation. The fourth sentencing date of December 10, 2004 was rescheduled by Superior Court to February 11, 2005.

                           Respectfully submitted,

cc:  Mr. Jimmie Lewis
     Loren C. Meyers, Esquire

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    3
                      ( as of  05/27/2005 )
```

State of Delaware v.  JIMMY LEWIS                              DOB:      66
State's Atty: BRIAN J ROBERTSON , Esq.      AKA:
Defense Atty: JOHN S EDINGER , Esq.

```
        Event
No.     Date          Event                              Judge
------------------------------------------------------------------------------
        1 COURT EXHIBIT. GAVE TO EDGAR JOHNSON TO PUT IN VAULT.
        AG/ROBERTSON - PD/EDINGER - CR/FELDMAN, DONNELLY & MAURER - CC/CARUSO.
        JUDGE HERLIHY TOOK THE VERDICT FOR JUDGE ABLEMAN
24      10/21/2003
        LETTER FROM: MARGOT R. MILLAR, OFFICE OF DISCIPLINARY COUNSEL
        TO: DEFENDANT.
        RE: DISCIPLINARY COMPLAINT AGAINST DEFTS. COURT APPOINTED ATTY.
        *SEE FULL LETTER IN FILE*
20      10/23/2003                                     ABLEMAN PEGGY L.
        CHARGE TO THE JURY FILED.
21      10/23/2003
        VOIR DIRE QUESTIONS FILED.
        STATE'S PROPOSED VOIR DIRE.
23      11/04/2003
        LETTER FROM SUPREME COURT TO JIMMY LEWIS
        RE: THE SUPREME COURT IS IN RECEIPT OF YOUR LETTER
        DATED OCTOBER 24, 2003. THE SUPREME COURT IS AN APPELLATE COURT
        WHICH RECEIVES APPEALS AND RELATED DOCUMENTS FILED PURSUANT
        TO SUPREME COURT RULES. ACCORDING TO THE SUPREME COURT RECORDS,
        YOU DO NOT HAVE AN APPEAL PENDING AT THIS TIME. BY COPY OF THIS
        LETTER I AM PROVIDING COPIES OF YOUR LETTER TO YOUR ATTORNEY, AND
        THE DEPUTY ATTORNEY GENERAL, THE PROTHONOTARY.
25      11/14/2003
        MOTION FOR PSYCHOLOGICAL/PSYCHIATRIC EXAM FILED.
        BY JOHN S EDINGER JR,ESQ
        REFERRED TO JUDGE TOLIVER-OFFICE JUDGE SENT UP (11/24/03)
26      12/01/2003                                     TOLIVER CHARLES H. IV
        ORDER: ORDERED THAT JIMMY LEWIS THE DEFENDANT, BE TRANSFERRED TO THE
        DELAWARE STATE HOSPITAL FOR PSYCHIATRIC EVALUATION FOR THE PURPOSE OF
        DETERMINING COMPETENCY, AND TO OBTAIN TREATMENT FOR HIS OWN WELL-BEING
        AS SOON AS DELAWARE STATE HOSPITAL NOTIFIES GANDER HILL OF AN
        AVAILABLE OPENING, JIMMY LEWIS IS TO BE TRANSPORTED AND EVALUATED.
27      12/03/2003
        MOTION FOR TRANSCRIPT FILED PROSE.  REFERRED TO JUDGE ABLEMAN.
        * NOTE FROM CHAMBERS-JUDGE REVIEWED BOTH LETTERS 12/22/03 NO ACTION
        NEEDED. AMH
28      12/16/2003
        DEFENDANT'S LETTER FILED.
29      01/13/2004
        DEFENDANT'S LETTER FILED.
30      03/01/2004
        LETTER FROM: JOHN S. EDINGER, ESQ.      TO: JUDGE ABLEMAN
```

A3

SUPERIOR COURT CRIMINAL DOCKET                 Page     4
( as of  05/27/2005 )

State of Delaware v.  JIMMY LEWIS                        DOB:      '1966
State's Atty: BRIAN J ROBERTSON , Esq.      AKA:
Defense Atty: JOHN S EDINGER , Esq.

```
      Event
No.   Date          Event                           Judge
-------------------------------------------------------------------------------
      RE:  ON 12/01/03, THE COURT ORDERED THAT THE DEFENDANT BE TRANSFERRED
      TO THE DELAWARE STATE HOSPITAL FOR PSYCHIATRIC EVALUATION.  TO DATE,
      HE HAS NOT BEEN TRANSPORTED FOR AN EVALUATION.
      (LETTER AND FILE REFERRED TO JUDGE ABLEMAN 03/01/04)
31    03/11/2004
      MOTION FOR JUDGMENT OF ACQUITTAL FILED PROSE.  REFERRED TO JUDGE
      ABLEMAN
32    03/23/2004                          ABLEMAN PEGGY L.
      LETTER/ORDER ISSUED BY JUDGE: ABLEMAN
      RE: THE COURT HAS CONSIDERED YOUR PRO SE MOTION FOR JUDGEMENT OF
      ACQUITTAL.  NORMALLY, THE COURT WILL NOT CONSIDER ANY PLEADINGS THAT
      YOU FILE PRO SE SINCE YOU ARE REPRESENTED BY COUNSEL, JOHN EDINGER.
      YOU SHOULD CONSULT WITH HIM FOR THE FILING OF ANY MOTIONS OR PLEADINGS
      IN THIS CASE, YOUR MOTION FOR JUDGEMENT OF ACQUITTAL IS UNTIMELY AND
      IS THEREFORE HEREBY DENIED.  IT IS SO ORDERED JUDGE ABLEMAN.
33    04/19/2004
      PETITION FOR A WRIT OF HABEAS CORPUS FILED (PRO SE)
      REFERRED TO JUDGE CARPENTER.
      DATE REFERRED: 4/21/04
      CIVIL CASE NO: 04M-04-054
34    04/26/2004                          CARPENTER WILLIAM C. JR.
      LETTER/ORDER ISSUED BY JUDGE CARPENTER.
      RE: HABEAS CORPUS PETITION 04M-04-054 IS DENIED.
      YOUR REQUEST FOR HABEAS CORPUS RELIEF HAS BEEN FORWARDED TO ME FOR A
      DECISION. A REVIEW OF THE DOCKET IN THIS MATTER CLEARLY INDICATES THAT
      YOU WERE CONVICTED ON OCTOBER 21, 2003 ON THE CHARGES OF CARJACKING
      SECOND DEGREE, THEFT, AND RESISTING ARREST AND THE TRIAL WAS PRESIDED
      OVER BY JUDGE ABLEMAN. IN NOVEMBER, 2003, YOUR COUNSEL, MR. EDINGER,
      FILED A MOTION FOR A PSYCHIATRIC EXAMINATION WHICH WAS APPROVED BY
      JUDGE TOLIVER ON DECEMBER 1, 2003. WHILE I APPRECIATE THAT YOU ARE
      UPSET REGARDING THE DELAY THAT HAS OCCURED WITH REGARD TO THIS
      EVALUATION, IT DOES NOT PROVIDE YOU WITH A BASIS FOR HABEAS CORPUS
      RELIEF. SINCE IT IS CLEAR BASED UPON THE ABOVE THAT YOU ARE PRESENTLY
      BEING HELD CONSISTENT WITH YOUR CONVICTION ON THE ABOVE CHARGES AND
      YOUR FAILURE TO POST APPROPRIATE BAIL, YOUR REQUEST IS HEREBY DENIED.
      I WILL FORWARD A COPY OF THIS LETTER TO JUDGE ABLEMAN AND JUDGE
      TOLIVER SO THAT THEY MAY BE AWARE OF THE DELAY THAT IS OCCURRING. WCC
35    04/26/2004
      NOTICE OF SERVICE
      RE: COPY OF GROUNDS FOR APPEAL
36    05/07/2004
      DEFENDANT'S LETTER FILED.
```

A4

5. ABEL COPY

3

1   The sentencing guidelines in this case would
2   recommend a period of incarceration. And I would submit
3   that the time that he's been held on this offense, which is
4   going on close to two years, is a sufficient penalty in this
5   matter, and we're asking the Court to consider sentencing
6   Mr. Lewis to time served.
7   I don't know if Mr. Lewis wants to address after
8   the State addresses.
9   MR. ROBERTSON: Your Honor, the State is not
10  seeking to have Mr. Lewis declared a habitual offender
11  pursuant to 4214, but he is an habitual offender. He's got
12  a criminal record as an adult that goes back almost 20
13  years, spans three states now. It's unique in that it
14  covers a number of different types of crimes. He has
15  offenses for selling drugs, for robbery, for burglary, for
16  assault, and as your Honor probably recalls from the trial
17  your Honor presided over, for carjacking, the present
18  matter. It seems like the only time that he is not, in
19  fact, committing offenses is when he is in custody, although
20  I note, in this case, that's not even true.
21  He went to the state hospital, as your Honor
22  might recall, last year for an evaluation. The report there
23  summarizes his behavior even at the state hospital while he

---

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,

          v.                    ID No. 0310014944

JIMMY LEWIS,
          Defendant.


          FRIDAY, FEBRUARY 11, 1005

BEFORE:

APPEARANCES:
     DEPARTMENT OF JUSTICE
     BY:  BRIAN ROBERTSON, ESQ.,
          FRANCIS FARREN, ESQ.,
          Deputy Attorneys General
          For the State

     JOHN S. EDINGER, JR., ESQ.
          For Defendant


          TRANSCRIPT OF SENTENCING
     - - - - - - - - - - - - - - - - - - - - -
          LYNNE BELL COALE, RMR, CRR
             SUPERIOR COURT REPORTERS
     500 N. KING STREET     WILMINGTON, DELAWARE  19801
                    (302) 255-0542

23

---

4

1   was being evaluated. And I'd note that Page 4 of that
2   report talks about, on June 7 of last year, where Mr. Lewis,
3   angered by not receiving a certain salad at dinner which he
4   believed he was entitled, assaulted a peer and a staff
5   member. That report came out on June 15.
6   Mr. Lewis was the subject of another report just
7   six days later, only this was a Delaware State Police report
8   when, after a beef over a DMX tape, he broke the jaw of
9   another person who was residing at the Delaware State
10  Hospital at that time -- all this for the prospect that he
11  was diagnosed, not with schizophrenia, not with any other
12  chronic mental illness, but with malingering. That seems to
13  be correct, given his history.
14  He doesn't have a pronounced mental illness. The
15  offenses that he's committed do not seem to be borne of a
16  addiction of drugs, as we've seen some of the other persons
17  today, or even alcohol. He's characterized as being
18  intelligent, and I think your Honor has actually seen some
19  of the exchanges. He's 38 years old at this point. He's
20  been doing it for the better part of 20 years. He's going
21  to keep doing it if he's out. He does this because he wants
22  to. There's no other compelling reason.
23  The State submits that it actually merits a

---

2

1   (Courtroom 6C, 9:30 A.M.)
2                    - - -
3   MR. FARREN: Next item will be No. 3, Jimmy
4   Lewis.
5   MR. ROBERTSON: Your Honor, we may need to
6   approach regarding Mr. Lewis. Your Honor, may we approach?
7   (Unreported sidebar.)
8   MR. EDINGER: Good morning, your Honor.
9   THE COURT: Good morning, Mr. Edinger.
10  MR. EDINGER: I have just a few brief comments.
11  It's my understanding at this point that the
12  State is not going to pursue the Habitual Offender Motion
13  and, therefore, my comments will just be towards the
14  sentencing.
15  MR. ROBERTSON: That's correct, your Honor.
16  MR. EDINGER: The Court presided over the trial,
17  so I don't need to -- I don't believe I need to review the
18  facts of the case. As the Court well knows from the
19  Presentence investigation, Mr. Lewis maintains his innocence
20  at this time.
21  I would note that he has been in custody since
22  his arrest in 2003, continuous custody; that prior to being
23  incarcerated, he had been employed and had been working.

5

1  Level 5 sentence that would go beyond which is allowed in
2  this case, but the Court is constrained by the five years
3  maximum on the carjacking statute. State submits that that
4  is an appropriate amount for what Mr. Lewis has done, not
5  only specifically in this case, but looking at his history,
6  a minimum of five years is necessary to protect the public.
7       THE COURT: Mr. Lewis, do you have anything to
8  say to the Court before I sentence you?
9       THE DEFENDANT: Yes, ma'am. Before I was
10 incarcerated, a missing-person ad was put in the paper for
11 me because of my psychological condition, diagnosed with
12 manic depression, schizophrenia. The ad read, you know,
13 seeking help for the public assistance to find me on May --
14 May 19 of 2003. I was thereafter incarcerated less than a
15 week later here in Wilmington, Delaware, as I was commuting
16 to my father's property in North Carolina to receive, you
17 know, a little more assistance with my commercial driving
18 career.
19      In the process, I realized that, you know, the
20 medicines that I have refused in the past, I was -- I really
21 needed them more than I realized at the time. I have been
22 incarcerated in the past, and it was more or less due to my
23 psychological conditions. Since -- since then, since being

6

1  incarcerated here in Delaware, I've been prescribed
2  psychotropic medications and been receiving treatment,
3  treatment courses from mental-health personnel staff and
4  stuff. And after taking the medicine, I feel like I come up
5  out of a big cloud, and it's -- there's been a big different
6  in my whole life.
7       I was making changes in my life already. I was
8  making dramatic changes in my life: Obtained my high-school
9  diploma, obtained a Class C license so I can elevate my
10 social status. You know, it was a big change in things that
11 I have done ways doing in society.
12      And in regards to me, you know, being a different
13 person and being a productive law-abiding citizen, I always
14 had this dilemma that I couldn't deal with on my own without
15 medications and things of that nature to help me.
16      In the Delaware Psychiatric Center, as -- as
17 Mr. Brian Robertson has spoke of, it was a situation that I
18 was -- I was accused of that I didn't -- you know, I didn't
19 partake in. And in regards to psychological evaluation, it
20 was -- it was submitted with numerous errors in things that
21 were said about me that aren't true by me being evaluated on
22 -- well, being incarcerated on November 17, 2003, when I was
23 already incarcerated on May 26, you know, so the -- the

7

1  evaluation was for trial -- for -- was being done for to see
2  if I can stand trial, but I already stood trial in October.
3  It's numerous things as far as me being strapped down six,
4  seven times and being prescribed -- being injected with
5  psychotropic medicines because of me being delusional and
6  psychotic. And these are the direct reasons for my -- for
7  my behavior -- my behavior problems. And since -- since
8  then, I have received better treatment at the -- better
9  treatment as far as psychotropic medication treatment, and I
10 have been able to really focus more clearly. My mind is not
11 befuddled as it was, and I'm much more clearer.
12      And I would like to have the opportunity to, you
13 know -- to return to society. I was -- like I said, I had
14 obtained my CDL license. My whole life had changed and,
15 more so now than ever, I've been able to really focus clear
16 on things that I need to do in order to, you know, fulfill
17 my obligations as a law-abiding citizen in society. But
18 without the medications, I was unable to do these things,
19 you know, and I was unable to really, you know, approach
20 things, and I always found myself in some kind of dilemma or
21 circumstances like I found myself to be here now. You know,
22 it's just a lot of things that I would like to do.
23      My parents are being -- are elderly. I'm -- I'm

8

1  of age. I'm their only child. And I got two daughters,
2  super honor-roll students, and they need me to -- you know,
3  to pay their tuition to help them out. I would like to be
4  able to have the opportunity to return to society. I
5  believe I'm safe. I don't pose any danger to anyone. I
6  believe I have a career that I'm -- I can fall back on.
7       My family, my father has 150 acres of land in
8  North Carolina. My mother is a re -- my mother's a retired
9  dietician. She's here in Court, you know. I don't think
10 I'm a bad person. I think that I have some dilemmas that
11 didn't allow me to be the type of person that I should have
12 been, more so than anything else. I would like for you to
13 take that psychological condition into consideration and not
14 just that I was being reckless or that I commit any crimes
15 intentionally, because I never really did have the
16 opportunity to address the conditions that, you know, cause
17 me to be --
18      THE COURT: When did you go to medical school to
19 become a psychiatrist, Mr. Lewis?
20      THE DEFENDANT: I didn't, your Honor.
21      THE COURT: So, you've just diagnosed yourself
22 for the Court --
23      THE DEFENDANT: Well --

9

1    THE COURT: -- contrary to the other report that
2    was provided to me, or reports from different psychiatrists
3    who did go to medical school and are trained, and who felt
4    that you were faking.
5         THE DEFENDANT: Well, I have -- I have -- I have
6    a medical psychological treatment plan that I have received
7    while I was in New Jersey that diagnoses me with the
8    conditions that -- that I'm speaking of, actually, with
9    medications --
10        THE COURT: I guess it really doesn't matter,
11   because my feeling about you is that you never taken
12   responsibility for this crime. You lied in the Court about
13   what had occurred, and it was very obvious to me and to the
14   jury, obviously. They wouldn't have come back with a guilty
15   verdict if they thought you were telling the truth. And
16   you're still being pretty dangerous, even when you're locked
17   up.
18        THE DEFENDANT: Your Honor, if it wasn't for the
19   District Attorney stating that -- "Please tell the jury" --
20        THE COURT: Mr. Lewis, I'm not going to discuss
21   what occurred at that trial. You were found guilty, and I
22   think the jury was accurate, because I heard the same
23   evidence --

10

1         Ma'am, you're not allowed to speak, so don't even
2    raise your hand, please.
3         I heard the evidence and I heard your ridiculous
4    story explaining what that evidence was. And I had the same
5    reaction to your ridiculous story that the 12 members of the
6    jury did. So, today, you're still not taking responsibility
7    for what you did in this case. And today, after you've been
8    sent to the Delaware Psychiatric Center, pretending that you
9    have some serious problem and terrorizing people there,
10   sexually suggesting sexual innuendos to some of the female
11   staff members -- the report that I read does not paint you
12   in a real good light, Mr. Lewis. So, you think of yourself
13   far differently than what others think of you. I need you
14   to understand that. But, today, you have not yet taken
15   responsibility for this crime, and that's of great concern.
16   Your lack of remorse is of great concern to this Court.
17        In addition, you have other convictions which
18   would have made you habitual eligible in Delaware had the
19   State had an opportunity to prove that today. And I'm
20   taking that into consideration as well.
21        It's the sentence of the Court, effective
22   February 11 -- well, effective May 26, 2003, on the
23   carjacking offense, IN-03060175, you're placed in the

11

1    custody of the Department of Corrections for five years at
2    Level 5. On the felony theft charge, you're placed in the
3    custody of the custody of the Department of Corrections for
4    two years Level 5; suspended after one year for one year at
5    Level 4 Plummer Center; suspended after six months for six
6    months at Level 3. And on the resisting-arrest charge,
7    you're placed in the custody of the Department of
8    Corrections for one year at Level 5, suspended for one year
9    at Level 2 probation.
10        You're to complete anger-control management
11   counseling while incarcerated. You're to participate in any
12   recommended mental health or substance abuse treatment. An
13   you are to have no contact with Patrick Gear.
14        MR. EDINGER: Thank you your Honor.
15        MR. ROBERTSON: Thank you, your Honor.
16        THE DEFENDANT: Thank you, your Honor.
17        MR. FARREN: Your Honor, that would complete
18   your Honor's sentencing calendar this morning.
19        THE COURT: Court stands in recess.
20        (Sentencing concluded.)
21
22
23

12

CERTIFICATE OF COURT REPORTER

I, Lynne B. Coale, RMR, CRR, Official Court
Reporter of the Superior Court, State of Delaware, do hereby
certify that the foregoing is an accurate transcript of the
proceedings had, as reported by me, in the Superior Court of
the State of Delaware, in and for New Castle County, in the
case herein stated, as the same remains of record in the
Office of the Prothonotary at Wilmington, Delaware.

WITNESS my hand this 18th day of March, 2005.
Cert. # 165-PS

Lynne Bell Coale, RMR, CRR
Official Court Reporter

P. 19

DEPARTMENT OF HEALTH AND SOCIAL SERVICES
DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH
DELAWARE PSYCHIATRIC CENTER

**PROGRESS NOTES**
(Continued)

LEWIS, JIMMY          66
46443    1309 UNK H AF
4 EDWIN PLACE NEWARK NJ 07112
MELBA JEAN LEWIS MOTH AREA 5
Lewis 981 Acres          05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/4/04 | 9:30 am | Penultimate Tx Team |
| | | Pt was examined carefully by the tx team for his tx plan update (error) Master tx Plan. RT stated that he needs to focus on the issues at hand, that he is frequently disruptive, making sexually inappropriate comment. Pt will be placed in the confidence group as this is one of the reasons he's here. Pt addressed the fact that he was described as making obscene comment in the group setting + he responded — "I didn't make any comments, but I will watch that." SW stated that she has found pt to be engaging, intelligent + articulate but she is concerned about his seeing/experiencing the world as things happening to him rather than him taking control. Pt stated that he believes he asks for help many times + his issues don't get addressed. He feels he has to do outlandish things to get attention — ie. paper hours. He pt used the example of his recent urinary problem, that it didn't get addressed soon enough. Staff stated pt has been cooperative in the milieu, helpful, but does tend to get loud to get his needs met. RN stated that pt is insightful + articulate — she believes a lot of his acting out is based on his trying to get his needs met. Pt states he "hallucinates" at times from lack of sleep — "I might see shadows."          (over) Still |

PROGRESS NOTES (Continued)

4 EDWIN PLACE NEW AREA 5
NELSA JEAN LEWIS MOTH AREA 5

Patient's Name 3 - 4 8 1 - 5 3 2 8        0 5 / 2 1 / 2 0 0 4        Hospital No. _____

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/4/04 (cont) | | Pinchnah (cont) |
| | | He also sees shadows when upset. |
| | | plan - cont present Rx or no psychotropics |
| | | — Add Benadryl or PRN for insomnia |
| | | + anxiety. (Pt stated that when he asks for |
| | | a PRN he couldn't get it). We discussed |
| | | these issues ē pt who was argumentative |
| | | + defensive. He basically stated he wants |
| | | what he wants when he wants it. |
| | | Ellie Pat |

Weekly Nursing Summary    6/4/04 @ 2130

| | | |
|---|---|---|
| 1. Mental Status: | Alert and oriented X3 - manipulative |
| 2. Locomotion: | Ambulates independently |
| Bowel & Bladder Habits: | c/o burning ē urination - Rx ē pyridium |
| ADL Habits: | neat & clean - well groomed |
| 5. Fluid Intake: | adequate nutrition |
| 6. Food Intake: | 100% + @ meals - receives tray + chef's salad |
| 7. Sleep Pattern: | D/C insomnia |
| 8. Restraints or Support Safety Devices: | N/A |

Response to Nursing Interventions from MTP: Pt has required redirection due to
sexually inappropriate behavior - places paper
towns on head so staff will believe him to be
mentally ill, disruptive in group. Will continue
to observe behavior. ——— H Harlow RN

| 5/04 | 7:45A | Pt. shaving head attempted to redirect. Pt. was argumentative |
|------|-------|----------------------------------------------------------------|
| | | and continued to shave head, It was explained to pt. that |
| | | shaving of head is Not permitted - very difficult to redirect. |
| | | S. Conyer NA. |

PROGRESS NOTES (Continued)

4 EDWIN PLACE
MELBA JEAN LEWIS MOTH AREA 5
Patient's Name     973-481-5028          05/21/2004          Hospital No. _____

P. 20

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/6/04 | 6:30 pm | OS note— |
| | | Patient was agitated and hit another patient on the head and when he was separated he also hit the staff on the face. On evaluation he stated that he did not get his salads and he was upset about that. He was given Haldol 5 mg and Benadryl 50 mg and when he continued to be agitated he was put in 4 point restraint for safety of self and others. He had intense eye contact, speech loud, he appears alert. He denied AVH. He denied SI or violent ideations. He will be tapes off restraints when he calmed down.    SANDHU, MD |
| | | Addendum |
| | | His phone, pool play, visits and snack area will be restricted as advised by Dr. Farha until evaluated by treatment team.    SANDHU MD |
| 6/6/04 | N3 8p | If Lewis upset over salad in this Dr. He began attacking his peer as this peer responded verbally. The staff became there after Mr. Lewis refused to be restrained. He then upon returning to unit struck peer on (L) side of face (unprovoked) and started posturing on staff. He also threatened dietary aide. He was placed in restraints ___ refusing to ___ and threatening staff + posturing on staff    JCS |

DEPARTMENT OF HEALTH AND SOCIAL SERVICES
DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH
DELAWARE PSYCHIATRIC CENTER

**P R O G R E S S   N O T E S**
(Continued)

LEWIS, JIMMY                    66
46443              1309 UNK M AF J
4 EDWIN PLACE NEWARK NJ 07112
HELSA JEAN LEWIS HOTH AREA 5
973-481-5028          05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 5/5/04 | 12:00pm | Therapeutic Recreational Note — Pt subtly intimidated this writer this afternoon by standing in unit hallway and stating "I just want to make my point across that whatever you said about me in Team meeting was wrong and derogatory". RT stated that if he had any issues or concerns he should bring it to the team and that we as a team had already discussed this issue in team. However pt continued to state that this writer had said false things about him in group. Nursing staff was informed.  Segal Jethro, AT II |
| 6/5/04 | 2:20 PM | Pt AE0&7, maintained in routine discharge. Pt noted shaving his head, staff assisted to redirect pt & pt became argumentative. Pt requested to see writer. It was explained the duties & practice of not permitting pt to shave their heads. Pt seems receptive to instruction. Pt also reports that his court pairing hearing time broken. Refer to pcc for follow up. Continue to monitor. Ora... ? PM. |

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

# DOCTOR'S ORDER SHEET

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or NO SUBS) is noted."

Name: _____  Facility: _____  Activity: _____  Case No.: _____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED BY |
|---|---|---|---|
| 6/6/04 | 6:15 | Haldol 5 mg Benadryl 50 mg IM for agitation X 1 dose — SANDHU MD | |
| 6/6/04 | 6:20 PM | - Put the patient in 4 Point restraint for safety of self and others not to exceed 2 Hrs — SANDHU MD | |
| 6/6/04 | 6:30 PM | - Restricted Patio, Pool Playing, visits and snack area until seen by treatment team — SANDHU MD 6/6/04 | |
| 6/7/04 6:45 pm | | - Begin Seroquel 50 mg PO q 12° X 30 days for anger management + impulse control.  - Restrict visits, patio, rt room, gym + snack vending machine X 1 week  - D/c Chef's salad BID | |
| | | Noted 6/7/04 @ 1900 - Helen Hanlon RN | |
| 6/8/04 | 11:53 | Cont Pyridium Po 200 mg Bid x 5 days | |

DHSS — 019A       "PRESS HARD — (USE BALLPOINT PEN ONLY) NO FELT TIPS"
WHITE — Medical Records  ALL OTHERS — Return to Pharmacy

6/9

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

**P R O G R E S S   N O T E S**
(Continued)

LEWIS, JIMMY
46443                    /66
4 ECWIN PLACE NEWARK NJ 07112        1309 UNK H AF J
MELBA JEAN LEWIS MOTH AREA 5
973-481-5028              05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/6/04 | N1 | when directed to QR. Pt removal of Em a Prn of Haldol 5g + Benadryl 50g IM and to refused to prsh = flgth + OD @ first. Then he finally spoke calmly & with some reasoning. Pt removed from 615. 7P. OD, PNS DM all notified. Will continue to monit... |
| 6/7/04 | 6:15 pm | Psychiatry Met = pt and RN mgr regarding pt's grossly inappropriate behaviors. (he noted 6/5 by the RT relates that pt intimidated her + told her what she had said about him in tx team was "wrong + derogatory." Despite her rebuttal, he continued to state that she had said false things about him. |
| | | Last night, pt assaulted a peer and a staff member, escalated to the point where he required Prn med, + because he didn't respond to that, he escalated further, required 4-pt restraint for the protection self/others. |
| | | Tonight, pt attempted to explain what happened to cause him to be that upset & it was mostly around the fact he didn't get a salad when he wanted it. When he saw the same peer later on the unit, he said the peer started to come at him, so he pushed pushed him on the head to push her & back down a the chair (err). Ρ (over) |

Patient's Name: HELRA JEAN LEWIS MOTH AREA 5
3-481-5028     05/21/2004     Hospital No. _____

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/7 | | Pt's behavior has been escalating over time; he has been taunting his peers, intimidating therapists, making obscene comments (see my note of 6/4/04), is disruptive in the group setting + is generally not adjusted to the unit rules. |
| | | It was explained to pt that he will be restricted in all areas for 1 week. |
| | | There was an incident when he felt his needs weren't being met immediately + he began banging + kicking on the unit door. We addressed all these issues with him, + explained that he will be reevaluated in 1 week. |
| | | Pt has religious issues, that if his hair grows it would have to be a burnt offering — this he wants his head shaved. Pt is a Rastafarian. |
| | | Plan: Began Serzqvel for anger management + impulse control. |
| | | Restrict all privileges x 1 week then reeval.  [signature]  D/c extra Salad |
| 6/8/04 | 1:53 pm | Pyridium continued for 5 more days of possible antibiotics. Urinalysis doesn't show pregnancy of proteins or nitrites. [signature] PA-C |
| 6/8/04 | 1700 | Pt refused Pyridium. Pt stated that if he cannot get Bactrim with it he does not want it. ————— M. Wilson, NPA |

Patient's Name: HELBA JEAN LEWIS MOTH AREA 5 481-5928 05/21/2004    Hospital No. _____

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/7 | | Pt's behavior has been escalating over time; he has been taunting his peers, intimidating therapists, making obscene comments (see my note of 6/4/04), is disruptive in the group setting + is generally not adjusted to the unit rules. |
| | | It was explained to pt that he will be restricted in all areas for 1 week. |
| | | There was an incident when he felt his needs weren't being met immediately + he began banging + kicking on the unit door. We addressed all these issues with him, + explained that he will be reevaluated in 1 week. |
| | | Pt has religious issues, that if his hair grows it would have to be a burnt offering — this is he wants his head shaved. Pt is a Rastafarian. |
| | | Plan: Began Seroquel for anger management + impulse control. |
| | | Restrict all privileges × 1 week then reeval. [signature] 1) c extra salad |
| 6/8/04 | 1:53 | Pyridium continued for 5 more days of possible urethritis. Urinalysis doesn't show pus cour + protein or on testes. [signature] RLS PMD |
| 6/8/04 | 1700 | Pt refused Pyridium. Pt stated that if he cannot get Bactrim with it he does not want it — M. Wilson LPN |

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

**PROGRESS NOTES**
(Continued)

LEWIS, JIMMY                                /66
46443                     309 UNK M AF J
4 EDWIN PLACE NEWARK NJ 07112
MELBA JEAN LEWIS MOTH AREA 5
973-481-5028                  05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/6/04 | N₃ 8P | when directed to QR, Pt removal of Em a prn of Haldol 5₃ & Benadryl 50₃ IM and he refused to respond = flight & OD first. Then he finally spoke calmly with some reasoning. Pt removed from restraints from 615. 7P → OD, RNS, DM, CN all notified. Will continue to monitor |
| 6/7/04 | 6:15pm | Psychiatry Met c̄ pt and RN mgr regarding pt's grossly inappropriate behaviors. The nurse eg 6/5 by the RT relates that pt intimidated her & told her what she had said about him in tx team was "wrong & derogatory." Despite her rebuttal, he continued to state that she had said false things about him. Last night, pt assaulted a peer and a staff member, escalated to the point where he required PRN med, & because he didn't respond to that, he escalating further, required 4-pt restraint for the protection of self/others. Tonight, pt attempted to explain what happened to cause him to be that upset & it was mostly around the fact he didn't get a salad when he wanted it. When he saw the same peer later on the unit, he said the peer started to come at him, so he patted pushed him on the head to push him back down on the chair (?). 🔷 (over) |

P. 74

LEWIS, JINNY
45443        1309 UNK M AF
4 EDWIN PLACE NEWARK NJ 07112
MELBA JEAN LEWIS MOTH AREA 5
973-481-5028        05/21/2004

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

## DOCTOR'S ORDER SHEET

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or NO SUBS) is noted."

Name: _____    Facility: _____    Activity: _____    Case No.: _____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED BY |
|---|---|---|---|
| 6/9/04 | 10:59 pm | urinalysis (U.T.I.) | |
| | | Po Bactrim ii tab 8am - 8 pm x ; wk | |
| | | K. U. B. (kb stones) | |
| 6/9/04 | | Urology clinic [Req. done] | |
| 6/10/04 | 1:20 pm | Change Nutrition Order to read: | |
| | | - Regular chef's salad ē breakfast | |
| | | - small tossed salad BID ē meals (lunch) (dinner) | |
| | | - Nourishment HS; cheese, | |
| | | peanut butter, banana, | |
| | | + chef's salad | |
| | | meds x 30 days | |
| 6/11/04 | | Geodon 20 ug PO/IM q 6° | |
| | | PRN severe agitation | |
| | 2 PM | Ativan 2 ug PO/IM q 6° PRN | |
| | | agitation. | |
| | | orders noted @ 1515 - 6/11/04 | |

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

**P R O G R E S S   N O T E S**
(Continued)

LEWIS, JIMMY                    /66
45443            -1309 UNK H AF U
4 EDWIN PLACE NEWARK NJ 07112
MELBA JEAN LEWIS MOTH AREA 5
973-481-5028        05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/10/04 | 4:30p | Pruchak, Wendi — Pt states he hallucinate "at night — when he may see shadows, may think he hears things. He used the word "hallucinate" to mean intrusive, negative thoughts. And then & start contemplate doing the things on contemplating, + that "scares" him. |
| 6/11/04 | 1:30pm | Pruchak, Team Meeting — We met ē pt who was irate about the team having any contact ē his mother. Team SW stated his mother had called to give her some info about pt, + they discussed his case. His mother had signed a release of information in order that the team be allowed to do so. When we informed him of this, he denied it + demanded to see it. He was argumentative, hostile, vengeful, stating that his mother had a weak heart + wouldn't be able to take the strain of dealing ē his issues. He began escalating until he was told that the release of info for the team to speak to his mother would be shredded if he wished it. We brought the shredder in, but before he would shred it, he sat, while the team sat + waited, + read thru it taking as much time as possible. He finally shredded it + |

P R O G R E S S   N O T E S

Patient's Name ___  Hospital No. ___

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/11/0? (con) | | was informed that no one would speak to his mother unless he gave permission. He seemed satisfied. |
| | | Pt also raised the issue of shaving his head + he was informed that the unit rules do not allow this action. He was markedly angry, and led the team to know it. His body language was physically threatening, but he was finally able to calm down + return to the unit plan. Order Stat PRN meds in case of severe agitation |

**Weekly Nursing Summary**                  6/11/0? @ 1630

1. Mental Status: alert & oriented
2. Locomotion: Does not have difficulty c̄ ambulation
3. Bowel & Bladder Habits: N/C diarrhea/constipation - urine lab = Normal
4. ADL Habits: neat & well groomed
5. Fluid Intake: adequate hydration
6. Food Intake: 100% meals - 289% Ideal Body Wt - 5# wt gain
7. Sleep Pattern: N/C insomnia
8. Restraints or Support Safety Devices: N/A

Response to Nursing Interventions from MTP: Pt continues to be negative, manipulative, attempts to cause problems c̄ peers and remain on sidelines to observe. Upset because snacks are closed for evening following episode of "money being stolen from peers" so had to be content c̄ snacks provided/dietary. Staff questions where he is receiving money from & how, as he has not received any money p̄ adm. Accused RN of being racist when he was redirected. Loud and posturing. ————————— H. Harland RN

Patient's Name MELBA JEAN LEWIS MOTH AREA 5  Hospital No. P. 26
973-481-5028  05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/11/04 (cont) | | Was informed that no one would speak to his mother unless he gave permission. He seemed satisfied. |

Pt also raised the issue of shaving his head + he was informed that the unit rules do not allow this action. He was markedly angry, and let the team know it. His body language was physically threatening, but he was finally able to calm down + return to the unit plan. Order ___ PRN meds in case of severe agitation.

_____ (signature)

**Weekly Nursing Summary** 6/11/04 @ 1630

1. Mental Status: alert & oriented
2. Locomotion: Does not have difficulty c̄ ambulation
3. Bowel & Bladder Habits: N/C diarrhea/constipation - urine lab = Normal
4. ADL Habits: neat & well groomed
5. Fluid Intake: adequate hydration
6. Food Intake: 100% meals - 28% ↑ Ideal Body wt - 5# wt gain
7. Sleep Pattern: N/C insomnia
8. Restraints or Support Safety Devices: N/A

Response to Nursing Interventions from MTP: Pt continues to be negative, manipulative, attempts to cause problems c̄ peers and remain on sidelines to observe. Upset because snacks are closed for evening following episode of "money being stolen from peers" so had to be content c̄ snacks provided/dietary. Staff questions where he is receiving money from & how, as he has not received any money c̄ adm. Accused RN of being racist when he was redirected. Loud and posturing. ———————— H. Hanlon, RN

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

**P R O G R E S S   N O T E S**
(Continued)

LEWIS, JIMMY                          /66
4F443              1309 Unk H AF
4 EDWIN PLACE NEWARK NJ 07112
MELBA JEAN LEWIS MOTH AREA 5
973-481-5028              05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/10/04 | 4:30p | Psychiatry Addendum |
| | | Pt states he "hallucinate" at night – when he may see shadows, may think he hears things. He cat used the word "hallucinate" to mean intrusive, negative thoughts. And then & start contemplate how the things I'm contemplating, & that "scares" him. |
| | | [signature] |
| 6/11/04 | 1:30p | Psychiatry/Team Meeting |
| | | We met c̄ pt who was irate about the team having any contact c̄ his mother. Team SW stated his mother had called to give her some info about pt, + Keep descured his case. His hears had signed a release of information in order that the team be allowed to do so. When we informed him of this, he denied it + demanded to see it. He was argumentative, hostile, rageful, stating that his mother had a weak heart + wouldn't be able to take the strain of dealing c̄ his issues. He began escalating until he was told that the release of info to the team to speak to his mother would be shreddered if it wished it. So we brought the shredder in, but before he would shred it, he sat, while the team sat + waited, + read thru it taking as much time as possible. He finally shreddered it + |

Patient's Name _____ EDWIN PLACE NEWARK NJ 07112
MELBA JEAN LEWIS MOTH AREA 5
973-481-4028                     Hospital No. _____

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|--------------------------------------------|
| 6/13/04 | 5 pm | patients and staff. This was reported to D. Laurence, RN and pts was given a PRN. — K. Cuss |
| 6/13/04 | 8 pm | Patient became disruptive on the unit due to his outburs over being asked to leave the bathroom and clear hall in order for 2:1 patient to have access. Pt began cursing & refused to follow unit routine. Patient was asked if he needed a prn to help him calm down; pt replied yes! Prn Geodon & Ativan was given. Pt cont. to refuse to go to the dayhall. Others pt went & pt remained on the unit č a staff present — D. Ackerson RN |
| 6/14/04 | 12:30 am | During to changing of shift Pt (Jimmie Lewis) was told to close the laundry room door. Pt then begin to threaten the staff and getting aggressive. Pt was told to clam down and relax. — End of Statement — C. Fason E.O.A.T |
| 6/14/04 | 1:30 am | pt became extremely ↑ agitated for no apparent reasons. Pt level of agitation escalating rapidly. Verbal interventions ineffective in redirecting his behavior. Pt resistive ____ and not willing to take prn meds. Nursing supervisor called for extra help due to pt's unpredictable behavior. Pt continues to be ↑ agitated and not willing to take PRN meds even after much encouragement. Pt had to be physically escorted to Q.R & PRN meds given. Pt remained in Q.R for 5 min. and returned to his bedroom. Pt resting quietly at present time. Will monitor pt closely. ___ m.____ |

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

**PROGRESS NOTES**
(Continued)

LEWIS, JIMMY
48443                1309 UNK M AF U        /68
4 EDWIN PLACE NEWARK NJ 07112
MELBA JEAN LEWIS MOTH AREA 5
973-481-5028                05/21/2004

Lewis, Jimmie

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/11/04 | 2140 | Pt requested a copy of his medication and side-effects I told the Pt as soon as I am finish with the meds I will write out the meds Seroquel 50mg and the side effects the Pt waited until I had out pt left to give meds since he received his meds first in line he yelled from the end of the hallway repeating over and over again about the meds and side effects. At the medication line I explained what the meds are why he is taking it and side effects Pt stated he wanted it written out on a piece of paper. I wrote the medication out on a piece of paper with side effects and attempted to give it to the pt when he bluntly refused it infront of our attendant and the nurse in charge. ——— Margaret Wiley |
| 6/13/04 | 1:15 pm | Nsg Note: Pt. became verbally abusive and agitated cursing @ staff and refusing to comply with rules and procedures for dayhall and unit. Pt. refused to go to dayhall which caused the rest of patients to stay on unit and he disrupted the unit with arguing and threatening other |

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

**P R O G R E S S   N O T E S**
(Continued)

LEWIS, JIMMY
46443
4 EDWIN PLACE    309 UNK H AF 66
MELBA JEAN LEWIS NEWARK NJ 07112
973-481-5028    MOTH AREA 5
05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/14/04 | 6 PM | Resten well. J further behaviour problems. will monitor for u/safety. ——— m.m. J |
| 6/14/04 | 9:25 PM | Pt non-compliance to staff, threatening, staff aggressive, very abusive verbally, agsited, threw a elbow @ staff ——— R. Gray |
| 6/14/04 | 2125 | |
| 6/14/04 | 9:30pm | OD Note. Patient had been agitated and aggressive since evening. He was cursing, yelling and threatening staff members. He was tried earlier to verbally calm him down. He was actually angry this evening because he is not allowed to eat anything from vending machine. His priviledges were taken away slowly because he doesn't follow direction and any routine unit activities. Therefore, when he was told that patient couldn't have a candy bar [he lost control and started to fight physically with staff member, and also threatened to 'get the staff'.] He was seperated, given prn medication of Geodon 20mg I/m, 2mg of Ativan and 50 mg of Benadryl. He had to be secluded because he continued to hit and kick the walls & staff. Seclusion was started at 9:00 pm not to exceed for more than 2 hrs. He may be released earlier if he calms down. ——— Dr REICHL, MD |
| 6/14/04 | 2230 | Pt remains in seclusion - upon approach @ 2200 pt awake, lying on side facing away from the door - door opened and inquired how he was feeling - glanced over his shoulder & refused to speak to staff. Seclusion continues. H Taylor RN Dr. Foster contacted re: above. ——— H Taylor RN |

P R O G R E S S   N O T E S

PROGRESS NOTES (Continued)

2 EDWIN PLACE
MELBA JEAN LEWIS MOTH AREA 5

Patient's Name 973-481-5028         05/21/2004         Hospital No. _____

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|---|---|---|
| 6/14/04 | 2310 | Pt approached @ 2300 to determine if he was able to contract for safety to D/C seclusion – pt awake and refusing to speak to staff. OD called to renew seclusion. —H Hamilton RN |
| 6/15/04 | 2330 | Pt was able to contract for safety @ 2305 & was taken out of seclusion, exit interview completed, will continue to monitor pt's behavior — Tanya Wilson |
| 6/15/04 | 0105 | Pt rested quietly in bed, ∅ aggressive behavior towards staff or other pts — Tanya Wilson |
| 6/15/04 | 7:15 am | OD Note (Late Entry) Patient was released from seclusion at 11:15 pm last night after he contracted for safety. SWaters   Orreissi, MD |
| 6/15/04 4:30 pm | | Pt/children Pt seen to discuss the aggressive violent behavior he has been displaying over the last several days; he has been oppositional, aggressive + defiant since admission. Pt stated he was mistreated by staff and he basically took no responsibility for any of it. He was told that the RN had a right to investigate the situation of some money that disappeared that was later found. He had been told to come in of the patio + he refused to do it. Pt was anger because he saw he has been told that his privilege restriction has been prolonged without his knowledge. Pt went on rambling, oppositional Pt took no responsibility for his actions + refused denied all the issues involved. Plan - restrictions to continue for 1 week from yesterday. SWaters |

P.29

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

LEWIS, JIMMY                    /65
45443          -1309 UHX N 1F J
4 EDWIN PLACE NEWARK NJ 07112
NELBA JEAN LEWIS MOTH AREA S
973-481-5028           05/21/2004

## DOCTOR'S ORDER SHEET

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or NO SUBS) is noted."

Name: _____    Facilty: _____    Activity: _____    Case No.: _____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED BY |
|---|---|---|---|
| 6/14/04 | 9:00pm | Patient to be placed in Seclusion Room for the safety of others, not to exceed for more than 2 hrs. Patient can be released earlier when he calm down. SUQRESHI DUKEISHI, MD noted 6/14/04 @ 2150 Helen Haslon RN | |
| 6/14/04 | 2300 | Seclusion renewed not to exceed 2 hours oriented, pt is calm. T/o Dr. Qureishi / Helen noted 6/14/04 @ 2310 Helen Haslon RN SUQRESHI | |
| 6/15/04 | JW | | |
| 6/15/04 | | Continue restriction of patio, wt room, gym + vending machine x another week | |
| 4:50pm | | SUQRESHI | |
| 6/16/04 | 6/17/04 JW | 6/18/04 | |

Patient's Name **MELBA JEAN LEWIS MOTH AREA 5**
973-481-5528   05/21/2004   Hospital No. _____

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6-15-04 | 6:05pm | Therapeutic Recreational Referral Note — Pt has been referred to Leisure Education 1x wk 45 min to expand his knowledge of leisure opportunities by being involved in watching travel documentaries and engaged in low intensity exercises like walking on patio. — S. Jaffethus, AT II |
| 8/15/04 | 6:10PM | Patient was redirected from doing push-ups in the hallway. This is not the first time staff has redirected him from doing this and patient began to argue with staff saying, "I did not get a rule book." Lance T. Rogers N.A. |
| 6/21/04 | 9AM | Nsg. note: Pt. cursed and used threatening behavior towards staff. Pt. was asked not to use Quiet Room bathroom on other occasions. We had an incident with another pt. and the Quiet room needed to be used but could not immediately be used due to waiting for the bathroom to be free. Pt. was spoken to by C. Cornish, N.M. — X Thos |
| 6-21-04 | 1150a | Patients were returning from Dining Room after breakfast Mr. Lewis came on the north unit by passed patient's bathroom and went into the Quiet Room bathroom Nurse Assistant informed patient that that Quiet Room bathroom is for emergency situations patient became loud insulting irate and using profanity directed @ staff — Karen Chamblin LPN |

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

**PROGRESS NOTES**
(Continued)

```
LEWIS, JIMMY                    /66
46443              1309 UNK M AF U
4 EDWIN PLACE NEWARK NJ 07112
MELBA JEAN LEWIS MOTH AREA 5
973-481-5028        05/21/2004
```

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 10/15/04 | 5 pm | Addendum - Psychiatry. Pt c/o receiving PRN's when he's "not psychiatric". I explained that we give PRN medications that include Haldol, Geodon, Benadryl + Ativan to patients who are escalating, becoming more + more aggressive + argumentative + confrontational in order to keep help that pt calm down. I reminded him that I had explained the unit use of the PRN medication to protect the other pts and the staff from a violent pt, + that he would only receive a PRN if his behavior warranted it - that is - if he were escalating to the point of refusing all verbal redirection + all other less restrictive means of calming him down. He however continued to c/o having received a PRN med over the last few days when he didn't need it + we reiterated that it was the RN's decision at the time that he did need it for the protection and safety of the milieu. No c/o side effect to Geodon dose - Continue to give PRN medication if necessary. — Psychiatry [signature] Will follow next week on 10/30/04. Pt has no further medical complaint. [signature] |

PROGRESS NOTES (Continued)

4 EDWIN PLACE
MELBA JEAN LEWIS MOTH AREA 5
Patient's Name 973-481-5028          05/21/2004          Hospital No. _____

P. 31

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/14/04 | 2310 | Pt approached @ 2300 to determine if he was able to contract for safety to D/C seclusion — Pt awake and refusing to speak to staff. OD called to review seclusion. — H Harlen RN |
| 6/15/04 | 2330 | Pt was able to contract for safety @ 2330 & was taken out of seclusion, exit interview completed, will continue to monitor pt's behavior — Tanya Wilson |
| 6/15/04 | 0105 | Pt rested quietly in bed, Ø aggressive behavior towards staff or other pts — Tanya Wilson |
| 6/15/04 | 7:15a | OD Note (Late Entry) Patient was released from seclusion at 11:15 pm last night after he contracted for safety. — Sweat — Okereti, MD |
| 6/15/04 4:30pm | | Psychiatry Pt seen to discuss the aggressive, violent behavior he has been displaying over the last several days; he has been oppositional, aggressive + defiant since admission. Pt stated he was mistreated by staff and he basically took no responsibility for any of it. He was told that the nm had a right to investigate the situation of some money that disappeared that was later found. He had been told to come in off the patio + he refused to do it. Pt was angry because he saw he had been told that his privilege restriction had been prolonged without his knowledge. Pt went on re arguing, oppositional Pt took no responsibility for his actions + refused denied all the issues involved. Plan — restrictions to continue for 1 week — Sweat |

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

**P R O G R E S S   N O T E S**
(Continued)

LEWIS, JIMMY
46443
4 EDWIN PLACE   309 UNK H AF J  /66
MELBA JEAN LEWIS  NEWARK NJ 07112
973-481-5028   HOTH AREA 5
05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 3/14/04 | 6ᴾ | Rested well — no further behavioral problems will monitor p/o closely. ——— nurses ? |
| 3/14/04 | 9²⁵ᴾᴹ | Pt Non-compliance to staff, threatening, staff aggressive, very abusive verbally, agitated, threw a elbow @ staff ——— R. Gray |
| 3/14/04 | 2125 | |
| 3/14/04 | 9:30ᴾᴹ | MD Note. |
| | | Patient had been agitated and aggressive since evening. He was cursing, yelling, and threatening staff members. He was tried earlier to verbally calm him down. He was actually angry this evening because he is not allowed to eat anything from vending machine. His priviledges were taken away slowly because he doesn't follow direction and any routine unit activities. Therefore, when he was told that patient couldn't have a candy bar [he lost control and started to fight physically with staff members and also threatened to "get the staff".] He was seperated, given prn medication of Geodon 20mg I/m, 2mg of Ativan and 50 mg of Benadryl. He had to be secluded because he continued to hit and kick the walls & staff. Seclusion was started at 9:00 pm not to exceed for more than 2 hrs. He may be released earlier if he calms down. |
| | | SU'AI DUREICHI, MD |
| 3/14/04 | 2230 | Pt remains in seclusion — upon approach @ 2200 lt awake, lying on side facing away from the door — door opened and inquired how he was feeling — glanced over his shoulder & refused to speak to staff. Seclusion continues. H Hayler RN Dr. Foster contacted & aware of above. — H Hayler RN |

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

**P R O G R E S S   N O T E S**
(Continued)

LEWIS, JIMMY                    5/66
45443          1309 UNK N AF 0
4 EDWIN PLACE NEWARK NJ 07112
HELBA JEAN LEWIS MOTH AREA 5
973-481-5028          05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/15/04 | 5 pm | Addendum - Buchack |
| | | Pt c/o receiving PRN's when he her "not psychotic". I explained that we give PRN medication that include Haldol Geodon Benadryl + Ativan to patients who are escalating, becoming more + more aggressive + argumentative + confrontational in order to keep help that pt calm down. I reminded him that I had explained the unit use of the PRN medication to protect the other pts and the staff from a violent pt, + that he would only receive a PRN if his behavior warranted it - that is - if he were escalating to the point or refusing all verbal redirection + all other less restrictive means of calming him down. He never continued to c/o having received a PRN med over the last few days when he didn't need it + we reiterated that it was the RN's decision at the time that he did need it for the protection and safety of the milieu. No c/o side effect to Risperdal. Continue to give PRN medication if necessary. — Away |
| | | Undersigned 6/30/04   Pt has no active medical complaints |

Patient's Name _____ MELBA JEAN LEWIS MOTH AREA 5 _____ Hospital No. _____
973-481-5028    05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 0-15-04 | 6:05pm | Therapeutic Recreational Referral Note — Pt has been referred to Leisure Education 1xwk 45 mins to expand his knowledge of leisure opportunities by being involved in watching travel documentaries and engaged in low intensity exercises like walking on patio. — S. Galfethus, AT II |
| 8/15/04 | 6:10PM | Patient was redirected from doing push-ups in the hallway. This is not the first time staff has redirected him from doing this and patient began to argue with staff saying, "I did not get a rule book." Lance L. Slagers N.A. |
| 8/21/04 | 9AM | Nsg. Note: Pt. cured and used threatening behavior towards staff. Pt. was asked not to use Quiet Room bathroom on other occasions. We had an incident with another pt. and the Quiet room needed to be used but could not immediately be used due to waiting for the bathroom to be free. Pt. was spoken to by C. Cornish N.M. — L. Rios |
| 8-21-04 | 1150a | Patients were returning from Dining Room after breakfast Mr. Lewis came on the north unit by passed patient's bathroom and went into the Quiet Room bathroom Nurse Assistant informed patient that that Quiet Room bathroom is for emergency situations patient became loud insulting irrate and using profanity directed @ staff — Karen Chamblin LPN |

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

LEWIS, JIMMY                    /99
46643            309 OAK H AF
4 EDWIN PLACE NEWARK NJ  7112
MELBA JEAN LEWIS MOTH AREA 5
973-481-5028            05/21/2004

## DOCTOR'S ORDER SHEET

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or NO SUBS) is noted."

Name: _____    Facilty: _____    Activity: _____    Case No.: _____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED B' |
|---|---|---|---|
| 6/19/04 | 5:50 PM | Repeat (demo su) 1 dose of MOM 30 cc PO PRN for constipation X 24 Hrs (UPADHYAY, M) | |
| 6/20/04 | | | |
| 6/21/04 | 1340 | Lotrimin Cream apply to lesion near toe BID x 2 weeks until healed XXXXX  Schedule PODIATRY ref. Onychogryphosis | |
| | | Date/Time: 6/21/04@1:49pm.  Chart Checked By: R. Conyer CSS    M Zinias  6/22/04  1mm | |
| 6/21/04 @1630 | | Renew restrictions x + wb and then to be re-evaluated. T.O. Dr. Foster / H Harlow RN  noted @ 1630 - 6/21/04    H Harlow RN | |
| 6/21/04 | | Seclusion Not to exceed 2 hours. Pt extremely agitated assaultive and poses danger to others and self. Pt can be released when calm and not dangerous any more - BBR MD MD  Sheo Foster    Zinias MD 6/22/ mm | |
| 6/22 | | | |

DHSS — 019A        "PRESS HARD — (USE BALLPOINT PEN ONLY) NO FELT TIPS        D.C.No.:35-06-002-84-10-04-DSH-183

WHITE – Medical Records  ALL OTHERS – Return To Pharmacy

MEDICAL RECORDS COPY

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

## DOCTOR'S ORDER SHEET

P. 34

LEWIS, JIMMY
46443              1309 UNK B AF J
4 EDWIN PLACE NEWARK NJ 07112
MELBA JEAN LEWIS MOTH AREA 5
973-481-5920

LEWIS, JIMMY  06/01/2004

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or NO SUBS) is noted."

Name: _____  Facility: _____  Activity: _____  Case No.: _____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED BY |
|---|---|---|---|
| 6/2/04 | 11:00p | Please give Pt Geodon 20mg IM + Ativan 2mg IM NOW as Pt extremely agitated, assaultive ~~situation~~  BERIK? MD | |
| 6/21/04 | 11:00p | Four Point restraints for extreme agitation. pt trying to knock down the door being danger to self and others restraints not to exceed 2 hours can come off when calm  BERIK? MD | |
| 6/21/04 | 11:40pm | Pt continues to be physically aggressive to Hlo combative reassessment requires 5 point restraints, not to exceed 2 hours, can come off when calm  BERIK MD MD | |
| 6/22/04 | 105am | continue 4' restraints not to exceed 2 hours for safety of self & others T.O. Berika/ medDur   ~~Verbal Order~~ | |
| 6/22 06 |  | 6/23 06 | |

P. 35

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

**PROGRESS NOTES**
(Continued)

```
LEWIS, JIMMY                              '66
46443              1309 UNK M AF U
4 EDWIN PLACE NEWARK NJ 07112
HELBA JEAN LEWIS MOTH AREA 5
973-481-5028              05/21/2004
```

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/22/04 | 2430 | Pt became rangry p̄ assessment of OD to continue seclusion because he would not contract for safety. Pt kicking & banging door - OD determined that he would require 4 pt Restraint. Supervisor called to request assistance due to explosive behavior. Pt placed in 4 pt restraint @ 11:05 PM & given PRN (IM). ——— [signature] |
| 6/22/04 | 1 AM | Pt. remains in 4° restraints due to agitation. OD called & renewed order for 4° restraints not to exceed 2hrs. Will monitor pt closely ——— [signature] |
| 6/22/04 | 2 AM | Pt is calm & quiet c̄ arm & left leg restraint removed. ——— [signature] |
| 6/22/04 | 3 AM | 4° restraints DC'd at this time. Pt contracted for safety & returned to bedroom. Will monitor pt closely. ——— [signature] |
| 6/22/04 | 6 AM | Pt rested well c̄ no further behavioral problems. Will monitor pt closely. ——— [signature] |
| 6/24/04 | 6:10 PM | Pt AEO x3, Maintained on route observation during any AH behavior or Suicide ideation pt approx 4:30 pm Nurse Ares reported + wrote that pt was calling her a "bitch" as she worked. by writer along with H. Howard, I saget took with pt, he reported that he did not say anything abrasive toward Mrs Ares Pt did report cursing. writer informed pt that he should not be cursing at all pt agrees to stop therapeutic interaction effective @ this pt. Crewson? |

Patient's Name _____ Hospital No. _____ P. 36

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/23/04 | Cont. | |

He has the ability to present acting in a pseudo-psychotic manner and convince even some seasoned staff of his illness. He appears to maintain an external locus of control, a disbelief that rules pertain to him also, and a dangerous disregard for others. He can exaggerate and provoke with ease.

This inmate/consumer left this writer's office and returned to the unit immediately launching some of his pseudo-psychotic behaviors to include talking to non existent people in the corner of the dayroom.

Florienda Scott-Cobb, MSW

Patient's Name MELBA JEAN LEWIS MOTH AREA 5        Hospital No. _____ P. 37
4 EDWIN PLACE NEWARK NJ 07112
973-481-5028        05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|

5/24/04 14pm   continued :- at 1pm. will monitor pt
closely and document any changes. ——

6/24/04 1:30 pm   MD Note ——               point
pt was placed on 4 restraints.
Because of disruptive, agressive, thre-
atening, abusing staff.
           Pt. was placed on 4 point res-
traint for his safety and other's safety.
Mental status: pt. said he is upset.
He denied any injury.
He said sometimes (+) AH. He
does not understand why he did that.
Pt. seems to be angry. Alert.
Plan: pt. will receive Benadryl 50
mg now to keep pt sedated/drowsy
to decrease possibility to hurt himself
or others.
He already got PRN meds 1/2 hour
ago Geodon 20mg + Ativan 2mg + Be-
nadryl 50mg.
He will have 2 hours now. M. Accletts, R.

    DC restraint - [signature]

6/24/04 1700   Pt relaxes, noted laying in seclusion
restraint. It's seclusion removed due to
agitation at 2pm. Pt refusing to observe meds or
taking no ownership to his aggressive behavior.
Pt given additional PRN of Benadryl 50mg IM
consisted of seclusion order. Pt was mute to staff, continued
for safety of others & the restraints were down
graded to three & then two & increase compliance

P.38

**STATE OF DELAWARE**
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

LEWIS, JERRY          1309 ORK H AF S
46443          1309 ORK H AF S
4 EDWIN PLACE NEWARK NJ 07112
NELBA JEAN LEWIS NUTH AREA 5
973-481-5028          05/21/2004

## DOCTOR'S ORDER SHEET

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or NO SUBS) is noted."

Name: _____    Facilty: _____    Activity: _____    Case No.: _____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED BY |
|---|---|---|---|
| 6/28/04 | 3pm | | |
| 6/24 | | | |
| 6/24/04 | 1pm | 4° restraint for safety of self & others not to exceed 2hrs. Pt. can be released earlier if calm. T.o Dr Cocchella / madlyn _____ ) cocchella _____ mJ_____ | |
| 6/24/04 | 3:00 pm | Benadryl 50 mg po/im 4ow pt. (Still pt. agitated) Renew 4 point restraint M. Cocchella, M.D. _____ | Noted _____ 1510 6/24/04 |
| 6/24/04 | 5 pm | Discharge pt on 6/25/04 back to the care of DOC. | |
| 6/24/04 | 1pm noted | _____ | |
| 6/24/04 _____ Faxed _____ | 7:30 | Clarification of above restraint order Staff may observe pt Through two-way observation mirror due to extreme aggressive behavior T.o Dr. Cocchella / _____ | |
| 6/25 sat | | | |

P. 39

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

**P R O G R E S S   N O T E S**
(Continued)

LEWIS, JOHN
4??43                309 OAK # 4F ?
4 EDWIN PLACE NEWARK NJ ?7112
MELBA JEAN LEWIS MOTH AREA 5
973-481-5??9              05/21/20?4

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/23/04 | 1535 | Pt wrote a grievance against a female NA, stating that s snacks - she passed by making detrimental comments re: his sexual preferences, etc.. At time this occurred, RN was passing meds from med cart just inside door of unit. NA entered unit and walked past the pts who were lined up awaiting their meds - walked to NA desk s comment to anyone and went to desk. H Harlow RN |
| 6/23/04 | 6:15 PM | Pt was re-directed from peering into another patient's door window and became verbally abusive towards staff asking "if they where trying to create a scene and if they wanted him to start focusing on him." Lance I. Sagers N.A. |
| 6-24-04 | 1:20 P | Pt was in the dining room @ his table during lunch MR Lewis threw his lunch tray against the wall and was ask by staff to pick up his tray, there was no response MR Lewis then reached over and grabbed another pt's tray and threw it against then wall and stated "I want my fucking mail!") The attempted to re-direct MR Lewis to clean up his trays and he refuse redirection. † James Kamwell |
| 6/24/04 | 1:45 pm | pt's level of agitation escalating rapidly. verbal intervention ineffective in reducing his behavior. Prn Ativan 2mg Im, benadryl 50mg Im, clogen 20mg Im given to help pt regain control of his behavior. Pt continues to be 7 agitated. OD called a 4Ø restraint order obtained & placed pt 4Ø restraint |

Patient's Name KELEA JEAN LEWIS HOTH AREA 5
973-481-5028          05/21/2004   Hospital No. _____

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/24/04 | 145 pm | continued :- at 1 pm will monitor pt. closely and document any changes. _____ (signature) |
| 6/24/04 | 1:50 pm | MD Note — point pt was placed on 4 restraints. Because of disruptive, aggressive, threatening, nursing staff. Pt. was placed on 4 point restraint for his safety and other's safety. Mental Status: pt. said he is upset. He denied any injury. He said something bad ⊕ att. He does not understand why he did that. Pt. seems to be angry. Alert. Plan: pt. will receive Benadryl 50 mg now to keep pt. sedated / drowsy to decrease possibility to hurt himself or others. He already got PRN meds N2 hours ago Geodon 20 mg + Ativan 2 mg + Benadryl 50 mg. He will have 2 hours more. M. Nocletto, M.D. on restraint — (signature) |
| 6/24/04 | 17:00 | Pt seen, noted lying in seclusion room to 4 point restraint. It's seclusion released due to ____ agitation @ 8 pm. Pt refusing to take oral _____ (rest illegible) |

P. 40

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

**P R O G R E S S   N O T E S**
(Continued)

Lewis, Jimmie

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/23/04 | cont | Social Service note cont. (Weekly) He may be laying ground work for another assaultive episode to be acted out in the near future. — _Glorinda Scott-Cobb, MSW_ |
| 6/24/04 | 5 pm | Psychiatry Discharge Note — Client reviewed since we last ctct eg 6/15/04 (pt'r on vacation). Mr Lewis has been hostile, threatening, assaultive & resistive to verbal redirection. There has been no evidence of psychosis, depression or mania. Mr Lewis has difficulty c limit setting & boundaries, & especially c respecting the rights of others. He has not benefited from a psychiatric admission. He carries the dx of Malingering and Alcohol Abuse, Antisocial Personality D/o & Hypertension. Attempts to engage Mr Lewis in therapies have not been successful. No SPMI dx'd. Mr Lewis has c/o ∆d during this admission but his attempts to appear psychotic have been judged to be malingered by the team. However, any threats to harm himself or others should be taken seriously as Mr Lewis is highly manipulative & will stop at nothing to obtain his demands. Plan - Discharge pt back to the care of Dr ___ on 6/25/04. _[signature]_ |

(Continued)

Patient's Name _____     Hospital No. _____

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| Continued | | Pt began to discuss incident. He was rude & refused command. + resistive & oppositional behavior. Pt stated he was agitated because he did not get his mail. Writer explained that all packages are opened by the patient in view of the secretary. He was more receptive to this at this note. Pt release from 4 points @ 1700. Continue to observe. (signature) |

*EXHIBIT B, P. 1*

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| | ) | |
| v. | ) | IN03060175-77 |
| | ) | |
| | ) | I.D.# 0305016966 |
| JIMMY LEWIS, | ) | |
| | ) | |
| Defendant. | ) | |

NOTICE OF MOTION

TO:  BRIAN ROBERTSON, ESQUIRE
     Deputy Attorney General
     Department of Justice
     State Office Building
     820 North French Street
     Wilmington, Delaware 19801


PLEASE TAKE NOTICE that the within Motion for Commitment for

Psychiatric Evaluation at the Delaware State Hospital will be

presented to this Honorable Court as soon as counsel may be heard.


_____
JOHN S. EDINGER, JR., ESQUIRE
Assistant Public Defender
Office of the Public Defender
State Office Building
820 North French Street
Wilmington, Delaware 19801

Dated:  NOVEMBER 13, 2003

*P. 2*

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | IN03060175-77 |
| | ) | |
| | ) | I.D.# 0305016966 |
| JIMMY LEWIS, | ) | |
| | ) | |
| Defendant. | ) | |

### MOTION FOR COMMITMENT FOR COMPETENCY EVALUATION
### AT THE DELAWARE STATE HOSPITAL

COMES NOW, the defendant, Jimmy Lewis, by and through his attorney, John S. Edinger, Jr., Esquire, and respectfully moves this Honorable Court for an Order transferring the defendant to the Delaware State Hospital for a psychiatric evaluation. In support of this Motion, the following facts are asserted:

1. The defendant was convicted of the charges of Carjacking 2nd Degree, Theft $1,000 or Greater, and Resisting Arrest.

2. Since the defendant's conviction, the defendant, while at Gander Hill, has displayed inappropriate behavior.

WHEREFORE, the defendant moves for an Order of the Court transferring the defendant to the Delaware State Hospital for a psychiatric evaluation for the purpose of determining competency and to obtain treatment for his own well-being until such time that treatment is no longer warranted.

_____
JOHN S. EDINGER, JR., ESQUIRE
Assistant Public Defender

SATURDAY, JULY 5, 2003

## NEWS BRIEFS

### Three injured in jump from burning boat

BRICK: Three people suffered minor burns and two others escaped injury when all five jumped from a boat that caught fire in the Barnegat Bay near the Metedeconk River yesterday, Brick Township police said.

The boat was about 30 yards out from an Ocean County marina about 4:30 p.m. when flames engulfed the craft, possibly the result of an explosion, said Sgt. Craig Lash.

All five boaters were rescued, the sergeant said. The boat, which was gutted, drifted to shore and beached itself.

### Public is asked to help find missing Newark man

NEWARK: Police are seeking the public's assistance in finding a city resident who suffers from schizophrenia and a bipolar disorder.



LEWIS

Jimmie Lewis Jr., 36, talked last with his mother by telephone on May 19, but wasn't reported missing until June 25, said Lt. Derek Glenn, a city police spokesman.

He said Lewis, described as manic depressive, is 6 feet 2 inches, weighs 230 pounds, has brown eyes, black hair and a dark skin.

Glenn said anyone with information should contact police at (973) 733-5172.



**Northern State Prison-Main**
PO Box 2300  Newark, NJ

EXHIBIT D, P.1

Page 1
Chart Document
December 21, 2001

JIMMY LEWIS    Inmate Housing Location: Northern State Prison-Main
Male  DOB: 12/25/1966    SBI #: 000586765E    Booking #: 285939

12/20/2001 - Internal Other: MH Treatment Plan: Update
Provider: Bernice M. Frinch, LCSW
Location of Care: Northern State Prison-Stabilization Unit
This document contains confidential information

**Current Problems:**
HYPERTENSION, UNSPECIFIED (ICD-401.9)
ANTISOCIAL PERSONALITY DISORDER (A2) (DS4-301.7)
R/O SCHIZOAFFECTIVE DISORDER (A1) (DS4-295.70)
R/O BIPOLAR DISORDER NOS (A1) (DS4-296.80)

**Current Medications:**
VISTARIL CAPS 100 MG (HYDROXYZINE PAMOATE) Take 1 cap po HS prn Start 11/30/01 End
12/30/01
DEPAKOTE 500 MG 1 tab in am & 2 tabs @ hs x 15 days
RISPERDAL 1 MG 1 tab bid x 15 days
THORAZINE TABS 100 MG (CHLORPROMAZINE HCL) Take 1 tab po Q6h prn agitation

Housing: SU

### Strengths and Limitations
**Communication** good
**Medication Compliance** good
**Supportive Relationship** fair
**Physical Health** fair
**Social Skills** poor
**Estimated Literacy level** fair
**Insight** fair
**Motivation for treatment** fair
**ADL compentencies** good
**Substance Abuse History** Hx of drug abuse
**Suicide History** Hx suicide attempts and ideation

### New Problems
Axis IV
Patient has a problem with social environment, criminal and legal system.

### Treatment Goals and Modalities

**Thought to injure oneself**
**Problem Definition:**
Reoccurance thought to hurt self evidenced by verbal threat.
**Treatment Goals:**
Inmate will not hurt other
Inmate will learned new techniques to deal with his upset.
Inmate will eliminate acting out behaviors such as self- harm suicidal threats.
**Treatment Modalities:**
Psychiatrist will provide daily counseling and medication assessment.
Social worker will provide daily conseling and group session

.thern State Prison-Main
Box 2300  Newark, NJ

*P. 2*

Page 2
Chart Document
December 21, 2001

JIMMY LEWIS    Inmate Housing Location: Northern State Prison-Main
Male DOB 12/26/966    SBI # 000333795E    Booking # 275988

Daily individual counseling by psychologist.

**Thought to injure others**
**Problem Definition:**
Reoccurance thought to hurt other evidenced by verbal threats and and argumentative behavior.
**Treatment Goals:**
Inmate will not hurt other.
Inmate will attend anger management session.
Inmate will demonstrate effective communication skills without threat to hurt other.
**Treatment Modalities:**
Daily contacts with psychiatrist for medication assessment and prescription.
Daily group session with social worker and focus on anger manent.
Daily individual counseling session with psychologist
**Additional Notes:** Inmate states that he want individual therapy to deal with his attitude because it has become an issues which has prevented him from making choices. He states he is beginning to make threats to solve problem,.

Outpatient treatment plans must have social worker, psychiatrist, psychologist, and imate signatures.

| | | | |
|---|---|---|---|
| OT | Date | SW | Date |

| | | | |
|---|---|---|---|
| Psychologist | Date | Psychiatrist | Date |

| | | | |
|---|---|---|---|
| RN | Date | Officer | Date |

*Jimmie Lewis*    12/21/01
Inmate    Date

Signed by Bernice M. Frinch, LCSW on 12/20/2001 at 10:32 PM

Delaware Psychiatric Center
Page 1 - Psychiatric Assessment Form
Rev. 5/00

*EXHIBIT A, P.1*

LEWIS, JIMMY                    1/66
46443          -1309 UNK M 4F 5
4 EDWIN PLACE NEWARK NJ 7112
MELBA JEAN LEWIS MOTH AREA 5
973 - ▮▮▮ - ▮▮▮▮        05/21/2004

Department of Health and Social Services
Division of Substance Abuse and Mental Health
Delaware Psychiatric Center

*some history obtained from court order + FCM records.*

## PSYCHIATRIC ASSESSMENT FORM

Patient Name (Print): __Jimmy Lewis__

I.   ADMISSION STATUS:    24 Hour / Civil / (Court) / Voluntary

II.  CHIEF COMPLAINT:   Refused to speak

III. SOURCES OF INFORMATION:
     Interpreter Needed?  Yes / (Not Needed)  (If yes, name of and type of interpreter)
     _____

IV.  HISTORY OF PRESENT ILLNESS: *PX has been jailed at Gander Hill for several months*

PX is a 38 y o AA male who presents to the Mitchell Bldg by court order for the purpose of determining competency, + to obtain tx for his own well-being. PX was evaluated by prison psychiatrist, Dr Dilip Joshi, on 5/27/03, as "psychotic + delusional, a danger to self or others, refusing to take medication." He had assaulted a CO, + was transferred to the infirmary. PX reported, "I can't distinguish between right + wrong. I am hearing voices telling me to hurt myself + I'm seeing shadows."

(over)

Date: __5/21/04__ Time: __11 am__ Print Name of Interviewer: __Sylvia Foskey mw__

*P. 2*

Delaware Psychiatric Center
Page 2 - Psychiatric Assessment Form
Rev. 5/00

```
                                        /66
LEWIS, JIMMY
46443           -1309 UNK M AF
4 EDWIN PLACE NEWARK NJ 7112
HELDA JEAN LEWIS MOTH AREA 5
973-                    05/21/2004
```

## V.  PAST PSYCHIATRIC HISTORY:

Current Psychiatrist or Clinician/date last seen: _unknown_

History of Major Depression?    Yes / No

History of Suicidal Behavior?    (Yes) / No    unknown — justance by wrists/arm
5/21/02                (no tx) — 4 yrs ago
History of Violent Behavior?    Yes / No

History of Mania?    Yes / No

History of Anxiety Disorder?    Yes / No

History of Psychosis?    Yes / No

Give a detailed personal history regarding previous treatment, hospitalizations and medications:

[unknown 5/21/04]

- Pt states he was at Crisis a few times but never was an inpt in a psychiatric hospital

- He said he went to Crisis for having hallucinations, hopeless feelings + suicidal thoughts.

- outpt: Saw counsel (of some sort) as a child in N.J. Pt doesn't know why. Told me his mother would know then he remembered that his mother was in a lesbian relationship + 2 didn't approve of it + 2 voiced my opinion to her + 2 started

Delaware Psychiatric Center
Page 4 - Psychiatric Assessment Form
Rev. 5/00

*P. 3*

LEWIS, JIMMY          __/66
46443        -1309 UNK H AF U
4 EDWIN PLACE NEWARK NJ 07112
MELBA JEAN LEWIS MOTH AREA 5
05/21/2004

## VIII. SOCIAL HISTORY:

List marital history, current status, friends, children (incl ages), names of people who reside in home: [Unknown 5/21/04]

Never married / "Every time 2 get into a relationship, we always argue. W/t one GF of ten 8 yrs. was attending community drivers' school - to try 18, Wheeler- it was going to be

**Occupational History:** Occupation / last job worked / why stopped working / longest period worked: my first job -

Pt admits selling drugs off ten. "That's what I had to do to have money" then 2 got to selling bootleg CD'r + DVD'r

porter    2 always argue, or go in late + 2 get fired
construction    I've been fired more than 10 times.
"whatever job was open, I was doing"    Longest job: 3 mos.    Polaris springer or adopt hirer.

**Educational History:** Grade level achieved: 10th grade  Special Classes: Yes / No
(GED) actually got a H diploma
Trade School: Amer Bus Institute - didn't stay long + ended up owing them.

**Legal History:** Charges / Incarceration / Litigation / None
[unknown] Total: 6 yrs. mostly for theft - "one was upgraded to
1993 - 2000 "got into fights" - so    Robbery - 2 pickpocket
somebody"

## IX. ALCOHOL AND DRUG HISTORY    it was misuse

since teens - last use: prior to incar. ⊕ h/o blackouts
**Alcohol:** never used / rarely uses / heavy use / blackouts / seizures / AM drinker /

lost workdays / DTs / detox-rehab / DUI

i.v. 16 yrs ago
**Drugs:** never used / cocaine / (marijuana) / amphetamines / heroin / phencyclidine /

barbiturates / benzodiazepines / hallucinogens / inhalants / nicotine / caffeine /

IV use / share needles / other _____

## X. MENTAL STATUS EXAM: [Pt sat still c no abs. uncoop. actly   5/21/04
head shaved   standup down at floor, refusing to speak

**Appearance:** (Kempt) / Unkempt / Drowsy / Stuporous / Intoxicated

5/21/04
**Manner:** Pleasant / (Cooperative) / Uncooperative / Guarded / Angry + Suspicious  5/21/09
[refused to
answer any
question -
**Speech:** Rate: (Normal) / Slowed / Pressured / Monotonous    selectively mute
  Volume: (Normal) / High / Low    pt was speaking
  Content: (Clear) / Goal-directed / Rambling / Vague / Mute    c staff earlier
in normal
**Motor Activity:** General: (Calm) / Agitated / Pacing    manner.]
  Gait: (Normal) / Ataxic / Shuffling
  Movement: (None) / Tremor / Tic / Rigidity / Catatonia

to me
Pt opened up (5/25/04)

**DELAWARE PSYCHIATRIC CENTER**
Physical Examination Form (Page 3 of 3)

P.5

~~-1309~~ K M AF J
4 EDWIN PLACE NEWARK NJ 07112
HELBA JEAN LEWIS MOTH AREA 5
973-481-5028          05/21/2004

**Reflexes (Graded 0-3):**

**Babinski:**    Toes Up / Toes Down

**Sensory:**    (Light Touch, Pinprick, Vibration, Joint Position) - Describe Abnormalities:
                Normal

**Cerebellar (Alternating Movements):**  Normal / Abnormal

**Gait:**  Normal / Ataxic / Wide-Based

C.     Is there <u>EVIDENCE SUGGESTIVE OF POSSIBLE PHYSICAL ABUSE?</u>
       (Hematomas, suspicious scars, burns, lacerations, bruises)  Yes / No
       If yes, describe nature, extent and location:

D.     Is there Evidence of Tardive Dyskinesia?   Yes / No

E.     <u>PAIN ASSESSMENT</u>

       a.  Is the patient verbalizing current pain symptoms?  No / Yes

       b.  Are there non-verbal signs of pain present? (e.g. clenched fists, reluctance to
           move, restlessness, facial grimacing, joint swelling, tenderness or bruising,
           rubbing joints, holding or protecting any part of the body)   No / Yes

       If "Yes" answered, to either question, please describe: _____

       _____

       _____

F.     <u>MEDICAL CONDITIONS</u> (by history or physical  findings):
       H/o Irritable Bowel Syndrome, Hypertension

       _R. Sheth  MD_____    _R. Sheth  MD____    _5/21/04   11:57_ am
       **PHYSICIAN'S SIGNATURE**          **PRINT NAME**            **DATE/TIME**


       _____    _____    _____
       **PHYSICIAN'S SIGNATURE**          **PRINT NAME**            **DATE/TIME**
       (Reviewed by)

P. 6

Department of Health and Social Services
Division of Substance Abuse and
Mental Health
## Delaware Psychiatric Center
## Pharmacy Data Sheet

LEWIS, JIMMY                    /66
46443        1309 UN...  AF 'J
4 EDWIN PLACE NEWARK NJ 7112
MELBA JEAN LEWIS MOTH AREA 5
973-                  05/21/2004

Patient Name: _Jimmy Lewis_

Height: _5'11_    Weight: _244_

Allergies and/or Severe Adverse Reactions (specify):  (Admitting)    Changed

Unalica   NKDA

DSM IV DIAGNOSIS:    Admitting    (Changed)    (circle one)

Axis I: (1) Alcohol Abuse R/o Dependence    6/24/04

R/o Repetitive d/o   R/o Bipolar d/o   R/o chronic psychotic d/o

(2) R/o Malingering (3) R/o Conduct D/o

Axis II: Deferred   Anti-social Personality D/o

Axis III: HTN

Date/Time: _5/21/04_    Physician's Name Printed: _Silvia Foskey M.D._    Physician's Signature

When form is complete and signed fax to Pharmacy (577-4329) so that medications can be sent. Original form to be filed in patient's chart in the white divider (top/first page). If at any time there is a change in the information given, complete the appropriate section only and circle "changed".

DEPARTMENT OF HEALTH AND SOCIAL SERVICES
DIVISION OF ALCOHOLISM, DRUG ABUSE AND MENTAL HEALTH
DELAWARE PSYCHIATRIC CENTER

PROGRESS NOTES

*EXIBIT  A P. 7*

LEWIS, JIMMY                    /66
44443         -1309 UNK M AF
4 EDWIN PLACE NEWARK NJ 07112
MELBA JEAN LEWIS MOTH AREA 5
973-481-5028          05/21/2004

*Jimmy Lewis*

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 5-21-04 | 1030 | Next of Kin: _refuses to speak_ |
|  |  | Address: |
|  |  | Telephone: |
|  |  | Admitted to: Mitchell                    At: 1100 |
|  |  | ☒ Oriented to Ward        ☒ Given Patient Handbook |
|  |  | Height:    Ft: 5    In: 11    Weight:    Lbs.: 244 |
|  |  | Eye Color: brown        Hair Color: black |
|  |  | T. 98.6 °F.    P. 98 /min.    R. 20 /min.    B.P. 140/98 |
|  |  | Behavioral Observations: _Pt refuses to speak/answer questions. Pt sitting on exam table playing/tracking his hands and looking down at the floor. Pt's eyes are reddened, appears to be sad._ |
|  |  | _Diane Sewell rn_ |
| 5/21/04 | 11 am | _Psychiatric_ |
|  |  | _Full eval on chart_ |
|  |  | _(signature)_ |
| 5/21/04 | 1400 | _Medical Note_ |
|  |  | _I was called to see this new admission because of HTN & also for physical exam. As I introduced myself as a medical director that will do his physical exam, but he refused to sit down or even do or take his BP, upset because he was on his feet nostrils & was disturbed to be brought here for exam._ |
|  |  | _The nurse staff & I tried to convince him that it will take me 15-30 minutes to exam but would not budge to sit down. No exam done today. Try again later._ _(signature)_ |

PROGRESS NOTES

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

**DOCTOR'S ORDER SHEET**

P. 8
/66
LEWIS, JIMMY    1309 UNK M AF U
46443    4 EDWIN PLACE NEWARK NJ 07112
MELBA JEAN LEWIS MOTH AREA 5
973-481-5028    05/21/2004
*Jimmie Lewis*

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or NO SUBS) is noted."

Name: _____  Facilty: _____  Activity: _____  Case No.: _____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED B' |
|---|---|---|---|
| 5/21/04 | | Admit to Mitchell | |
| 11 am | | Haldol 5 mg PO/IM q 6° PRN | |
| | | Severe agitation x 30 days - Give together | |
| | | Benadryl 25 mg PO/IM q 6° PRN x 30 days | |
| | | to prevent EPS. May give with | |
| | | Cogentin 2 mg PO/IM q 6° PRN | |
| | | agitation x 30 days | |
| | | Medical consult to evaluate | |
| | | for possible HTN - needs | |
| | | medication | |
| | | m Javid ? | |
| | | 8th Stein MD    5/21/04 1:?? pm | |
| 5/21/04 | | CBC, UA | |
| 1440 | | CMP, Lipids + Hepatitis panels | |
| | | TSH, Iron Bin + FShift level | |
| | | MOM 30 ml po q HS prn for constipation | |
| M. Wilson RD noted | | Maalox 30 ml po q 6° prn for dyspepsia | x |
| | | + Tylenol 650 mg po q 6° prn for pain/fever | 30 |
| | | + Atenolol 25 mg po daily + hold | days |
| | | of BP is 90 systolic x 30 days | |
| | | Regular Diet | |
| 5/21/04 | | | |

DHSS—019 A    **"PRESS HARD – (USE BALLPOINT PEN ONLY) NO FELT TIPS**    D.C.No.:35 06-002-84-10-04-DSH-183

WHITE – *Medical Records*  ALL OTHERS – *Return To Pharmacy*

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

P R O G R E S S   N O T E S
(Continued)

LEWIS, JIMMY                    766
47413        1309 UNK H AF
4 EDWIN PLACE NEWARK NJ 07112
HELGA JEAN LEWIS MOTH AREA 5
973-481,-5028        05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 5/21/04 | 2300 | Pt has been quiet and adhering to unit routine. Has not required redirection. Also does not talk c staff but observed to be speaking c peers. ——— H. Hanlon RN |
| 5/22/04 | 2:00 pm | Pt AEOxJ, maintained on routine observation for increase _____ any a/v _____ of suicide ideation. It note c _____ interaction c _____ c pts. + staff. note c + B/P @ 0700 148/91 90⁴ 75 18 no c/o pain or discomfort or s/s of distress. It given dietary personal _____ _____ very PO. It appetite good ate 100% of breakfast c lunch. Continue to monitor _____ _____ |
| 5/22/04 | 2300 | Pt without complaints this shift stays in his room. not very friendly with other pts no incidents this shift —— M. Wilson LPN |
| 5/23/04 | 0630 | Pt rested quietly in his room c any complaints or problems this shift V/S 130/80 96.³ -64 -19 —— Tanya Wilson RN |
| 5/23/04 | 11 am | Pt AEOxJ maintained on routine observation. It denies any a/v hallucinations or suicide ideation. Appropriate conversation c peers c staff. It requesting to go to gym just now. It is compliant c unit routine. Continue to monitor. It c no c/o pain or discomfort or s/s of distress. It appetite good ate 100% of meal. Discharge per court order. ordered |
| 5/23/04 | 2230 | Pt complaining of roommate masturbating in front of him. Pt stated that he cannot deal with it and before the night is over |

PROGRESS NOTES

PROGRESS NOTES (Continued)

Patient's Name _____    Hospital No. _____

LEWIS, JIM
41443            1309 UNK H AF U
4 EDWIN PLACE NEWARK NJ 07112
HELBA JEAN LEWIS MOTH AREA 5
973-491-5028        05/24/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| | | something would happen. Pt m The supervisor was inform also Nurse manager Pt was moved to room 71 temporarily Pt also placed two pieces of paper on his forhead sticking out like horns on his forehead I tried talking to Pt to remove them and he refused — M. Wilson LPU |
| 5/24/04 | 06:45 | pt rested quietly in his room ō any complaints or problems —— Anya Wilson |
| 5/24/04 | 07:15 | Pt stated that he wants to see the doctor due to atletes foot —— M. Wilson LPU |
| 5/24/04 | 11:00 A | Partial Social Service Note: Unable to be part of the admissions process due to ongoing family session. Met ō the consumer today. Consumer signed ROI and advance directive. This writer concurs ō the assessment of Dr. Foster. The consumer can present as flirtatious and doesn't take well to redirection. His social assessment was initiated but interrupted due to the nurse retrieving him for the doctor. Will complete social assessment after lunch. Consumer contacted his mother's home leaving her a message ō his address) and this writer's phone #. He has requested reading material which he states will enable him to continue his re— Florienda Scott-Cobb, MSW |

DEPARTMENT OF HEALTH AND SOCIAL SERVICES
DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH
DELAWARE PSYCHIATRIC CENTER

PROGRESS NOTES
(Continued)

LEWIS, JIMMY          66
       1309          AF
4 EDWIN PLACE NEWARK DE 07112
HELBA JEAN LEWIS BOTH AREA
  481-5528     05/21/2004
     Jimmie   Lewis

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 5/24/04 | 12:15 | M. was _____ to Dietician in preference of food. No ? constipation & diarrhea at present time. Abd. — no tenderness. HJMS |
| 5-24-04 | 15:00 | Nutrition — See Nutrition Assessment for recommended Δ. N. Andersen, RD |
| 5/24/04 | 16:30 | PSYCHOLOGY NOTE — Mr. Lewis was interviewed today for his TP3. He was very cooperative throughout. The P3 is currently in progress. His SAP and Educational Assessment have been completed and placed on the chart. His BVRS score is 15 due to recent verbal and physical aggression in prison as well as irritability. _____ MA, Psychology Intern  Counter signature: _____ Psy D |
| 5/25/04 | 8:00 | Pt A&O x3, _____ on _____. I _____ (+ note) _____ conversant & interactive to _____ peers & staff. Pt denies any A/V _____ or suicide ideation. Pt's appetite good _____ 75% of meals. Pt c̄ _____ c/o pain or discomfort ē S/s of distress. Continue to _____. Pt's discharge per court order — _____ RN |
| 5/26/04 | 10:35 am | Pastoral Care Note — Pt refused to be interviewed for Pastoral Care Assessment |
| 5/26/04 | 1055 | Offered Pt F.  Chaplain Thomas Freyaz |
| 5/26/04 | 1055 | Offered Pt Fixodent in a medicine cup. Pt stated that he wants the whole tube or none at all. Pt refused to have some |

Patient's Name  MELBA JEAN LEWIS MOTH AREA 5          Hospital No. _____
973-481-5328      05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 5/26/04 | 1055 | of denture adhesive —                              M.Wilson RN |
| 5/27/04 | 1640 | Pt stated that he believe he has a bladder |
|  |  | infection would like to speak with the MD. |
|  |  |                                   M.Wilson LPN |
| 5/28/04 | 8³⁵A | Social Service Note |
|  |  | Attempted to complete inmate/consumer's |
|  |  | Social Assessment. Inmate/Consumer |
|  |  | refused his medication per Med Nurse. |
|  |  | This writer asked unit staff to |
|  |  | make the inmate/consumer aware |
|  |  | that his Social Assessment could |
|  |  | not be completed until he consistent- |
|  |  | ly complied c it. |
|  |  | This writer is saying this posi- |
|  |  | tion, because, after initiating |
|  |  | the beginning of the above process |
|  |  | she was able to ascertain that the |
|  |  | inmate/consumer has had periods |
|  |  | of unpredictable behavior, while at |
|  |  | Garden Hill Prison (he reports |
|  |  | having assaulted a fellow inmate |
|  |  | because that inmate invaded |
|  |  | his space and was screaming and |
|  |  | yelling at him.) He further reports |
|  |  | that the correction officers told |
|  |  | him he'd reacted inappropriately |
|  |  | and because his personal |
|  |  | space had been invaded and he had |
|  |  | stepped back at least twice from |
|  |  | this advancing screaming peer |
|  |  | before "cracking him." He isn't |
|  |  | Florence Scott-Cobb MSW |

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

LEWIS, JIMMY  P 17
46443                              /66
HOME GIVEN              UNK M AF U
HOME GIVEN

46443

## DOCTOR'S ORDER SHEET

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or NO SUBS) is noted."

Name: Jimmy Lewis ____ Facility: Mitchell ____ Activity: ____ Case No.: ____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED BY |
|---|---|---|---|
| 5/22/04 | 1535 | Clarification of order written for Atenolol 25mg PO daily and hold y Systolic B/P is 90 or below. T.O Dr Kendell/M.Wilson LPN  Alma M. Surette RN | M.Wilson LPN Noted @ 1535 |
| 5/23/04 | | JV pr 5/24/04 | |
| 5/24/04 | 12:13 | Dietician for preference of food  Apply Lotrisone in between Toes daily x 30 days Hs (for Athlete's foot) | Kids Harrimore 5/24/04 |
| 5-25-04 | 1415 | may use fixodent on partial plate bid prn  JO Dr Sheth to Suann Seville Sam | noted @ 5-25 |
| 5/25/04 3 pm | | Benadryl 50 mg PO q HS PRN. Insomnia x 30 days | Sueatos lee |
| 5/25/04 3:45 pm | | Begin Effexor XR 37.5 mg PO q am X 5 days  Then Effexor 75 mg PO q am X 5 days  Then Effexor 150 mg PO q am x 30 days | |
| 5/25/04 @ 2000 Hankey | | | Sueatos lee |

5/26/04

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

# DOCTOR'S ORDER SHEET

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or NO SUBS) is noted."

Name: _____ Facility: _____ Activity: _____ Case No.: _____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED BY |
|---|---|---|---|
| 5/26 | 04 | Give first dose of Effexa xn when | |
| now | | available today | |
| | | Sylla Foster | 5/14/04 |
| 5/27 | | 5/29 | 10 |
| 5/28/04 | 11:57 | Urinalysis. ? midstream clean | |
| | | urine c & s   catch urine | |
| | | Push fluids x 3 day | 5/28/04 |
| 5/29/04 | | 5/29 5/29 6- | |
| 6/1/04 | 9:30a | D/C Effexor — pt refusing | |
| | | | 6/1/04 |
| 6/2/04 | | | |
| 6/2/04 | 1040 | Pyridium 200 mg PO TID   X 5 | |
| | | Bactrim DS ī PO BID | |
| 6/2/04 | 1050 | Add m his diet - Chef Salad/c cheese | |
| | | BID + 8 pm nourishment of cheese | |
| | | crackers, banana  X 30 day | |
| 6/2 | | | |

P.13

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

**P R O G R E S S   N O T E S**
(Continued)

LEWIS, JERRY                    766
49445          1309 UNX W AF
A EDWIN PLACE NEWARK NJ 07112
MELBA JEAN LEWIS MOTH AREA 5
973-481-5128              05/31/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 5/21/04 | cont. | Social Service Note Cont. |

sure of this right and wrong. Also
the inmate/consumer is ostentatious
and doesn't take well to redirection.
At about 8:45 A spoke c̄ Mr. Gray, unit
staff who came to speak c̄ this writer
because he ascertained that the
inmate/consumer may decide to be-
come physically aggressive if the
inmate/consumer doesn't get to
speak c̄ this writer. Explained why
this writer had taken the stance
above. Mr. Gray then stated that
the inmate/consumer has reported
kidney issues, and cloudy urine
as the reason he's refusing his
medication. According to Mr. Gray
since his arrival, the inmate/con-
sumer has been making frequent
trips to the restroom. However,
Mr. Gray did not mention witnessing
any alleged cloudy urine. He (Mr.
Gray) does report that the in-
mate/consumer is on the list to
see the medical doctor today. This
writer instructed Mr. Gray to make
the inmate/consumer aware that
after he's examined and the doctor

Florienda Scott-Coly MSW

4 EDWIN PLACE NEWARK NJ 07112

Patient's Name MELBA JEAN LEWIS MOTH AREA 5    Hospital No. _____

973-481-5028    05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 5/28/04 | cont | Social Service Note (Cont) |
| | | states that there is a medical issue |
| | | and prescribes medication If, then |
| | | the social worker will see the in- |
| | | mate/consumer. If the doctor does |
| | | not find any medical issue, the |
| | | inmate/consumer will have to |
| | | consistently comply c H as such is |
| | | prescribed and then the social worker |
| | | will contemplate the completion of his |
| | | social assessment, speaking c him |
| | | prior to selling the information from |
| | | this mother for whom there is a signed |
| | | ROI. |
| | | Glorienda Scott-Cobb, MSW |
| 5/26/04 | 1115 | PSYCHOLOGY NOTE |
| | | Mr. Lewis's TPS was completed and placed |
| | | at the chart on 5/24/04. |
| | | _____ MA, Psychology Intern |
| | | Counter signature: _____ Psy D |
| | | Psy D. thesis |
| 7/25/04 | P | Pt has questionable urinary symptoms & |
| | P. 73 | 6 weeks |
| | | Pt'y fluids etc √ |
| | | urinalysis & urine c 5 wand |
| | | Temp 98.3 this am |
| 28/04 | 1:45pm | Therapeutic Recreational Initial Assessment Note. |
| | | Pt's initial assessment has been completed and placed |
| | | in chart. See original assessment for further details |
| | | and referral information. _____ Sigal Jethwa, ATR |

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

**P R O G R E S S   N O T E S**
(Continued)

LEWIS, JIMMY                166
45443            1303 UNK M AF
A EDWIN PLACE NEWARK NJ 0711
MELBA JEAN LEWIS MOTH AREA 5
973-481-5328      05/21/200

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 5/29/04 | 2245 | Pt states he is not taking effexor "because the side effects state you could have a sererate problem" and he is now; and there is no relationship to the fact he had it previously to calm to Mitchell. Requesting haldol & benedryl because he was anxious — asked him to elaborate well he hears voices — again asked to explain they were calling his name. Behavior made so doubt as to validity. — H Harlow; RN |
| 5-30-04 | 1158 | Pt started effexor 37.5 mg PO - 150 mg PO 5-26-04 received 2d only refused since the 2nd dose — Karen Chanth |
| 5/30/04 | 1545 | behavior). — H Harlow RN |
| 5/30/04 | 2240 | Pt continues to refuse effexor but demanded RN give him haldol. Ativan, explained he should be taking effexor prescribed by Dr. Foster & there was no reason to take haldol & it was @ the nurse's discretion to determine if there was a need. He was calm, in no distress, no A/V hallucinations apparent from his behavior. He spoke c a staff member who stated he could write a grievance — later he changed his mind. — H Harlow RN |
| 5/31/04 | 1010 | Refused effexor 75 mg PO @ 0800 several attempts made to give med constant refusal states "it makes me sick, I don't want i |

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

**PROGRESS NOTES**
(Continued)

LEWIS, JIMMY          /66
46443        1309 UNX M AF D
4 EDWIN PLACE NEWARK NJ 07112
HELBA JEAN LEWIS MOTH AREA 5
973-481-5028          05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6 3 04 | 3:10pm | Buckwalk |
|  |  | I have been receiving reports of pt's |
|  |  | ... ... |
| 6-3-04 | 3:55 | Psychology Note: |
|  |  | Met w/ Mr. Lewis to review his Masta Tx plan w/ him. He |
|  |  | does not read well so I read it to him - but even at that |
|  |  | it was necessary I translate into more concrete language. |
|  |  | He impresses as having significant intellectual deficits. |
|  |  | He spoke w/ some distress about having been struck by |
|  |  | another patient. In concrete terms I explained what effect |
|  |  | h.i. has on some patients' behavior, and that unlike him |
|  |  | he might respond to assault in this setting. Here we |
|  |  | ask him to be more understanding, + to refrain from |
|  |  | hitting back. The notion seemed foreign to him, but |
|  |  | he responded positively to the intervention. |
|  |  | Kathleen Thanama   Psyd   psychologist |

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

**PROGRESS NOTES**
(Continued)

```
LEWIS, JIMMY                    /66
45443           1309 UNK H AF J
4 EDWIN PLACE NEWARK NJ _7112
MELBA JEAN LEWIS MOTH AREA 5
973-481-5028        05/21/2004
```

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/3/04 | 12.15 AW | Addendem: please note pt has 2" paper horns on his head and reportedly he sticks there to his scalp by himself. ———— SALEM, MD |
| 6/4/04 | 1 Am | pt tacking out loud. verbal intervention ineffective in redirecting his behaviors. O.D notified and is here to evaluate pt. Will monitor pt. closely ———— m. jan... |
| 6/4/04 | 6 am | no further behavioral problems noted. pt rested quietly in bed ī incident. ———— m. jan... |
| 6/4/04 | 8:30am | Psychiatry Pt was acting out last night, yelling at staff from his room. He was seen by the OD and he stated that he had been hit on the head by a peer at 8 am. We spoke ē the attendant who stated there was no contact between the two. OD states it appeared that pt was making up the incident as there was no documentation of the incident at 8 am. Pt did not address the situation until 12 hrs later. |

*P. 17*

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

LEWIS, JIMMY                5455
45447           1309 UGA H 45
4 EG4TH PLACE NEWARK NJ 07112
RELGA JEAN LEWIS HOTH AREA D
973-481-5028           05/21/2004

## DOCTOR'S ORDER SHEET

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or NO SUBS) is noted."

Name: _____    Facility: _____    Activity: _____    Case No.: _____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED BY |
|---|---|---|---|
| 6/3/04 | 3:15 pm | Dc PRN Haldol, Benadryl + Ativan | |
| | | noted  6/3/04 @ 1520   H Hralen RN | |
| 6/4/04 | 12:35 Am | Benadryl 50mg PO PRN x One time for Insomnia | |
| AS error | | Evaluation by unit psychiatrist on 6/4/0 AS error   SALEM MD | |
| 6/4/04 | 9 am | | |
| 6/4/04 | 9 am | Benadryl 50 mg PO/im q 6° PRN agitation/insomnia x 30 days | |
| 6/4/04 | 9 am | Urology consult to evaluate for possible recurrent Urethritis | |
| 6/4/04 | 9:37 | Can participate in Gym & with open activities | Noted |
| 6/5/04 | | 6/6/04 | |

PROGRESS NOTES (Continued)  P. 18

Patient's Name _____ NELSA JEAN LEWIS MOTH AREA 5 _____ 3-481-5028 _____ 05/21/2004 _____ Hospital No. _____

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/4/04 (con't) | | Kirchnak (Con't) |
| | | He also sees shadows when upset ~~when~~ |
| | | plan - con't present Rx or no psychotropics |
| | | — Add Benadryl or PRN for insomnia |
| | | + anxiety. (Pt stated that when he asks for |
| | | a PRN he couldn't get it). We descused |
| | | these issues ī pt who was argumentative |
| | | + defensive. He basically stated he want |
| | | what he wants when he wants it. |
| | | [signature] |

Weekly Nursing Summary   6/4/04 @ 2130

1. Mental Status: Alert and oriented X3 — manipulative.
2. Locomotion: ambulates independently
   Bowel & Bladder Habits: c/o burning ē urination - Rx ē pyridium) -
   ADL Habits: neat & clean - well groomed
3. Fluid Intake: adequate nutrition
6. Food Intake: 100% + @ meals - receives tray + chef's salad
7. Sleep Pattern: U/C insomnia
   Restraints or Support Safety Devices: N/A
   Response to Nursing Interventions from MTP: Pt has required redirection due to
   sexually inappropriate behavior - places paper
   towns on bed so staff will believe him to be
   mentally ill, disruptive in group. Will continue
   to observe behavior. ————— d.Harlan R.N.

| 6/5/04 | 7:45am | Pt. Shaving head attempted to redirect. Pt. was argumentative |
|--------|--------|-------|
| | | and continued to shave head, It was explained to pt. that |
| | | shaving of head is NOT permitted- very difficult to redirect. |
| | | K. Conyer NA. |

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

**PROGRESS NOTES**
(Continued)

LEWIS, JIMMY                    /66
46443              309 UNK M AF
4 EDWIN PLACE NEWARK NJ 07112
HELBA JEAN LEWIS MOTH AREA 5
Lewis 0814 Arakes    05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|---|
| 6/4/04 | 9:30 am | Psychiatry Tx Team — Pt was examined confronted by the tx team for his tx plan update (error) Master tx plan. RT stated that he needs to focus on the issues at hand, that he is frequently disruptive, making sexually inappropriate comment. Pt will be placed in the competence group as this is one of the reasons he's here. Pt addressed the fact that he was described as making obscene comments in the group setting + he responded — "I didn't make any comments, but I will watch that." SW stated that she has found pt to be engaging, intelligent + articulate but she is concerned about his seeing experiencing the world as things happening to him rather than him taking control. Pt stated that he believes he asks for help many times + his issues don't get addressed. He feels he has to do outlandish things to get attention — ie paper hearts. The Pt used the example of his recurrent urinary problem, that it didn't get addressed soon enough. Staff stated pt has been cooperative in the milieu, helpful, but does tend to get loud to get his needs met. RN stated that pt is insightful + articulate — she believes a lot of his acting out is based on his trying to get his needs met. Pt states he "hallucinates" at times from lack of sleep — "I might see shadows." (over) |