(Rev. 5/05)

## FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
## UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

(1) **JImmIE LEWIS, 506622**
(Name of Plaintiff)    (Inmate Number)

**D.C.C , 1181 PADDOCK RD, SMYRNA DE**
(Complete Address with zip code)    **19977**

(2)_____
(Name of Plaintiff)    (Inmate Number)

_____
(Complete Address with zip code)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

vs.

(1) **HELEN HANLON, ETAL.**

(2) **SEE ATTACHED**

(3) **SHEET.**
(Names of Defendants)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

:
:
:
:
:
:
:
:    **06 - 238  GMS**
:    (Case Number)
:    ( to be assigned by U.S. District Court)
:
:
:
:    **Amended**
:    CIVIL COMPLAINT
:
:
:
:    • • Jury Trial Requested
:
:

F I L E D

AUG 16 2006

U.S. DISTRICT COURT

## I.    PREVIOUS LAWSUITS

A.    If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

|  |  |
|---|---|
| 04 - 1350 (GMS) | ACTIVE . |
| 04 - 1410 (GMS) | DISMISSED W/O PREJUDICE. |
| ACTIVE → 05 - 013 (GMS) | LEAD CONSOLIDATED |
| 05 - 051 (Gms) | CONSOLIDATED |
| 05 - 052 (Gms) | CONSOLIDATED |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


JIMMIE LEWIS,
        PLAINTIFF,

V                                          CA. NO 06-238 GMS


HELEN HANLON,
DIANE STACHOWSKI,
SYLVIA FOSTER,
MARGRET WILSON,
FLORENCE SCOTT COBBS,
KATHRYN SHENEMAN, JAMES EVANS,
BRIAN J. ROBERTSON,
        DEFENDANTS.

## II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A.    Is there a prisoner grievance procedure available at your present institution?    ✓·Yes   ··No

B.    Have you fully exhausted your available administrative remedies regarding each of your present claims?   ··Yes  ·✓No

C.    If your answer to "B" is Yes:

1.   What steps did you take? _____ $D/A$ _____.

2.   What was the result? _____ $D/A$ _____ · _____

D.    If your answer to "B" is No, explain why not: _THE PRISON GRIEVANCE_ _PROCEDURE DOESN'T APPLY TO THE DEFENDANTS._

## III.   DEFENDANTS (in order listed on the caption)

(1)  Name of first defendant: _____ SEE ATTACHED SHEET. _____

Employed as _____ _____ at _____

Mailing address with zip code: _____ _____

(2)  Name of second defendant: _____ SEE ATTACHED SHEET. ____

Employed as _____ _____ at _____

Mailing address with zip code: _____ _____

(3)  Name of third defendant: _____ SEE ATTACHED SHEET. ____

Employed as _____ _____ at _____

Mailing address with zip code: _____ _____

(List any additional defendants, their employment, and addresses with zip codes, on extra sheets if necessary)

IV. STATEMENT OF CLAIM

(State as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets of paper if necessary.)

1.

_SEE ATTACHED STATEMENT OF FACTS._

2.

_SEE ATTACHED STATEMENT OF FACTS._

3.

_SEE ATTACHED STATEMENT OF FACTS._

V.    RELIEF

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

1.   _NOMINAL, COMPENSATORY, PUNITIVE
AND EXEMPLATORY DAMAGES DUE TO
PAIN + SUFFERING CAUSED BY VIOLATIONS
STATED WITHIN THE STATEMENT OF FACTS
TO THE SUM OF $ 25,000,000 DOLLARS._

3

2.    _A LIEN PLACED ON THE DEFENDANTS_
_ASSETS ._

3.    _TO HAVE D.A BRIAN J. ROBERTSON'S_
_JUDICIAL BAR LICENCE REVOKED .._
_TO HAVE DR. SYLVIA FOSTERS + HELEN_
_HANLON'S MEDICAL LICENCE REVOKED , AND OR_
_VERBAL APPOLOTY_

I declare under penalty of perjury that the foregoing is true and correct.

Signed this _10 TH_ day of _AUG_ , 2 _006_

_(Signature of Plaintiff 1)_

_(Signature of Plaintiff 2)_

_(Signature of Plaintiff 3)_

4

STATEMENT
OF
FACTS

On or about Nov 14, 2003 my prior Criminal defense counselor John A. Edinger Jr filed a motion for me to undergo a forensic psychiatric evaluation for competency at the Delaware Psychiatric Hospital; On Dec 1, 2003 it was granted by Judge Charles H. Toliver IV. The Dilemma is that from Dec 1, 03 to May 20, 2004, Diane Stachowski, the Delaware Psychiatric Hospitals unit director of the Mitchel building, ignored, failed to respond and or act, regarding more than a dozen requests she received from my prior criminal defense counselor, myself as well as my family members. Diane Stachowski failed and or refused to give a valid reason why she was forcing me to wait to be evaluated per court orders?

Because of Diane Stachowski's actions, I was not allowed to seek relief from my felony conviction by way of direct appeal and or postconviction appeal, due to being forced to unjustifiable wait.

This paragraph defines violations of my 1ST, 6TH + 14TH U.S.C.A rights, as well as violations of my rights established under 11 DEL C § 6531, 6523, 6581

On or about 5/24/2004, at the Delaware Psychiatric Hospital I signed an emergency contact application, in which gave the mental health care social worker, Florence Scott Cobbs the authority to contact my mother in the case of any emergency. But repeatedly on 6/6/2004, 6/13/2004, 6/14/2004, 6/21/2004, 6/22/2004 and 6/24/2004, Florence Scott Cobbs failed to inform my emergency contact each time I was strapped down with (4) point restraints and injected with a cocktail of psychotropic medications against my will. Ms Cobbs also failed to contact the patient advocate as well as the proper supervisory and or judicial authorities.

This paragraph defines violations of my 8TH and 14TH U.S.C.A rights, as well as violations of my rights established under 11 DEL C § 6531, 6525, 6536, 6523, 468

(#3)

At the Delaware Psychiatric Hospital, on or about 6/3/2004 I was assulted by a patient named "Tim", who used his fist to strick me in the back of my head for no apparent reason. Tim is a Higly violent patient who is escorted by Two nurse assistants at all times due to what I witnessed, because of his tendency to suddenly assult his fellow patients and staff members. The assult caused me to suffer a lump on the back of my head. Even though This incident caused me physical pain and psychological dilemma's, I was not referred to be physically treated for my injuries, nor did I receive any psychological counseling. In relation to This incident,

At the Delaware Psychiatric Hospital on or about 6/4/2004 Dr Kathryn Steneman, documented in the progress notes that she spoke with me in regards to my being assulted by the patient named "Tim", but There after failed to inform my emergency contact, failed to inform the patient advocate and or the proper Supervisiony and or Judicial authorities.

Also in direct relation to this incident, at the Delaware Psychiatric Hospital, on or about 6/4/04, Dr. Sylvia Foster documented in the progress notes that there was no evidence of my being assulted. This was done without a hearing being conducted that would have allowed me to present evidence, and or to call witnesses in my behalf.   The fact that Dr Foster and Dr Steneman both conversed with each other, and thereafter came to the planned conclusion to conseal the incident by denying me both medical and psychological treatment defines conspiracy.

This paragraph defines violations of my 8TH and 14TH U.S.C.A rights, as well as my rights established under 11 DEC C§ 468, 513, 6531, 6525, 6523, 6536

at the Delaware Psychiatric Hospital,

On or about 6/6/2004, a patient named James Floydd became angry with me for his not being ordered a Chef Salad like the Chef Salad that was ordered for me. James Floydd lunged at me swinging punches and hitting me as I proceeded to walk past him in route to my assigned room, room #11. The staff members seperated us, and the doctor was notified. I was thereafter taken to the isolation room, where I was strapped down with (4) joint restraints, and against my will Helen Hanlon injected a cocktail of psychotropic medications into me, i.e, Geodon., Haldol, Ativan & Benadryl. with a needle.

This was done without Helen Hanlon first conducting a competency and or a disciplinary hearing before and or after she injected me with said psychotropic medications. Helen Hanlon failed to give me a written notice of the alleged psychiatric and or disciplinary. Helen Hanlon failed to allow me to call witnesses in my behalf, and or to present evidence in my own behalf.

Helen Hanton injected me with said cocktail of psychotropic medications, for the specific purpose of punishment. This is due to Helen Hanton having full knowledge that the Chief psychiatrist had diagnosed me as malingering.

Helen Hanton actions caused me injuries such as: Bleeding resulting from the needle bruising + breaking the skin and flesh of my buttocks, persisting and reoccurring migraine headaches, bouts of amnesia, insomnia, a swollen tongue that doesn't move when I'm trying to speak, body treamors, ear ringing, audio and visual hallucinations, nerve and brain damage resulting from my brain cells being killed, lost cognative and volitional functions regarding matters of hygiene, social conduct involving legal matters of competency, etiquettes, history + culture.

This paragraph defines violations of my 8TH + 14 TH U.S.C.A rights, as well as my rights established under 11 DEL C § 468, 6531, 6523, 6535, assault and Battery.

~~at the court at~~ ) At the Delaware Psychiatric Hospital ~~the county jail facility~~, on 6/10/2004, Dr. Sylvia Foster authored an alleged forensic psychiatric competency evaluation, and submitted said report to the Superior Court of Delaware, in and for New Castle County.

The report was not or shall I say is not at all forensic, because said report was drafted from F.C.M medical notes as well as from sources other than Dr. Sylvia Fosters scientific analisis.

First of all Dr. Sylvia Foster reported that I revealed no evidence of a mood disorder, and no evidence of psychosis, for which leaves no justifiable reason for why I was not allowed to practice my religious rite of shaving my head.

Dr. Sylvia Fosters 6/10/2004 report contains numerous deliberate errors, that detrimentally contridict the doctors very own doctors notes submitted herein as exhibits, see attached.

Specificly, Dr. Sylvia Foster reported that I was being evaluated for competency to stand trial after being incarcerated on Nov 17, 2003, when in fact I was actually incarcerated on May 26, 2003 and had already stood trial Oct 21-23, 2003, and Dr. S. Foster knew this, due to Dr. Foster having my Superior Court criminal file in her possession. The Nov 17, 2003 date IA only judicially relevant to the fact that The States District Attorney was seeking felony conviction information from Miami-Dade County Florida, in order to sentence me as an Habitual offender, but in order to do This, the D.A needed an unfavorable forensic competency evaluation.

CONFIDENTIAL )        (CONT #5, P.2)

Dr. Sylvia Foster reported that I was informed upon admission at the D.P.C, that I was being evaluated via court order, and that the results would not remain confidential. But actually this couldn't be true, due to Dr. Sylvia Foster placing me on disciplinary sanction upon my admission at the D.P.C, due to my being to ill to participate in said interview.

Dr. Sylvia Foster report to the Superior Court that I assulted a correctional officer, in which is not at all true. Said allegation can't be supported by any H.R.Y.C.I documents.

Dr. Sylvia Foster reported that I requested zonograph, Xanax, and valium, in which was derived by First Correctional Medicals (F.C.M), medical records. This slanderous information should not have been utilized, due to it not being factually validated by the Chief forensic psychiatric psychiatrist ordered by the Superior Court to conduct my forensic competency evaluation

Dr. Sylvia Foster reported that I was prescribed no psychiatric medications, as there were no evidence of mood disorder or psychosis, even though Dr. Sylvia Foster prescribed me Effexor, Ativan, Haldol, Geodon, and Seroquel, for which Seroquel 25 mg's was prescribed to me by the H.R.Y.C.I once I was transfered back to the Department of Corrections.

Dr. Sylvia Foster reported that I was psychiatricly stable enough to be returned to the (D.O.C.), even though my (G.A.F) scale in which was (15) upon my arrival at the (D.P.C) was (50) on a scale of (100) when the report was authored on June 10, 2004 ?

(CONT #5, P.3)

Dr. Sylvia Foster reported that I was stable enough to be returned to the D.O.C, even though Dr. Foster ordered me to be (4) point restrained on at least (6) different occassions, and to have me injected with a cock tail of psychotropic medications.

Dr. Sylvia Fosters report failed to document my state of mind at the time of my arrest, and or at the time of my Oct 21-23, 2003 trial; nor did Dr. Sylvia Foster's report document the mental health exhibite that (F.C.M) first correctional medical, as well as my self gave her, i.e, a newspaper article of me in the missing person section requesting the public's assistance locating me due to my mental health dilemma's; The Wilmington DE Police dept property and assesment receipt, and the Northern State Prison mental health treatment plan.

On or about July 15, 2004 after I was abrugtly sent back to the (D.O.C), Brian J. Robertson, D.A for the state of Delaware in and for New Castle County filed a motion to declare me an habitual offender. D.A Brian J. Robertson was able to file a motion to declare me an habitual offender because of the grossly erroneous report filed by Dr. Sylvia Foster.

(CONT #5, pg)

this gives reason to why I was repeatedly unjustifiable injected with powerful and dangerous mind altering psychotropic medications, in an attempt to zombify me and therefore render my cognative and volitional functions useless, and or should I say defenseless. Dr Sylvia Fosters report is responsible for the judges abuse of discretion at my sentencing hearing, as well as for denying my motion for a New trial.

This paragraph defines violations of my 6TH & 14TH U.S.C.A rights, as well as violation of my rights established under 11 DEL C§ 513, 6531, 6523

(#6)

At the Delaware Psychiatric Center, on or about 6/14/2004 during the 8:00pm snack break in the dinning hall, I was eating a bag of M&M chocolate candy I gave a fellow inmate patient named James Smith $1.00 to purchase for me, due to Dr Sylvia Foster placing me on vending machine restriction. As I sat eating the bag of m&m's Helen Hanlon instructed me to throw the bag of m&m's in the garbage. I responded by calmly stating no, I just payed for these M&M's. Helen Hanlon became angry and utilized her walky talky radio to call for emergency back up. Mr Robert Gray, Mr Dave Moffett, Ms Lance Sagers and Mr James Evans all rushed into the dinning Hall + see what the emergency was. At that time I was still seated, as were the other inmate patients. Helen Hanlon stated that Mr Lewis is on vending machine restriction, as if I had a gun!!! At that point, I put 3 or 4 more m&m's in my mouth and started to chow; thats when Helen Hanlon shouted "take the m&m's from him!!!" Mr Robert Gray who was standing to my left, moved behind me and abruptly grabbed me around my throat with his arm. Dave Moffett grabbed my left arm, James Evans grabbed my right arm, and Lance Sagers grabbed my legs in order to tackle me to the floor; This was done while Robert Gray pulled back in jerks, in which caused me to choke on the m&m candy I already had in my mouth chewing.

(cont # 6, P. 2)

. I repeated in a muffled tone, stop I can't breath; I can't breath, stop I can't breath !!! I was tackled to the floor were Dave Moffitt Lance Sagers, James Evans punched and kicked me apon my face, body, arms and legs; Mr Robert Gray held me in a head lock with his arms with his body under mine, but I was facing upward. At that point I opened my hand, and the m+m's dropped to the floor like marbels. Once I let go of the m+m's they stopped punching and kicking me, I remember thinking that they robbed me for my m+m's? At that point I was picked up off the floor and taken to the isolation room against my will, where the said individuals strapped me down with (4) point restraints. Helen Hanlon notified the doctor, and thereafter Helen Hanlon injected me with a cocktail of psychotropic medications i. e, Haldol, Ativan, Geodon despite my repeatedly stating no, no, no nurse Helen I don't need a shot, I didn't do anything to deserve being given a shot, but to no avail, I was injected with said psychotropic medications anyway.
         This was done without Nurse Helen Hanlon first conducting a competency Hearing and or a disciplinary Hearing before and or after I was injected with said psychotropic medications.

CONT #6, P.5 ...

... ... ... ed to give me a written

... the ... ... psychiatric and or disciplinary

... Helen Hanlon failed to allow me to

... evidence ... my own behalf, and or to

... ... in my own behalf.

... Hanlon specically injected me with said

... ... ...gic medications for the specific

... ... ... ...ment. This is due to Helen Hanlon

... ... knowledge that the Chief psychiatrist had

...ed me as malingering. James Evans and

... Helen ... injections caused me injuries

... Bleeding resulting from the needle bruising

...aking the skin and flesh of my buttocks,

...ng and receaving migrane headaches, bouts

...esia, ... a swollen tongue that doesnt

...hen im trying to speak, body treamors,

...ving, audio and visual hallucinations, nurve

...ain damage resulting from my brain cells

...illed, ... cognitive and volitional functions.

...ing matters of hygiene, social conduct involving

...tters of ...tency, etiquettes, history & cultur

... lip, a swollen eye and bruised ribs for weeks.

...is ... defines violations of my

... & 14 TH U.S.C.A Rights, as well as my

... established under 11 Del c§ 468, 6531,

...5, 6523, assault and Battery.

(#7)

At the Delaware Psychiatric Hospital, on or about 6/21/2004 I was taken to the isolation room against my will. The doctor was notified, and there after I was strapped down with (4) joint restraints, and Helen Hanlon against my will injected me with a cocktail of psychotropic medications, i.e, Haldol, Ativan, Geodon. This was done without Helen Hanlon first conducting a competency and or disciplinary hearing before and or after I was injected with with the cocktail of said psychotropic medications.

Helen Hanlon failed to give me a written notice of the alleged psychiatric and or disciplinary infraction Helen Hanlon failed to allow me to present evidence in my own behalf and or to call witnesses in my own behalf.

Helen Hanlon specificly injected me with said cocktail of psychotropic medications for the specific purpose of punishment. This is due to Helen Hanlon having full knowledge that the chief psychiatrist diagnosed me as malingering.

Helen Hanlon's actions caused me injuries such as : Bleeding resulting from the needle bruising and breaking the skin and flesh of my buttocks —

(cont #7, P.2)

persisting and reoccuring migrane headaches, bouts of amnesia, insomnia, a swollen tongue that doesn't move when im trying to speak, body treamors, ear ringing, audio and visual hallucinations, nurve and brain damage resulting from my brain cells being killed, lost cognative and volitional functions regarding matters of hygiene, social conduct involving legal matters of competency, etiquettes, history + culture.

This paragraph defines violation of my 8TH + 14TH U.S.C.A rights, as well as my rights established under 11 DEc c § 468, 6531, 6535, 6523 assault and battery.

At the Delaware Psychiatric Hospital, on or about 6/22/2004 I was taken to the isolation room against my will. The doctor was notified and thereafter I was strapped down with (4) point restraints, and Helen Hanlon against my will injected me with a cocktail of psychotropic medications, i.e., Haldol, Ativan & Geodon. This was done without Helen first conducting a competency and or disciplinary hearing before and or after I was injected with the cocktail of said psychotropic medications.

Helen Hanlon failed to give me a written notice of the alleged psychiatric and or disciplinary infraction. Helen Hanlon failed to allow me to present evidence in my own behalf and or to call witnesses in my own behalf.

Helen Hanlon specificly injected me with said cocktail of psychotropic medications for the specific purpose of punishment. This is due to Helen Hanlon having full knowledge that the chief psychiatrist diagnosed me as malingering.

Helen Hanlon's actions caused me injuries such as : Bleeding resulting from the needle bruising and breaking the skin and flesh of my buttocks —

(Cont # 8, P.2)

Persisting and reoccuring migrane headaches, bouts of amnesia, insomnia, a swollen tongue that doesn't move when im trying to speak, body treamors, ear ringing, audio and visual hallucinations, nerve and brain damage resulting from my brain cells being killed, lost cognative and volitional functions regarding matters of hygiene, social conduct involving legal matters of competency, etiquettes, history & culture.

This paragraph defines violations of my 8TH + 14TH U.S.C.A rights, as well as my rights established under 11 DEC C§ 468, 6531, 6535, 6523 assult and Battery.

(# 9)

At the Delaware Psychiatric Hospital, on or about 6/22/2004 I was taken to the isolation room against my will. The doctor was notified and thereafter I was strapped down with (4) point restraints, and Margret Wilson against my will injected me with a cocktail of psychotropic medications, i.e. Haldol, Geodon, Ativan. This was done without Margret Wilson first conducting a competency and or disciplinary hearing before and or after I was injected with a cocktail of said psychotropic medications.

Margret Wilson failed to give me a written notice of the alleged psychiatric and or disciplinary infraction. Margret Wilson failed to allow me to present evidence in my own behalf, and or to call witnesses in my own behalf.

Margret Wilson specifically injected me with said cocktail of psychotropic medications for the specific purpose of punishment. This is due to Margret Wilson having full knowledge that the chief psychiatrist diagnosed me as malingering.

Margret Wilson's actions caused me injuries such as: bleeding resulting from the needle bruising and breaking the skin and flesh of my buttocks; —

(Cont # 9, P.2)

Persisting and reoccuring migrane headaches, bouts of amnesia, insomnia, a swollen tongue that doesn't move when im trying to speak, body tremors, ear ringing, audio and visual hallucinations, nerve and brain damage resulting from my brain cells being killed, lost cognative and volitional functions regarding matters of hygiene, social conduct involving legal matters of competency, etiquettes, history + culture.

This paragraph defines violations of my 8TH + 14TH U.S.C.A rights, as well as my rights established under 11 DEC c§ 468, 6531, 6535, 6523, assult and Battery.

DATE:

SBI #-506622
DEL. CORR. CENTER
1181 PADDOCK RD
SMYRNA, DE 19977

*EXHIBIT B, P. 1*

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| STATE OF DELAWARE, | ) |
| | ) |
| | ) |
| v. | )   IN03060175-77 |
| | ) |
| | )   I.D.# 0309016966 |
| JIMMY LEWIS, | ) |
| | ) |
| Defendant. | ) |

NOTICE OF MOTION

TO:  BRIAN ROBERTSON, ESQUIRE
     Deputy Attorney General
     Department of Justice
     State Office Building
     820 North French Street
     Wilmington, Delaware 19801

     PLEASE TAKE NOTICE that the within Motion for Commitment for

Psychiatric Evaluation at the Delaware State Hospital will be

presented to this Honorable Court as soon as counsel may be heard.

_____
JOHN S. EDINGER, JR., ESQUIRE
Assistant Public Defender
Office of the Public Defender
State Office Building
820 North French Street
Wilmington, Delaware 19801

Dated:  NOVEMBER 13, 2003

P. 2

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,          )
                            )
        v.                  )       IN03060175-77
                            )
                            )       I.D.# 0305016966
JIMMY LEWIS,                )
                            )
        Defendant.          )

## MOTION FOR COMMITMENT FOR COMPETENCY EVALUATION
## AT THE DELAWARE STATE HOSPITAL

COMES NOW, the defendant, Jimmy Lewis, by and through his attorney, John S. Edinger, Jr., Esquire, and respectfully moves this Honorable Court for an Order transferring the defendant to the Delaware State Hospital for a psychiatric evaluation. In support of this Motion, the following facts are asserted:

1.    The defendant was convicted of the charges of Carjacking 2nd Degree, Theft $1,000 or Greater, and Resisting Arrest.

2.    Since the defendant's conviction, the defendant, while at Gander Hill, has displayed inappropriate behavior.

WHEREFORE, the defendant moves for an Order of the Court transferring the defendant to the Delaware State Hospital for a psychiatric evaluation for the purpose of determining competency and to obtain treatment for his own well-being until such time that treatment is no longer warranted.

JOHN S. EDINGER, JR., ESQUIRE
Assistant Public Defender



P. 3

PUBLIC DEFENDER OF THE STATE OF DELAWARE
ELBERT N. CARVEL STATE OFFICE BUILDING
820 NORTH FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

JOHN S. EDINGER
ASSISTANT PUBLIC DEFENDER

TELEPHONE
(302) 577-5137

November 10, 2004

The Honorable Peggy L. Ableman
Superior Court of Delaware
New Castle County Courthouse
500 N. King Street
Wilmington, DE 19801

RE:    State v. Jimmy Lewis
       ID# 0305016966

Your Honor:

On July 15, 2004 the State filed notice that it was seeking to have Jimmy Lewis declared an habitual offender. The State submitted that Mr. Lewis has previous convictions in Essex County, New Jersey and Dade County, Florida.   Today, Mr. Lewis has told me he wishes to challenge the State's motion on the grounds that he was not convicted of the felonies alleged in the State's petition.

Respectfully submitted,

John S. Edinger, Jr.
Assistant Public Defender

JSE:mls

cc:   Brian J. Robertson, DAG
      Jimmy Lewis

Disciplinary#
3004452

1301 E. 12th Street
WILMINGTON DE, 19809
Phone No. 302-429-7700

DISCIPLINARY REPORT

EXHIBIT K, P. 1

| Disciplinary Type: Class1 | | Housing Unit: Infirmary | | IR#: 3006591 | | |
|---|---|---|---|---|---|---|
| SBI# | Inmate Name | Inst. Name | Location Of Incident | | Date | Time |
| 00506622 | Lewis, Jimmy | HRYCI | Pod 1D | | 04/23/2004 | 09:50 |

Violations: 1.06/200.203 Disorderly or Threatening Behavior. 1.13 Fighting

Witnesses:1.Armstrong. Archie          2. N/A          3. N/A

### Description of Alleged Violation(s)

On Or About 4-23-04 At Approximately 0950, On 1-D-Pod, I/M Davis, William Sbi# 00162762, Cell#15 And I/M Lewis, Jimmy Sbi 00506622, Cell#5 Were Arguing On The Dayroom Floor, During Chow. It Became Disorderly And Threatening, Then Punches Wer Thrown By Inmates. I C/O Armstrong Gave Both Inmates A Direct Order To Lock-In. Both Inmates Proceeded To Lock-In With N Further Problems.

Reporting Officer: Armstrong, Archie  (Correctional Officer)

### Immediate Action Taken

Immediate action taken by: Armstrong. Archie -Correctional Officer

Notified Lead Worker

### Offender Disposition Details

Disposition: Other                    Date:04/23/2004   Time: 12:48      Cell secured? Yes

Reason: N/A

Disposition Of Evidence: N/A

### Approval Information

Approved: ☐          Disapproved: ☐          Approved By: ()

Comments: N/A

### Shift Supervisor Details

Date Received: 04/23/2004          Time: 12:48          Received From: __

Shift Supervisor Determination:

[ ] Upon reviewing this Disciplinary Report, I conclude that the offense may be properly responded to by an immediate revocation of the following privileges(see reverse side) for _____ hours not to exceed 24 hours)

[X] Upon reviewing this Disciplinary Report, I conclude that the offense would be properly responded to by Disciplinary Hearin

, ()

I have received a copy of this notice on DATE: 4/23/04   TIME: 1245  and have been informed of my rights to have a hearing and to present evidence on my own behalf. I understand, if found guilty, I will be subject to imposition of sanctions outlined in the Rules of conduct.

Preliminary Hearing
Officer:          SERGEANT Fred Way          Offender:
                        Way, Fred III                        Lewis, Jimmy



*EXHIBIT R - P. 1*

## PUBLIC DEFENDER OF THE STATE OF DELAWARE
### ELBERT N. CARVEL STATE OFFICE BUILDING
820 NORTH FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

JOHN S. EDINGER
ASSISTANT PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

TELEPHONE
(302) 577-5137

January 10, 2005

Audrey F. Bacino
Assistant Clerk
55 The Green
Dover, DE 19903

    RE: *Jimmie Lewis v. State*
       No. 531, 2004

Dear Ms. Bacino:

Please accept this letter as my response to the Court's inquiry as to the delay of Mr. Lewis' sentencing. Mr. Lewis is presently scheduled for sentencing on February 11, 2005.

Mr. Lewis' initial sentencing date of December 5, 2003 was rescheduled after the defense requested a second psychiatric examination by the State Hospital to determine competency. The report, which found Mr. Lewis competent, was received June 28, 2004.

The second sentencing date of August 13, 2004 was rescheduled to September 3, 2004 because defense counsel was on vacation. The third sentencing date was rescheduled again because the Pre Sentence Office had not received the updated psychiatric report and had not completed their investigation. The fourth sentencing date of December 10, 2004 was rescheduled by Superior Court to February 11, 2005.

Respectfully submitted,

cc: Mr. Jimmie Lewis
    Loren C. Meyers, Esquire

SUPERIOR COURT CRIMINAL DOCKET                    Page    3
                    ( as of  05/27/2005 )

State of Delaware v.  JIMMY LEWIS                              DCB: 12/25/1956
State's Atty: BRIAN J ROBERTSON , Esq.       AKA:
Defense Atty: JOHN S EDINGER , Esq.

      Event
No.   Date           Event                                    Judge
-------------------------------------------------------------------------------
      1 COURT EXHIBIT. GAVE TO EDGAR JOHNSON TO PUT IN VAULT.
      AG/ROBERTSON - PD/EDINGER - CR/FELDMAN, DONNELLY & MAURER - CC/CARUSO.
      JUDGE HERLIHY TOOK THE VERDICT FOR JUDGE ABLEMAN
24    10/21/2003
      LETTER FROM: MARGOT R. MILLAR, OFFICE OF DISCIPLINARY COUNSEL
      TO: DEFENDANT.
      RE: DISCIPLINARY COMPLAINT AGAINST DEFTS. COURT APPOINTED ATTY.
      *SEE FULL LETTER IN FILE*
20    10/23/2003                                   ABLEMAN PEGGY L.
      CHARGE TO THE JURY FILED.
21    10/23/2003
      VOIR DIRE QUESTIONS FILED.
      STATE'S PROPOSED VOIR DIRE.
23    11/04/2003
      LETTER FROM SUPREME COURT TO JIMMY LEWIS
      RE: THE SUPREME COURT IS IN RECEIPT OF YOUR LETTER
      DATED OCTOBER 24, 2003. THE SUPREME COURT IS AN APPELLATE COURT
      WHICH RECEIVES APPEALS AND RELATED DOCUMENTS FILED PURSUANT
      TO SUPREME COURT RULES. ACCORDING TO THE SUPREME COURT RECORDS,
      YOU DO NOT HAVE AN APPEAL PENDING AT THIS TIME. BY COPY OF THIS
      LETTER I AM PROVIDING COPIES OF YOUR LETTER TO YOUR ATTORNEY, AND
      THE DEPUTY ATTORNEY GENERAL, THE PROTHONOTARY.
25    11/14/2003
      MOTION FOR PSYCHOLOGICAL/PSYCHIATRIC EXAM FILED.
      BY JOHN S EDINGER JR,ESQ
      REFERRED TO JUDGE TOLIVER-OFFICE JUDGE SENT UP (11/24/03)
26    12/01/2003                                   TOLIVER CHARLES H. IV
      ORDER: ORDERED THAT JIMMY LEWIS THE DEFENDANT, BE TRANSFERRED TO THE
      DELAWARE STATE HOSPITAL FOR PSYHIATRIC EVALUATION FOR THE PURPOSE OF
      DETERMINING COMPETENCY, AND TO OBTAIN TREATMENT FOR HIS OWN WELL-BEING
      AS SOON AS DELAWARE STATE HOSPITAL NOTIFIES GANDER HILL OF AN
      AVAILABLE OPENING, JIMMY LEWIS IS TO BE TRANSPORTED AND EVALUATED.
27    12/03/2003
      MOTION FOR TRANSCRIPT FILED PROSE.  REFERRED TO JUDGE ABLEMAN.
      * NOTE FROM CHAMBERS-JUDGE REVIEWED BOTH LETTERS 12/22/03 NO ACTION
      NEEDED. AMH
28    12/16/2003
      DEFENDANT'S LETTER FILED.
29    01/13/2004
      DEFENDANT'S LETTER FILED.
30    03/01/2004
      LETTER FROM: JOHN S. EDINGER, ESQ.     TO: JUDGE ABLEMAN

A 3

SUPERIOR COURT CRIMINAL DOCKET                    Page      4
( as of  05/27/2005 )

State of Delaware v.  JIMMY LEWIS                              DOB: 12/25/1956
State's Atty: BRIAN J ROBERTSON , Esq.      AKA:
Defense Atty: JOHN S EDINGER , Esq.

        Event
No.    Date          Event                                      Judge
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
        RE:  ON 12/01/03, THE COURT ORDERED THAT THE DEFENDANT BE TRANSFERRED
        TO THE DELAWARE STATE HOSPITAL FOR PSYCHIATRIC EVALUATION.  TO DATE,
        HE HAS NOT BEEN TRANSPORTED FOR AN EVALUATION.
        (LETTER AND FILE REFERRED TO JUDGE ABLEMAN 03/01/04)
31    03/11/2004
        MOTION FOR JUDGMENT OF ACQUITTAL FILED PROSE.  REFERRED TO JUDGE
        ABLEMAN
32    03/23/2004                              ABLEMAN PEGGY L.
        LETTER/ORDER ISSUED BY JUDGE: ABLEMAN
      . RE: THE COURT HAS CONSIDERED YOUR PRO SE MOTION FOR JUDGEMENT OF
        ACQUITTAL.  NORMALLY, THE COURT WILL NOT CONSIDER ANY PLEADINGS THAT
        YOU FILE PRO SE SINCE YOU ARE REPRESENTED BY COUNSEL, JOHN EDINGER.
        YOU SHOULD CONSULT WITH HIM FOR THE FILING OF ANY MOTIONS OR PLEADINGS
        IN THIS CASE, YOUR MOTION FOR JUDGEMENT OF ACQUITTAL IS UNTIMELY AND
        IS THEREFORE HEREBY DENIED.  IT IS SO ORDERED JUDGE ABLEMAN.
33    04/19/2004
        PETITION FOR A WRIT OF HABEAS CORPUS FILED (PRO SE)
        REFERRED TO JUDGE CARPENTER.
        DATE REFERRED: 4/21/04
      ˙ CIVIL CASE NO: 04M-04-054
34    04/26/2004                              CARPENTER WILLIAM C. JR.
        LETTER/ORDER ISSUED BY JUDGE CARPENTER.
        RE: HABEAS CORPUS PETITION 04M-04-054 IS DENIED.
        YOUR REQUEST FOR HABEAS CORPUS RELIEF HAS BEEN FORWARDED TO ME FOR A
        DECISION. A REVIEW OF THE DOCKET IN THIS MATTER CLEARLY INDICATES THAT
        YOU WERE CONVICTED ON OCTOBER 21, 2003 ON THE CHARGES OF CARJACKING
        SECOND DEGREE, THEFT, AND RESISTING ARREST AND THE TRIAL WAS PRESIDED
        OVER BY JUDGE ABLEMAN. IN NOVEMBER, 2003, YOUR COUNSEL, MR. EDINGER,
        FILED A MOTION FOR A PSYCHIATRIC EXAMINATION WHICH WAS APPROVED BY
        JUDGE TOLIVER ON DECEMBER 1, 2003. WHILE I APPRECIATE THAT YOU ARE
        UPSET REGARDING THE DELAY THAT HAS OCCURED WITH REGARD TO THIS
        EVALUATION, IT DOES NOT PROVIDE YOU WITH A BASIS FOR HABEAS CORPUS
        RELIEF. SINCE IT IS CLEAR BASED UPON THE ABOVE THAT YOU ARE PRESENTLY
        BEING HELD CONSISTENT WITH YOUR CONVICTION ON THE ABOVE CHARGES AND
        YOUR FAILURE TO POST APPROPRIATE BAIL, YOUR REQUEST IS HEREBY DENIED.
        I WILL FORWARD A COPY OF THIS LETTER TO JUDGE ABLEMAN AND JUDGE
        TOLIVER SO THAT THEY MAY BE AWARE OF THE DELAY THAT IS OCCURRING. WCC
35    04/26/2004
        NOTICE OF SERVICE
        RE: COPY OF GROUNDS FOR APPEAL
36    05/07/2004
        DEFENDANT'S LETTER FILED.

A4

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,

    v.                                ID No. 0205 0494n

JIMMY LEWIS,

            Defendant.

FRIDAY, FEBRUARY 11, 2005

BEFORE:

APPEARANCES:

    DEPARTMENT OF JUSTICE
    BY:  BRIAN ROBERTSON, ESQ.,
         FRANCIS FARREN, ESQ.,
         Deputy Attorneys General
         For the State

    JOHN S. EDINGER, JR., ESQ.
         For Defendant

TRANSCRIPT OF SENTENCING

- - - - - - - - - - - - - - - - - - - - -
        LYNNE BELL COALE, RMR, CPR
        SUPERIOR COURT REPORTERS
500 N. KING STREET    WILMINGTON, DELAWARE  19801
                (302) 255-0642

23

---

2

1    (Courtroom 6C, 9:30 A.M.)

2                    - - -

3        MR. FARREN:  Next item will be No. 3, Jimmy

4    Lewis.

5        MR. ROBERTSON:  Your Honor, we may need to

6    approach regarding Mr. Lewis. Your Honor, may we approach?

7        (Unreported sidebar.)

8        MR. EDINGER:  Good morning, your Honor.

9        THE COURT:  Good morning, Mr. Edinger.

10        MR. EDINGER:  I have just a few brief comments.

11        It's my understanding at this point that the

12    State is not going to pursue the Habitual Offender Motion

13    and, therefore, my comments will just be towards the

14    sentencing.

15        · MR. ROBERTSON:  That's correct, your Honor.

16        MR. EDINGER:  The Court presided over the trial,

17    so I don't need to -- I don't believe I need to review the

18    facts of the case. As the Court well knows from the

19    Presentence investigation, Mr. Lewis maintains his innocence

20    at this time.

21        I would note that he has been in custody since

22    his arrest in 2003, continuous custody; that prior to being

23    incarcerated, he had been employed and had been working.

---

3

1        The sentencing guidelines in this case would

2    recommend a period of incarceration. And I would submit

3    that the time that he's been held on this offense, which is

4    going on close to two years, is a sufficient penalty in this

5    matter, and we're asking the Court to consider sentencing

6    Mr. Lewis to time served.

7        I don't know if Mr. Lewis wants to address after

8    the State addresses.

9        MR. ROBERTSON:  Your Honor, the State is not

10    seeking to have Mr. Lewis declared a habitual offender

11    pursuant to 4214, but he is an habitual offender. He's got

12    a criminal record as an adult that goes back almost 20

13    years, spans three states now. It's unique in that it

14    covers a number of different types of crimes. He has

15    offenses for selling drugs, for robbery, for burglary, for

16    assault, and as your Honor probably recalls from the trial

17    your Honor presided over, for carjacking, the present

18    matter. It seems like the only time that he is not, in

19    fact, committing offenses is when he is in custody, although

20    I note, in this case, that's not even true.

21        He went to the state hospital, as your Honor

22    might recall, last year for an evaluation. The report there

23    summarizes his behavior even at the state hospital while he

---

4

1    was being evaluated. And I'd note that Page 4 of that

2    report talks about, on June 7 of last year, where Mr. Lewis,

3    angered by not receiving a certain salad at dinner which he

4    believed he was entitled, assaulted a peer and a staff

5    member. That report came out on June 15.

6        Mr. Lewis was the subject of another report just

7    six days later, only this was a Delaware State Police report

8    when, after a beef over a DMX tape, he broke the jaw of

9    another person who was residing at the Delaware State

10    Hospital at that time -- all this for the prospect that he

11    was diagnosed, not with schizophrenia, not with any other

12    chronic mental illness, but with malingering. That seems to

13    be correct, given his history.

14        He doesn't have a pronounced mental illness. The

15    offenses that he's committed do not seem to be borne of a

16    addiction of drugs, as we've seen some of the other persons

17    today, or even alcohol. He's characterized as being

18    intelligent, and I think your Honor has actually seen some

19    of the exchanges. He's 38 years old at this point. He's

20    been doing it for the better part of 20 years. He's going

21    to keep doing it if he's out. He does this because he wants

22    to. There's no other compelling reason.

23        The State submits that it actually merits a

**5**

1  Level 5 sentence that would go beyond which is allowed in
2  this case, but the Court is constrained by the five years
3  maximum on the carjacking statute. State submits that that
4  is an appropriate amount for what Mr. Lewis has done, not
5  only specifically in this case, but looking at his history,
6  a minimum of five years is necessary to protect the public.
7      THE COURT: Mr. Lewis, do you have anything to
8  say to the Court before I sentence you?
9      THE DEFENDANT: Yes, ma'am. Before I was
10  incarcerated, a missing-person ad was put in the paper for
11  me because of my psychological condition, diagnosed with
12  manic depression, schizophrenia. The ad read, you know,
13  seeking help for the public assistance to find me on May --
14  May 19 of 2003. I was thereafter incarcerated less than a
15  week later here in Wilmington, Delaware, as I was commuting
16  to my father's property in North Carolina to receive, you
17  know, a little more assistance with my commercial driving
18  career.
19      In the process, I realized that, you know, the
20  medicines that I have refused in the past, I was -- I really
21  needed them more than I realized at the time. I have been
22  incarcerated in the past, and it was more or less due to my
23  psychological conditions. Since -- since then, since being

**6**

1  incarcerated here in Delaware, I've been prescribed
2  psychotropic medications and been receiving treatment,
3  treatment courses from mental-health personnel staff and
4  stuff. And after taking the medicine, I feel like I come up
5  out of a big cloud, and it's -- there's been a big different
6  in my whole life.
7      I was making changes in my life already. I was
8  making dramatic changes in my life: Obtained my high-school
9  diploma, obtained a Class C license so I can elevate my
10  social status. You know, it was a big change in things that
11  I have done ways doing in society.
12      And in regards to me, you know, being a different
13  person and being a productive law-abiding citizen, I always
14  had this dilemma that I couldn't deal with on my own without
15  medications and things of that nature to help me.
16      In the Delaware Psychiatric Center, as -- as
17  Mr. Brian Robertson has spoke of, it was a situation that I
18  was -- I was accused of that I didn't -- you know, I didn't
19  partake in. And in regards to psychological evaluation, it
20  was -- it was submitted with numerous errors in things that
21  were said about me that aren't true by me being evaluated on
22  -- well, being incarcerated on November 17, 2003, when I was
23  already incarcerated on May 26, you know, so the -- the

**7**

1  evaluation was for trial -- for -- was being done for to see
2  if I can stand trial, but I already stood trial in October.
3  It's numerous things as far as me being strapped down six,
4  seven times and being prescribed -- being injected with
5  psychotropic medicines because of me being delusional and
6  psychotic. And these are the direct reasons for my -- for
7  my behavior -- my behavior problems. And since -- since
8  then, I have received better treatment at the -- better
9  treatment as far as psychotropic medication treatment, and I
10  have been able to really focus more clearly. My mind is not
11  befuddled as it was, and I'm much more clearer.
12      And I would like to have the opportunity to, you
13  know -- to return to society. I was -- like I said, I had
14  obtained my CDL license. My whole life had changed and,
15  more so now than ever, I've been able to really focus clear
16  on things that I need to do in order to, you know, fulfill
17  my obligations as a law-abiding citizen in society. But
18  without the medications, I was unable to do these things,
19  you know, and I was unable to really, you know, approach
20  things, and I always found myself in some kind of dilemma or
21  circumstances like I found myself to be here now. You know,
22  it's just a lot of things that I would like to do.
23      My parents are being -- are elderly. I'm -- I'm

**8**

1  of age. I'm their only child. And I got two daughters,
2  super honor-roll students, and they need me to -- you know,
3  to pay their tuition to help them out. I would like to be
4  able to have the opportunity to return to society. I
5  believe I'm safe. I don't pose any danger to anyone. I
6  believe I have a career that I'm -- I can fall back on.
7      My family, my father has 150 acres of land in
8  North Carolina. My mother is a re -- my mother's a retired
9  dietician. She's here in Court, you know. I don't think
10  I'm a bad person. I think that I have some dilemmas that
11  didn't allow me to be the type of person that I should have
12  been, more so than anything else. I would like for you to
13  take that psychological condition into consideration and not
14  just that I was being reckless or that I commit any crimes
15  intentionally, because I never really did have the
16  opportunity to address the conditions that, you know, cause
17  me to be --
18      THE COURT: When did you go to medical school to
19  become a psychiatrist, Mr. Lewis?
20      THE DEFENDANT: I didn't, your Honor.
21      THE COURT: So, you've just diagnosed yourself
22  for the Court --
23      THE DEFENDANT: Well --

9

1    THE COURT: -- contrary to the other report that
2    was provided to me, or reports from different psychiatrists
3    who did go to medical school and are trained, and who felt
4    that you were faking.
5    THE DEFENDANT: Well, I have -- I have -- I have
6    a medical psychological treatment plan that I have received
7    while I was in New Jersey that diagnoses me with the
8    conditions that -- that I'm speaking of, actually, with
9    medications --
10    THE COURT: I guess it really doesn't matter,
11    because my feeling about you is that you never taken
12    responsibility for this crime. You lied in the Court about
13    what had occurred, and it was very obvious to me and to the
14    jury, obviously. They wouldn't have come back with a guilty
15    verdict if they thought you were telling the truth. And
16    you're still being pretty dangerous, even when you're locked
17    up.
18    THE DEFENDANT: Your Honor, if it wasn't for the
19    District Attorney stating that -- "Please tell the jury" --
20    THE COURT: Mr. Lewis, I'm not going to discuss
21    what occurred at that trial. You were found guilty, and I
22    think the jury was accurate, because I heard the same
23    evidence --

10

1    Ma'am, you're not allowed to speak, so don't even
2    raise your hand, please.
3    I heard the evidence and I heard your ridiculous
4    story explaining what that evidence was. And I had the same
5    reaction to your ridiculous story that the 12 members of the
6    jury did. So, today, you're still not taking responsibility
7    for what you did in this case. And today, after you've been
8    sent to the Delaware Psychiatric Center, pretending that you
9    have some serious problem and terrorizing people there,
10    sexually suggesting sexual innuendos to some of the female
11    staff members -- the report that I read does not paint you
12    in a real good light, Mr. Lewis. So, you think of yourself
13    far differently than what others think of you. I need you
14    to understand that. But, today, you have not yet taken
15    responsibility for this crime, and that's of great concern.
16    Your lack of remorse is of great concern to this Court.
17    In addition, you have other convictions which
18    would have made you habitual eligible in Delaware had the
19    State had an opportunity to prove that today. And I'm
20    taking that into consideration as well.
21    It's the sentence of the Court, effective
22    February 11 -- well, effective May 26, 2003, on the
23    carjacking offense, IN-03060175, you're placed in the

11

1    custody of the Department of Corrections for five years at
2    Level 5. On the felony theft charge, you're placed in the
3    custody of the custody of the Department of Corrections for
4    two years Level 5; suspended after one year for one year at
5    Level 4 Plummer Center; suspended after six months for six
6    months at Level 3. And on the resisting-arrest charge,
7    you're placed in the custody of the Department of
8    Corrections for one year at Level 5, suspended for one year
9    at Level 2 probation.
10    You're to complete anger-control management
11    counseling while incarcerated. You're to participate in any
12    recommended mental health or substance abuse treatment. An
13    you are to have no contact with Patrick Gear.
14    MR. EDINGER: Thank you your Honor.
15    MR. ROBERTSON: Thank you, your Honor.
16    THE DEFENDANT: Thank you, your Honor.
17    MR. FARREN: Your Honor, that would complete
18    your Honor's sentencing calendar this morning.
19    THE COURT: Court stands in recess.
20    (Sentencing concluded.)
21
22
23

12

CERTIFICATE OF COURT REPORTER

I, Lynne B. Coale, RMR, CRR, Official Court
Reporter of the Superior Court, State of Delaware, do hereby
certify that the foregoing is an accurate transcript of the
proceedings had, as reported by me, in the Superior Court of
the State of Delaware, in and for New Castle County, in the
case herein stated, as the same remains of record in the
Office of the Prothonotary at Wilmington, Delaware.

WITNESS my hand this 18th day of March, 2005.
Cert. # 165-PS

Lynne Bell Coale, RMR, CRR
Official Court Reporter

*EXHIBIT A, P.1*

Delaware Psychiatric Center
Page 1 - Psychiatric Assessment Form
Rev. 5/00

Department of Health and Social Services
Division of Substance Abuse and Mental Health
Delaware Psychiatric Center

```
LEWIS, JIMMY                    12/25/66
46445  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 UNK M AF B
2  EDWIN PLACE NEWARK NJ 07112
MELBA JEAN LEWIS MOTH AREA 5
973-■-■                        05/21/2004
```

*some history obtained from court*
*order + FCM records.*

## PSYCHIATRIC ASSESSMENT FORM

Patient Name (Print): **Jimmy Lewis**

I.   ADMISSION STATUS:    24 Hour / Civil (Court) Voluntary

II.  CHIEF COMPLAINT:    Refuses to speak

III. SOURCES OF INFORMATION:
Interpreter Needed?  Yes / Not Needed  (If yes, name of and type of interpreter)

IV. HISTORY OF PRESENT ILLNESS: *Pt has been failed at Gander Hill*
*for several months*

Pt is a 38 y o AA male who presents to
the Mitchell Bldg by court order for the purpose
of determining competency, + to obtain tx
for his own well-being. Pt was evaluated
by Misan psychiatrist, Dr. Dilip Joshi, on
5/27/03, as "psychotic + delusional, a danger
to self + others, refusing to take medication."
He had assaulted a CO, + was transferred to
the infirmary. Pt reported, "I can't distinguish
between right + wrong. I am hearing voices telling
me to hurt myself + I'm seeing shadows."

(over)

Date: 5/21/04  Time: 11 am  Print Name of Interviewer: Sylvia Fockemy

Delaware Psychiatric Center
Page 2 - Psychiatric Assessment Form
Rev. 5/00

LEWIS, JIMMY                    12/25/66
46443  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 UNK M SF 5
4 EDWIN PLACE NEWARK NJ 27112
        JEAN LEWIS MOTH ARE# 5
973-                           05/21/2004

## V.  PAST PSYCHIATRIC HISTORY:

Current Psychiatrist or Clinician/date last seen: unknown

History of Major Depression?   Yes / No

History of Suicidal Behavior?  (Yes )/ No

History of Violent Behavior?   Yes / No

History of Mania?              Yes / No

History of Anxiety Disorder?   Yes / No

History of Psychosis?          Yes / No

unknown - pst once by wrists/arm
5/21/02    (no tx) - 4 yrs ago

Give a detailed personal history regarding previous treatment, hospitalizations and
medications:

[unknown 5/21/04]

- Pt states he was at Crisis a few times
  but never was an inpt in a psychiatric hospital
- He said he went to Crisis fr hearg
  hallucinations, hopeless feelings +
  suicidal thoughts.

- outpt: Saw counsela (of some sort) as a
  child in N.J. Pt doesn't know why.
  Told me his mother would knows fleer
  he remembers that his mother was in a
  lesbian relationship + 2 didn't approve of it
  + 2 voiced my opinion to her + 2 started
  + 2 voiced my opinion didn't like the lady, + dedn't like

P. 3

Delaware Psychiatric Center
Page 4 - Psychiatric Assessment Form
Rev. 5/00

LEWIS, JIMMY          12/25/66
46443 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 UNK M 1F J
4 EDWIN PLACE NEWARK NJ 07112
HELBA JEAN LEWIS MOTH AREA 5

VIII. SOCIAL HISTORY:

List marital history, current status, friends, children (incl ages, names of people who ~~25/21/2004~~
reside in home: (unknown 5/21/04)

Never married / Every time 2 get into a relationship,
we always argue. will one GF of ton 8 yrs.        was attending comm.
                                                  drugs: school – to try is
Occupational History:  Occupation / last job worked / why stopped working / longest  wheeler – it was gong to be
(It admits self advey of tom, period worked: when I got to sell bootleg CD's + DVD's  my first job
"that's what I had to do to have many... I always argue, or go it late + I get fired.
porter                    I've been fired more than 10 times.    Polan
Construction                                                     surgar h
whatever job was open,   Longest job: 3 mos.                     adine
& wasn't doing"                                                  hire
Educational History:  Grade level achieved: 10 th grade  Special Classes: Yes / No
GED actually got a HS diploma
Trade School: Amer Bus Institute – didn't stay long + ended up owing them.

Legal History:  Charges / Incarceration / Litigation / None
[unknown] Total: 6 yrs. mostly for theft – "one was upgraded to
1993 – 2000 "got into fight" – so           robbery – & pickpocket
ALCOHOL AND DRUG HISTORY  & was obligated"    sometimes

Since teens – last use: prior to incar. ⊕ h/o blackouts
Alcohol:  never used / rarely uses / heavy use / blackouts / seizures / AM drinker /

lost workdays / DTs / detox-rehab / DUI

i.v. 16 yrs ago

Drugs:  never used / cocaine / marijuana / amphetamines / heroin / phencyclidine /

barbiturates / benzodiazepines / hallucinogens / inhalants / nicotine / caffeine /

IV use / share needles / other _____

X.  MENTAL STATUS EXAM:  [Pt sat still & was also - check - a chute
    head shaved    stanup down at floor y refusing to sleep
Appearance:  Kempt / Unkempt / Drowsy / Stuporous / Intoxicated

Manner:  Pleasant / Cooperative / Uncooperative / Guarded / Angry / Suspicious / refused to

Speech: Rate:  Normal / Slowed / Pressured / Monotonous   answer any
    Volume:  Normal / High / Low                          questions –
    Content: Clear / Goal-directed / Rambling / Vague / Mute  selectively mute
                                                            or was speaking
Motor Activity:  General:  Calm / Agitated / Pacing          & stall earlier
    Gait:  Normal / Ataxic / Shuffling                       in normal
    Movement:  None / Tremor / Tic / Rigidity / Catatonia    manner.]
                to me
Pt opened up (5/25/04)

p. 4

Patient Name _Jimmie Lewis_

Patient Hospital Number _____

PREVIOUS HISTORY

Substance abuse/dependence    Yes ✓    Type of substances used _alcohol_

Suicide attempts or threats    Yes ✓ No ___
Violence or threats    Yes ✓ No ___
Previous psychiatric hospitalizations    Yes ___ No ✓
Previous CMHC outpatient care    Yes ___ No ✓

## DISCHARGE MEDICATION

Did patient receive medications upon discharge? Yes ___ No ✓ If Yes, please list medications and complete other information below.

| MEDICATION NAME | DOSAGE |
|---|---|
| Seroquel 50 mg q 12° | for aute management + impulse control |
| Tenormin 25 mg q am | for HTN |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Medication given for ___NA___ days    Prescription(s) given    Yes ___ No ✓
Time/Date last dosage of medication administered (for long-acting drugs) NA
Date next injection on long-acting medications due NA
If on Clozaril, date of last lab work NA
If on Lithium, document the following    Level ___ NA ___    Date _____

List medications administered during hospitalization to which patient showed no anticipated or desired response.

| MEDICATION | RESPONSE |
|---|---|
| NA |  |
|  |  |

Signature (Psychiatrist)

P. 6

Department of Health and Social Services
Division of Substance Abuse and
Mental Health
**Delaware Psychiatric Center**
**Pharmacy Data Sheet**

```
LEWIS, JIMMY                    15/66
 48443  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 UN      AF  9
 4 EDWIN PLACE NEWARK NJ  .7112
 HELBA JEAN LEWIS HOTH AREA 5
 973 -                  05/21/2004
```

Patient Name: Jimmy Lewis

Height: 5'11    Weight: 244

Allergies and/or Severe Adverse Reactions (specify):  Admitting    Changed

Something
Unknown    NKDA

DSM IV DIAGNOSIS:    Admitting    Changed    (circle one)

Axis I: Alcohol abuse r/o Dependence    6/24/04

r/o Equettine dto    r/o Bipolar dto    r/o chronic PSY dto

2) r/o Malingering    3) r/o Conduct Dlo

Axis II: Deferred r/o Antisocial Personality Dlo

Axis III: HTN

5/21/04
Date/Time

Silvia Foskimy
Physician's Name Printed

Physician's Signature

When form is complete and signed fax to Pharmacy (577-4329) so that medications can be sent. Original
form to be filed in patient's chart in the white divider (top/first page). If at any time there is a change in the
information given, complete the appropriate section only and circle "changed".

Case 1:06-cv-00228-JJF Document 3-6 Filed 04/12/2006 Page 41 of 61

*P.5*

DELAWARE PSYCHIATRIC CENTER
Physical Examination Form (Page 3 of 3)

4 EDWIN PLACE NEWARK NJ 07112
HELBA JEAN LEWIS ROTH AREA 5
973-481-5028            05/21/2004

Reflexes (Graded 0-3):

Babinski:    Toes Up / Toes Down

Sensory:     (Light Touch, Pinprick, Vibration, Joint Position) - Describe Abnormalities:
             Narmal

Cerebellar (Alternating Movements):   Normal / Abnormal

Gait:   Normal / Ataxic / Wide-Based

C.    Is there EVIDENCE SUGGESTIVE OF POSSIBLE PHYSICAL ABUSE?
      (Hematomas, suspicious scars, burns, lacerations, bruises) Yes / No
      If yes, describe nature, extent and location:

D.    Is there Evidence of Tardive Dyskinesia?   Yes / No

E.    PAIN ASSESSMENT

      a.   Is the patient verbalizing current pain symptoms?   No / Yes

      b.   Are there non-verbal signs of pain present? (e.g. clenched fists, reluctance to
           move, restlessness, facial grimacing, joint swelling, tenderness or bruising,
           rubbing joints, holding or protecting any part of the body)   No / Yes

      If "Yes" answered, to either question, please describe: _____

F.    MEDICAL CONDITIONS (by history or physical findings):
      H/o Irritable Bowel Syndrome,  Hypertension

_R. Sheth_ MD            _R. Sheth_ MD       _5/24/04    11:57_
PHYSICIAN'S SIGNATURE       PRINT NAME        DATE/TIME

_____     _____    _____
PHYSICIAN'S SIGNATURE       PRINT NAME         DATE/TIME
(Reviewed by)

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

## DOCTOR'S ORDER SHEET

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or NO SUBS) is noted."

Name: _____  Facility: _____  Activity: _____  Case No.: _____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED B |
|---|---|---|---|
| 5/26 04 | noon | Give first dose of Effexa xn whe available today. | |
| | | Sylica Fosterell | m 2~/) 5/26/04 |
| 5/27/04 | 5/28/04 | | 10 ~ |
| 5/28/04 02 | 11:57 | Urinalysis. ? midstream clean urine C & S ) catch urine Push fluids x 3 day | RLX 2 m 2~ 5/28/04 |
| 5/29/04/0440 | | | 6-4 |
| 6/1/04 9:30a | | D/C Effexor — pt refusing | |
| | | Sloffest | 6/1/04 TE |
| 6/2/04 | 1040 | Pyridium 300 mg po BID Bactrim DS x. po BID | x 5 day |
| 2/2/04 | 1050 | ADD to his diet - CHE/ SALAD/ E CHEESE BID + 8 pm nourishments of cheese crackers, bananas X 30 day | |

DHSS – 019 A

"PRESS HARD – (USE BALLPOINT PEN ONLY) NO FELT TIPS

WHITE – Medical Records  ALL OTHERS – Return To Pharmacy

D.C.No.: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 (8-18)

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

## DOCTOR'S ORDER SHEET

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or NO SUBS) is noted."

Name: _____    Facility: _____    Activity: _____    Case No.: _____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED BY |
|---|---|---|---|
| 6/3 | 04 3:15 pm | D/c PRN Haldol, Benadry + ativan | |
| | | noted  6/3/04  @ 1520  Httraler RN | |
| 6/4/04 | 12:35 | Benadryl 50 mg PO PRN X one time q for Insomnia AS | |
| AS 6/8/00 | | Evaluation by writ psychiatrist on 6/4 AS  error  SALEM MD | |
| 6/4/04 | | | |
| 6/4/04 | 9 am | Benadryl 50 µg PO/im q 6° PRN agitation / insomnia X 30 days | |
| 6/4/04 | | Urology Consult to evaluate for possible recurrent Urethritis | |
| 6/4/04 | 9:30 | Can participate in Gym & wt room activities | |
| 6/5 | 24 | | |

PROGRESS NOTES (Continued)    P. 20

4 EDWIN PLACE
MELBA JEAN LEWIS MOTH AREA 5
Patient's Name __973-481-5029__    05/21/2004    Hospital No. _____

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/8/04 | 6:30 p/r | oo noti — Patient was agitated and hit another patient on the head and when he was separated he also hit the staff on the face, on evaluation he stated that he did not get his salads and he was upset about that. He was given Haldol 5 im and Benadryl 50 im and when he continued to be agitated he was put in 4 point restraint for safety of self and others. He had intact eye contact, speech loud. He appears alert. He denied AVH. He denied SI or violent ideations. He will be taken off restraints when he calmed down. ————— S. Andhu MD Attending this patient pool play visits and check area. He will be restricted as advised by her until evaluated by team out team S. Andhu MD |
| 6/6/04 | N/? 8? | A resume ... |

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

## DOCTOR'S ORDER SHEET

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or NO SUBS) is noted."

Name: _____ Facility: _____ Activity: _____ Case No.: _____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED B |
|---|---|---|---|
| 6/8/04 | | | |
| | 6:15 | Haldol 5, IM ⊤ Benadryl 50 mg IM for agitation X 1 dose | |
| 6/6/05 | 8:20 PP | Put the patient in 4 Point restraint ⊙ for safety of self and others not to exceed 2 Hrs _____ SANDHU MD | |
| 6/6/05 | 6:30 PP | — Restricted Patio, Pool Playing, visit and Snack area until Seen by treatment team _____ SANDHU MD 6/6/0 | |
| | | | |
| 6/7/04 | 10:45 pm | — Begin Serogrel 50 mg PO q 12° X 30 days for anger management + impulse control. | |
| | | — Restrict visit, patio, ut room, gym + state vending machine X 1 week — D/c Chef's salad BiD | |
| | | | |
| NF tid | | 6/7/04 @ 1900 - Helen danler Rr | |
| | | | |
| 6/5/04 | 1153 | Cont Pyridium Pe 200 mg BiD X 5 days | |

DHSS — 019 A

PRESS HARD — (USE BALLPOINT PEN ONLY) NO FELT TIPS

WHITE — Medical Records  ALL OTHERS — Return To Pharmacy

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH**
**DELAWARE PSYCHIATRIC CENTER**

PROGRESS NOTES
(Continued)

LEWIS, JIMMY                12/25/66
46443  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 UNK M AF J
4 ECWIN PLACE NEWARK NJ 17112
MELBA JEAN LEWIS HOTH AREA 5
973-481-5028              05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/6/04 | N₂ | *(illegible handwriting)* |
|  |  | *(illegible handwriting)* |
|  |  | *(illegible handwriting)* |
|  |  | *(illegible handwriting)* |
|  |  | *(illegible handwriting)* |
|  |  | *(illegible handwriting)* |
|  |  | *(illegible handwriting)* 615. 7P OD PNS DM UD |
|  |  | all notified will continue to meet |
|  |  |  |
|  |  |  |
| 6/7/04 | | Psychiatry |
| 6:15 pm | | Met c̄ pt and RN mgr regarding pt's |
|  |  | grossly inappropriate behaviors. Que noted on 6/5 |
|  |  | by the RT relates that pt intimidated her + told |
|  |  | her what she had said about him ii tx team |
|  |  | was "wrong + derogatory." Despite her rebuttal, |
|  |  | he continued to state that she had said false |
|  |  | things about him. |
|  |  | Last night, pt assaulted a peer and a staff |
|  |  | member, escalated to the point where he |
|  |  | required PRN med, + because he didn't respond |
|  |  | to that, he escalating further required 4-pV |
|  |  | restraint for the protection of self/others. |
|  |  | Tonight, pt attempted to explain what happened |
|  |  | to cause him to be that upset + it was mostly |
|  |  | around the fact he didn't get a salad when he |
|  |  | wanted it. When he saw the same peer later a |
|  |  | the unit, he said the peer started to come at him, |
|  |  | so he putted pushed him on the head to push him |
|  |  | back down in the chair (emr). P (over) |

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/7 | | Pt's behavior has been escalating over time; he |
| | | has been taunting his peers, intimidated therapists |
| | | making obscene comments (see my note of 6/4/04) |
| | | is disruptive in the group setting + is generally not |
| | | adjusting to the unit milieu. |
| | | It was explained to pt that he will be |
| | | restricted in all areas for 1 week. |
| | | There was an incident when he felt his |
| | | needs weren't being met immediately + he began |
| | | banging + kicking on the unit door. We addressed |
| | | all these issues with him, + explained that he will |
| | | be reevaluated in 1 week. |
| | | Pt has religious issues that y he has grown |
| | | it would have to be a bunt offering - this he |
| | | wants his head shaved. Pt is a Rastafarian. |
| | | Plan: Began Seroquel for anger management |
| | | + impulse control. |
| | | Restrict all privileges x 1 week |
| | | then reeval.      Staff        1) c, extra |
| | | | Sala. |
| | | | |
| 6/8/04 | 1:52 | P? Condition continued for 5 more |
| | | days of possible methutis |
| | | Urinalysis doesn't show pyr on a g protei |
| | | on intres. |
| | | | ALP RNP |
| 6/8/04 | 1700 | Pt refused Peridium. Pt stated that if he |
| | | cannot get Bactrim with it he does not |
| | | want it --      M. Wilson RN |

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

LEWIS, JIMMY          12/25/55
45443 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 UNK H 1F
4 EDWIN PLACE NEWARK NJ 07112
MELBA JEAN LEWIS MOTH APT A 5
973-481-5028        05/21/2004

## DOCTOR'S ORDER SHEET

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or NO SUBS) is noted."

Name: _____  Facilty: _____  Activity: _____  Case No.: _____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED E |
|---|---|---|---|
| 6/9/14 | 10:57 | Urinalysis (U.T.I) | |
| | | Po Bactrim ii tab 5 - 8 pm V ; WK | |
| | | K. U. B. (R/ stones) | |
| | | Urology clinic [Req done] | |
| 4/04 aw | | | |
| 6/10/04 | 1:20 pl | Change Nutritic Order to read: | |
| | | - Regular chef'r Salad, E breakfast | |
| | | - small tossed salad BID c meals | |
| | | - Nourishment HS; cheese, | |
| | | peanutbutter, banana, | |
| | | + chef's salad | |
| | | Weds X 30 days | |
| 6/11/04 aw | | Geodon 20 up PO/im q 6/o | |
| 6/11/04 | | PRN severe agitation | |
| 2 PM | | Ativan 2 up PO/im q 6° PRN | |
| | | agitation. | |
| | | order noted @ 15-15 - 6/11/04 | |

DHSS — 019 A   "PRESS HARD — (USE BALLPOINT PEN ONLY) NO FELT TIPS
WHITE – Medical Records   ALL OTHERS – Return To Pharmacy
D.C.No.:35-06-002-84-10-04-DSH-183

MELBA JEAN LEWIS MOTH AREA 5

Patient's Name 973-481-5028    05/21/2004    Hospital No. _____

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 5/14/04 | 2310 | Pt approached @ 2300 to determine if he was able to contract for safety to D/C seclusion - pt awake and refusing to speak to staff. OD called to review seclusion. —H. Henderson RN |
| 2/15/04 | 2330 | Pt was able to contract for safety @ 2305 & was taken out of seclusion, exit interview completed, will continue to monitor pt's behavior — Tanya Wilson |
| 6/15/04 | 0705 | Pt rested quietly in bed, Ø aggressive behavior towards staff or other pts — Tanya Wilson |
| 6/15/04 | 7:15am | CO Note (Late Entry) Patient was released from seclusion at 11:15 pm last night after he contracted for safety. Slucks      Burkhart, NP |
| 6/15/04 | 4:30pm | Burkhart Pt seen to discuss the aggressive, violent behavior he has been displaying over the last several days; he has been oppositional, aggressive + defiant since admission. Pt stated he was mistreated by staff and he basically took no responsibility for any of it. He was told that the RN had a right to investigate the situation of some money that disappeared that was later found. He was told to come in off the patio + he refused to do it. Pt was angry because he said he had been told that his privileges would have been pulled without justification. Pt went on a rant, argued, oppositional. Pt took no responsibility + refused, denied all the issues involved. Plan - restrictions to continue for 1 week from date. Burkhart |

DEPARTMENT OF HEALTH AND SOCIAL SERVICES
DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH
DELAWARE PSYCHIATRIC CENTER

P R O G R E S S   N O T E S
(Continued)

LEWIS, JIMMY
46443 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 UNK M AF U   12/25/66
4 EDWIN PLACE NEWARK NJ 07112
HELBA JEAN LEWIS MOTH AREA 5
973-481-5028   05/21/2004

Lewis, Jimmie

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|--------------------------------------------|
| 6/11/04 | 2140 | Pt requested a copy of his medication and side-effects & told the Pt as soon as I am finish with the meds I will write out the meds - Seroquel 50mg and the side effects the Pt waited until I had and pt left to give meds since he received his meds first in line he yelled from the end of the hallway repeating over and over again about the meds and side effe- At the medication line I explained what the meds are why he is taking it and side effects Pt stated he wanted it written out on a piece of paper. I wrote the medication out on a piece of paper with side effects and attempted to give it to the pt when he bluntly refused it infront of our attendant and the nurse in of charge. — Margaret Wiley |
| 6/13/04 | 1½ pm | Nsg Note: PT. became verbally abusive and agitated cursing @ staff and refusing to comply with rules and procedures for dayhall and unit. PT refused to go to dayhall which caused the rest of patients to stay on unit and he disrupted the unit with arguing and threatening other |

MELBA JEAN LEWIS MOTH AREA 5

Patient's Name 973-481-5028       05/21/2004       Hospital No. _____

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 5/14/04 | 2310 | Pt approached @ 2300 to determine if he was able to contract for safety to D/C seclusion - pt awake and refusing to speak to staff. OD called to review seclusion. — A. Hamilton RN |
| 6/15/04 | 2330 | Pt was able to contract for safety @ 2305 & was taken out of seclusion, exit interview completed, will continue to monitor pt's behavior — Tanya Wilson |
| 6/15/04 | 0705 | Pt rested quietly in bed, ∅ aggressive behavior towards staff or other pts — Tanya Wilson |
| 6/15/04 | 7:15am | OD Note (Late Entry) Patient was released from seclusion at 11:15 pm last night after he contracted for safety. Suak— O. Kreisti, MD |
| 6/15/04 | 4:30pm | Kauchuak Pt seen to discuss the aggressive, violent behavior he has been displaying over the last several days; he has been oppositional, aggressive + defiant since admission. Pt stated he was mistreated by staff and he basically took no responsibility for any of it. He was told that the nav had a input to investigate the situation of some money that disappeared that was taken found. He was been told to come in of the patio + he refused to do it. Pt was angry because he said he has been told that his privilege restriction has been prolonged without justification. Pt went on a rampage, oppositional. Pt took no responsibility + refused denied all the issues. Plan - restrictions to continue for 1 week from _____. Suak— |

Patient's Name ___HELGA JEAN LEWIS ROTH___  Hospital No. ___

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|---------------------------------------------|
| 6/13/04 | 7pm | patients and staff. This was reported to D. Laurence, RN and pt was given a PRN — R. Ques. |
| 5/13/04 | 8pm | Patient became disruptive on the unit due to his orders over being asked to leave the bathroom and clear thall in order for 2:1 patient to have access. Pt began cursing & refused to follow unit routine. Patient was asked if she needed a prn to help him calm down; pt replied yes! Prn Klozelm + Ativan was given. Pt cont. to refuse to go to the dayhall. Others pt went & pt remained on the unit & a staff present — J. Parker RN |
| 6/14/04 | 12:30am | During to changing of shift Pt. (Jimmie Lewis) was told to close the laundry room door. Pt then began to threaten the staff and getting aggressive. Pt was told to claim down and relax. Care of Patient — Chen — EOate |
| 6/14/04 | 1:30am | Pt. became extremely Pt agitated for no apparent reasons. Pt level of agitation escalating rapidly. Verbal interventions ineffective in redirecting his behavior. Pt resisting & not willing to take prn meds. Nursing supervisor called for extra help due to pt's unpredictable behavior. Pt continues to be Pt agitated and not willing to take prn meds even after much encouragement. Pt. had to be physically escorted to a room & prn meds given. Pt remained in Q.L. for Safety and returned to his bedroom. Pt resting quietly at present time. Will monitor closely. — M. Jai RN |

P.29

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

**DOCTOR'S ORDER SHEET**

LEWIS, JIMMY          12/25/66
45443 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 JMS M 45 Y
4 EDWIN PLACE NEWARK NJ 07112
MELBA JEAN LEWIS MOTH AREA 5
973-481-5023          05/21/2004

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or NO SUBS) is noted."

Name: _____ Facility: _____ Activity: _____ Case No.: _____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED BY |
|---|---|---|---|
| 6/14/04 | 9:00 pm | Patient to be placed in Seclusion Room for the safety of others, not to exceed for more than 2 hrs. Patient can be released earlier when he calm down. SWEENEY Qureshi, M.D. noted 6/14/04 @ 2150 Helen Haslon R | |
| 6/14/04 | 2300 | Seclusion renewed not to exceed 2 hours oriented, pt is calm. T/O Dr. Qureshi/Haslon R noted 6/14/04 @ 2310 Haslon R Qureshi | |
| 6/15/04 |  |  | JW |
| 6/15/04 | 4:50 pm | Continue restriction of patio, cut room gym + vending machine × another week SWEENEY | |
| 6/14 | 6/17/04 | 6/18 | |

DHSS – 017 A          "PRESS HARD – (USE BALLPOINT PEN ONLY) NO FELT TIPS          D.C.No.:35-06-002-84-10-04-DSH-18

4 EDWIN PLACE **PROGRESS NOTES** (Continued)
NELBA JEAN LEWIS HOTH AREA 5                    P. 31
Patient's Name 973-481-5028        05/21/2004        Hospital No. _____

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 4/14/04 | 2310 | Pt approached @ 2300 to determine if he was able to contract for safety to D/C seclusion — pt awake and refusing to speak to staff. OD called to review seclusion. — Adamlin RN |
| 4/15/04 | 2330 | Pt was able to contract for safety @ 23_ & was taken out of seclusion, exit interview completed, will continue to monitor pt's behavior — Tanya white |
| 10/15/04 | 0705 | Pt rested quietly in bed, Ø aggressive behavior towards staff or other pts — Tanya White |
| 6/15/04 | 7:15a | OD Note (Late Entry) Patient was released from seclusion at 11:15 pm last night after he contracted for safety. Swat — Direlsri, DMP |
| 6/15/04 | 4.30pm | Rachuaty Pt seen to discuss the aggressive, violent behavior he has been displaying over the last several days; he has been oppositional, aggressive + defiant since admission. Pt stated he was mistreated by staff and he basically took no responsibility for any of it. He was told that the RN had a right to investigate the situation of some money that disappeared that was later found. He had been told to come in off the patio + he refused to do it. Pt was angry because he said he had been told that his privilege restriction had been prolonged without justification. Pt went on a on arguing, oppositional Pt took no responsibility to his actions + refused denied all the issues involved. Plan- Restrictions to continue for 1 week from _____ Swat |

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

LEWIS, JERRY        12/25/66
46443 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 ONX H RF 9
4 EDWIN PLACE NEWARK NJ 07112
HELBA JEAN LEWIS MOTH ARES 5
973-481-5023        05/21/2004

## DOCTOR'S ORDER SHEET

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or No Subs) is noted."

Name: _____ Facility: _____ Activity: _____ Case No.: _____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED |
|---|---|---|---|
| 6/19/04 | 5:50 pm | Repeat 1 dose of MOM 30 cc PO PRN for constipation X 24 hrs  (RADHYAY, MD) | |
| 6/20/04 | | | |
| 6/21/04 | 1740 | Lotimin cream apply to lesion near toe BID X 2 weeks until healed. Schedule PODIATRY ref. Onychogryphosis  Date/Time: 6/21/04 @ 1:49pm  Chart Checked By: R. Conger CSS | |
| 6/21/04 @1630 | | Renew restrictions X + wb and then to be re-evaluated. T.O. Dr. Foster / H. Harlow RN  noted @ 1630 - 6/21/04    H Harlow RN | |
| 6/21/04 | | Seclusion Not to exceed 2 hours Pt extremely agitated assaultive and poses danger to others and self Pt can be released when calm and not dangerous any more | |
| 6/22 | | | |

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

**DOCTOR'S ORDER SHEET**

P. 34

LEWIS, JIMMY          12/25/66
45445 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 GSK H 1F 0
4 EDWIN PLACE NEWARK NJ 17112
MELBA JEAN LEWIS MOTH 15EL 5
273-481-5324          OP 12/21/2004

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or NO SUBS) is noted."

Name: _____    Facility: _____    Activity: _____    Case No.: _____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED 8 |
|---|---|---|---|
| 6/21/04 | 11:00 p | Please give Pt Geodon 20mg IM | |
| | | + Ativan 2mg IM NOW as | |
| | | Pt extremely agitated, assaultive | |
| | | situation.   BERICK MD | |
| 6/21/04 | 11:08p | Four Point restraints for | |
| | | extreme agitation Pt trying | |
| | | to knock down the door being | |
| | | danger to self and others. | |
| | | restraints not to exceed | |
| | | 2 hours, can come off when | |
| | | calm   BERICK MD | |
| 6/21/04 | 11:40pm | Pt continues to be physically aggressive | |
| | | & to combative reassessment requires | |
| | | 5 point restraints. not to exceed | |
| | | 2 hours, can come off when calm | |
| | | BERICK MD | |
| 6/22/04 | 9:00a | continue 4° restraints not to exceed | |
| | | to 2 hours for safety of self & others | |
| | | T.o. Berick / medium Jen a | |
| | | BERICK | |
| 6/22 | -8 | 6/23 ✓ | |

"PRESS HARD — (USE BALLPOINT PEN ONLY) NO FELT TIPS     D.C.No.:35-06-002-84-10-04-OSH-183

WHITE — Medical Records   ALL OTHERS — Return To Pharmacy

P. 35

DEPARTMENT OF HEALTH AND SOCIAL SERVICES
DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH
DELAWARE PSYCHIATRIC CENTER

PROGRESS NOTES
(Continued)

LEWIS, JIMMY          12/25/66
45443 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 UNK M AF U
4 EDWIN PLACE NEWARK NJ 07112
HELBA JEAN LEWIS MOTH AREA 5
973-481-5028          05/21/2004

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/22/04 | 2430 | Pt became Tangry p assessment of OD to continue seclusion because he would not contract for safety. Pt kicking & banging door – OD determined that he would require 4 pt Restrain Supervisor called to request assistance due to explosive behavior. Pt placed in 4 pt restrain @ 11:05 PM & given PRN (IM). ——— Helen Harlan |
| 6/22/04 | 1 AM | Pt. remains in 4° restraint due to agitat O.D. called & renewed order for 4° restrain not to exceed 2 hr. Will monitor pt closs [signature] |
| 6/22/04 | 2 AM | pt. is calm & quiet L arm & left leg restr removed. ——— [signature] |
| 6/22/04 | 3 am | restraint 4° restraints D/C'd at this time. pt. contracted for safety & returned to bedroom. will monitor pt. closely. ——— [signature] |
| 6/22/04 | 3 AM | pt no resist will 5 further behavioral problems. will monitor pt closely. ——— [signature] |
| 6/9/04 | 6 AM | Pt AEO13, Monitored as routine observation observ Any A/V hallucinations or Suicidal ideation pt approx 430 am. Pt Rose Pres reported + writer that pt was calling he a "bitch" as he walked by writer, pt with pt. Howard, L. Sayer told writer pt he report that he did not say anything about writer towards MD pres pt did report crying. writer informed pt t he stand at his crying at all pt agrees t start therapeutic interventions effective @ this AM. Clemons |

Patient's Name _____ Hospital No. _____ P. 36

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|------|
| 6/23/04 | Cont. | |

He has the ability to present acting in a Pseudo-Psychotic manner, and convince even some seasoned staff of the illness. He appears to maintain an external locus of control, a disbelief that rules pertain to him also and a dangerous disregard for others. He can exaggerate and provocate with ease.

This inmate/consumer left this writer's office and returned to the unit immediately launching some of his pseudo-psychotic behaviors to include talking to non-existent people in the corner of the dayroom.

Florienda Scott-Cobb, MSW

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 1/24/04 | 1/45 | continued — at 1pm will monitor pt closely and document any changes. |
| 6/24/04 | 1550 pm | ① Note — point. Pt was placed on 4 restraints. Because of disruptive, aggressive threatening, overacting staff. Pt. was placed on 4 point restraint for his safety and other's safety. Mental Status: pt. said he is upset. He denied any injury. He said sabotiine cost ⊕ Att. HA dear not understand what he did that pt. Pt. seems to be angry. Alert. Plan: pt. will receive Bandin 1. 50 mg now to keep pt sedated / drowsy ⊕ to decrease possibility to hurt himself or others. He already got PRN meds W2 hours ago — Geodon 120 mg + Ativan 2mg + Benadryl 50 mg. He will have 2 hours now. M. Occuletta, R.E |
|  | 0v | restraint — |
| 6/24/04 | 1730 | Pt assess, noted lying in Seclusion from 5 4 point restraint. Pt's seclusion removed due to currently agitated @ 3pm. Pt continuing to demonstrate his inability to control self to his aggressive behavior. Pt gives patent prv of Bad D/A stay on @ consist of seclusion order. Pt was max to short term for safety of others & the restraint were down graded to three & two to increase confidence |

P. 38

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND SOCIAL SERVICES

## DOCTOR'S ORDER SHEET

LEWIS, JERRY
45443 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
4 EDWIN PLICE NEWARK DE 07112
HELEN JEAN LEWIS MOTH AREA 5
973-481-5028                    05/21/2004

" Authorization is given to dispense a Generic Equivalent under Hospital Formulary System unless NO SUBSTITUTION (Or NO SUBS) is noted."

Name: _____    Facility: _____    Activity: _____    Case No.: _____

| DATE ORDERED | TIME | TREATMENT or MEDICATION | NOTED BY |
|---|---|---|---|
| 6/23/04 | 3pm | | |
| 6/24 | | | |
| 6/24/04 | 1pm | UR restraint for safety of self & others not to exceed 2 hrs. Pt. can be released earlier if calm. | |
| | | T.o Dr. Cocchella / madlin jarea) Cocchella | |
| 6/24/04 | 3:00pm | Benadryl 50 mg po/im Now pt. (Still pt. agitated) | |
| | | Renew 4 point restraint M. Cocchella M.D | |
| 6/24/04 | 5pm | Discharge pt on 6/25/04 back to the care of DOC. | |
| 6/24/04 | | | |
| 6/25/04 | 70 | Clarification of above restraint order Staff may observe Pt through two-way observation window due to extreme aggressive behavior T.o Dr. Cocchella /cle | |
| 6/25 | | | |

DEPARTMENT OF HEALTH AND SOCIAL SERVICES
DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH
DELAWARE PSYCHIATRIC CENTER

PROGRESS NOTES
(Continued)

| DATE | TIME | OBSERVATION, ACTION, OR POSSIBLE SOLUTION |
|------|------|-------------------------------------------|
| 6/23/04 | 1535 | Pt wrote a grievance against a female NA, stating that p snackes - she passed by making determined comments re: his sexual preferences, etc... Pt tames this occured, RN was passing meds from med cart just inside door of unit, NA exited unit and walked past the pts who were lined up awaiting their meds - walked to NA desk 5 comment to anyone and went to desk. J. Harlow RN |
| 8/23/04 | 6:15PM | Pt was re-directed from peering into another patient's door window - and became verbally abusive towards staff asking "if they where trying to create a scene and if they wanted him to start - focusing on him." James L. Segers N.A. |
| 6/24/04 | 1²⁰ₚ | Pt was in the dining room @ his table during lunch MR Lewis threw his lunch tray against the wall and was ask by staff to pick up his tray. There was no respons MR Lewis then reached over and grabbed another pt's tray and threw it against then wall and stated "I want my fucking mail?" The attempted to re-direct MR Lewis to clean up his trays and he refuse redirection. + [signature] |
| 6/24/04 | 1⁴₂ₚ | pt's level of agitation escalting - verbal intervention ineffective in reducing his behavior. Pt ↑ Ativan 2mg Im Benadryl 50mg Im Valium 20mg Im given to help pt regain control of his behavior. Pt continues to ↑ agitation. OD called a 4° restraint order obtained & placed pt in 4° restraint [illegible] |

PROGRESS NOTES